# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

---

**R.K., a minor, by and through her mother and next friend, J.K;**

**W.S., a minor, by and through her parent and next friend, M.S.,**

**S.B., a minor, by and through his parents and next friends, M.B and L.H.;**

**M.S., a minor, by and through her parent and next friend, K.P.;**

**T.W., a minor, by and through her parent and next friend, M.W.;**

**M.K., a minor, by and through her parent and next friend, S.K.;**

**E.W., a minor, by and through his parent and next friend, J.W.; and**

**J.M., a minor, by and through her parent and next friend, K.M;**

**and on behalf of those similarly situated,**

      **Plaintiffs,**

**v.**

**BILL LEE, in his official capacity as Governor of Tennessee; and PENNY SCHWINN, in her official capacity as Commissioner of the Tennessee Department of Education,**

      **Defendants.**

**Case No. _____**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS
OF THE AMERICANS WITH DISABILITIES ACT,
SECTION 504 OF THE REHABILITATION ACT, AND FOR VIOLATIONS OF THE
SUPREMACY CLAUSE OF AND FOURTEENTH AMENDMENT TO THE UNITED
STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983**

Plaintiffs, school-age children with disabilities that render them medically vulnerable to COVID-19, by and through their parents and next friends, bring this action for declaratory and injunctive relief on behalf of themselves and a class of similarly situated children with disabilities who are at severe risk of illness and injury from contracting COVID-19 and its variants due to their disabilities. Specifically, Plaintiffs claim that Defendants violated their rights under the Fourteenth Amendment, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Plaintiffs allege as follows:

## I. PARTIES

1.     R.K., by and through her mother and next friend, J.K., brings this action on behalf of herself and those similarly situated. R.K. is a thirteen-year-old girl who attends Williamson County Schools. R.K., who has been identified by her school as a student with a disability, has Down syndrome. R.K. is a resident of Williamson County, Tennessee.

2.     W.S., by and through her mother and next friend, M.S., brings this action on behalf of herself and those similarly situated. W.S. is a seven-year-old girl who attends the Franklin Special School District. W.S., who has been identified by her school as a student with a disability, has type-1 diabetes. W.S. is a resident of Williamson County, Tennessee.

3.     S.B., by and through his parents and next friends, M.B. and L.H., brings this action on behalf of himself and those similarly situated. S.B. is an 8-year-old second grader in the Knox

County School District.  S.B., who has been identified by his school as a student with a disability, has Eosinophilic Esophagitis.  S.B. is a resident of Knox County, Tennessee.

4.      M.S., by and through her parent and next friend, K.P., brings this action on behalf of himself and those similarly situated.  M.S. is a 12-year-old sixth grader in the Knox County School District.  M.S., who has been identified by his school as a student with a disability, has Jourbert Syndrome.  M.S. is a resident of Knox County, Tennessee.

5.      T.W., by and through his parent and next friend, M.W., brings this action on behalf of himself and those similarly situated.  T.W. is a 10-year-old fourth grader in the Knox County School District.  T.W., who has been identified by his school as a student with a disability, has Shone's Complex.  T.W. is a resident of Knox County, Tennessee.

6.      M.K., by and through her parent and next friend, S.K., brings this action on behalf of herself and those similarly situated.  M.K. is an 11-year-old sixth grader in the Knox County School District.  M.K., who has been identified by his school as a student with a disability, has asthma.  M.K. is a resident of Knox County, Tennessee.

7.      E.W., by and through his mother and next friend, J.W., brings this action on behalf of himself and those similarly situated.  E.W. is an eight-year-old third grade boy who attends the Germantown Municipal School District.  E.W., who has been identified by his school as a student with a disability, has autism and severe pediatric ulcerative colitis with a compromised immune system.

8.      J.M., by and through her mother and next friend, K.M., brings this action on behalf of herself and those similarly situated. J.M. is a fourteen-year-old girl who attends school in the Collierville Municipal School District in Shelby County, Tennessee. J.M., who has been identified by her school as a student with a disability, suffers from primary immunodeficiency. She is prone

3

to illness and suffers significantly more severe symptoms when she acquires an infection. J.M. is vaccinated with two doses of the Pfizer COVID-19 vaccine, but as a result of her condition she cannot rely on its efficacy. J.M.'s medical conditions do not qualify her for an IEP under the Individuals with Disabilities Education Act and she has no educational limitations or needs which would otherwise allow her to receive special education or related services. J.M. is a resident of Collierville, Shelby County, Tennessee.

9.     The Defendant Bill Lee is the Governor of the State of Tennessee and as such is the Chief Executive for the state, responsible for ensuring the enforcement of the state's educational statutes. Defendant Lee signed the education legislation at issue herein. Defendant Lee is sued in his official capacity as the Governor of the State of Tennessee.  The State of Tennessee and the Office of the Governor are public entities within the meaning of the ADA, 42 U.S.C. § 12131, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a) and the American Rescue Plan (ARP), 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021). Governor Lee may be served with process by serving the State Attorney General, Herbert Slattery, III, Office of the Attorney General either by mail to P.O. Box 20207, Nashville, Tennessee 37202, or in person at 500 Charlotte Avenue, Nashville, Tennessee 37219.

10.     The Defendant Penny Schwinn is Commissioner of the Tennessee Department of Education ("TDOE") and is responsible for the acts and omissions of the TDOE. Defendant Schwinn is sued in her official capacity as the Commissioner of the Tennessee Department of Education. The Tennessee Department of Education is a public entity within the meaning of the ADA, 42 U.S.C. § 12131, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a), and the American Rescue Plan.

## II. JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the United States Constitution (Supremacy Clause, art. VI, cl. 2), 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. §§ 2201–2202, along with the Americans with Disabilities Act, 42 U.S.C. §12132 et. seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), the American Rescue Plan (ARP), 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021), and 42 U.S.C. §1983.

12.     Venue is proper in the United States District Court for the Middle District of Tennessee, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## III. INTRODUCTION

13.     This case involves legislation passed by the Tennessee General Assembly in special session on October 30, 2021 at 1:34 A.M. signed into law by Defendant Lee on November 12, 2021.

14.     This legislation (the "Mask Mandate Ban") has created inconsistent and chaotic approaches among the school districts in Tennessee, while subjecting all students to loss of state or federal funding.  The Mask Mandate Ban stands as an obstacle to the accomplishment of the full purpose and objective of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act and must be enjoined.

15.     This Mask Mandate Ban, Tenn. Code Ann. §14-1-104(a) *et seq.*, including "Face Coverings For Schools," (hereinafter "Mask Mandate Ban" or "The Statute") makes it impossible for public school districts to simultaneously comply with the ADA and Section 504.  It must yield to federal law.

16.     In passing the ADA, Congress stated its clear and sweeping purpose:

> [T]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1).

17.    "Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993).

18.    As shown below, Mask Mandate Ban interferes with, obstructs, and infringes upon the rights of all affected students with a disability who require protection of universal masking in the public school setting.  Further, the Mask Mandate Ban seeks to operate as a *de facto* amendment to the ADA and Section 504, along with the American Rescue Plan (ARP), 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021), by imposing limitations on the mechanisms by which these statues operate. It also arbitrarily and capriciously limits the remedies available under federal law to those selected by the Tennessee General Assembly in an obvious effort to weaken and/or nullify federal law. And it subjects all students with disabilities to loss of funding for complying with, or refusing to comply with, the Mask Mandate Ban.

## IV. FACTS

19.    This case involves all Tennessee public school students with certain disabilities[1] who, *by reason of* these disabilities, are more medically vulnerable to severe infection and/or death

---

[1]    The disabilities include: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d)

6

from COVID-19 and its variants. For these students to enjoy safe passage into their existing school buildings, classrooms, and extracurricular activities they require the reasonable modification of universal masking available under the ADA and Section 504.

20.     Prior to passage of the Mask Mandate Ban, three United States District Courts in Tennessee addressed a state Executive Order that attempted to impose an "opt-out" requirement for mask mandates. Executive Orders 84 and 89. Through preliminary injunctions, all three Courts enjoined the Executive Order(s) as interfering with federal rights under the ADA and Section 504. The Mask Mandate Ban goes even further than the Executive Orders. It is a facial attempt to undermine or displace the operation of the ADA and Section 504 in violation of the Supremacy Clause of the United States Constitution. It directly discriminates against individuals with disabilities in violation of the Fourteenth Amendment's Equal Protection Clause. Indeed, every Federal District Court in Tennessee has *already* ruled that the State may not interfere with such federal rights.

### The Plaintiffs

21.     R.K. is a thirteen-year-old girl who attends seventh grade in Williamson County Schools. R.K. has Down syndrome, which places her at high-risk for adverse reaction to COVID-19 infection including death. Her cognitive abilities are substantially limited. R.K. has been vaccinated, but R.K. has a history of such vaccines being less efficacious due to Down syndrome. With appropriate accommodations of universal masking, she is capable of attending school in-person like non-disabled peers.

---

diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

7

22.     W.S. is a second grader in the Franklin Special School District. W.S has type-1 diabetes. Her diabetes places her at significant risk of adverse reaction or death from infection from COVID-19. In fact, W.S. tested positive for COVID-19 after attending school with unmasked children. The infection adversely affected her blood sugar, requiring 14 straight intensive hours of effort and consultation with her treating physician to regulate her blood sugar levels back to a normal range. W.S. is substantially limited in endocrine function. With appropriate accommodations of universal masking, she is capable of attending school in-person like non-disabled peers.

23.     S.B. is 8 years old, a second grader, in the Knox County School District. S.B. has substantial medical conditions which include chronic lung disease, Eosinophilic Esophagitis (EoE) (a chronic allergic/immune condition of the esophagus), an autoimmune condition, and autism. S.B. uses a feeding tube, daily inhaler, and nebulizer when ill. He is substantially limited in the major life activities of breathing, immune function, and neurological function.

24.     M.S. is 12 years old, a sixth grader, in the Knox County School District who is currently being homeschooled but looks to re-enter the public school with a mask mandate in place. M.S. has Joubert Syndrome, a rare genetic disorder involving brain malformation. For M.S., this impairs her cognitively, and precludes her from standing, walking, crawling, and bearing weight. She utilizes a wheelchair, a feeding tube, diapers, and is transported by a caregiver. To address excessive vomiting and acid reflux, she has undergone a fundoplication.[2] She is substantially

---

[2]     A fundoplication is a surgical procedure used to treat stomach acid reflux. During fundoplication, the top part of one's stomach — called the fundus — is folded and sewn around the lower esophageal sphincter, a muscular valve at the bottom of your esophagus. This reinforces the lower esophageal sphincter, making it less likely that acid will back up into the esophagus. *See* https://www.mayoclinic.org/fundoplication/vid20084708#:~:text=Fundoplication%20is%20a%20surgical%20procedure,the%20bottom%20of%20your%20esophagus.

limited in the major life activities of learning, thinking, communicating, breathing, immune function, digestive function, and neurological function.

25. T.W. is 10 years old, a fourth grader, in Knox County School District. T.W. has Shone's Complex, a rare congenital heart disease that restricts blood flow both in and out of the heart's left ventricle. T.W.'s heart functions almost entirely on the right side through a "single ventricle heart." He has had numerous open-heart surgeries. In addition to the heart impairment, T.W. has epilepsy. He is substantially limited in the major life activities of cardiovascular function, immune function, digestion, and neurological function.

26. M.K. is 11 years old, a sixth grader, in Knox County School District. M.K. has asthma, treats with a pulmonologist, and follows an inhaler regimen at home and at school. M.K. has an "Asthma Action Plan" at school that addresses, *inter alia,* triggers, medications, and an emergency plan. Due to asthma, she is substantially limited in the major life activity of breathing and is at risk for serious breathing complications if she acquires the COVID-19 or the "Delta variant."

27. E.W. is 8 years old, a third grader, in Germantown Municipal School District. E.W. has autism and severe ulcerative colitis. Due to the severe ulcerative colitis, E.W. is substantially limited in the major life activities of immune function and digestion.

28. J.M. is a fourteen-year-old girl who attends school in the Collierville Municipal School District in Shelby County, Tennessee. J.M., who has been identified by her school as a student with a disability, suffers from primary immunodeficiency. She is prone to illness and suffers significantly more severe symptoms when she acquires an infection. J.M. is vaccinated with two doses of the Pfizer COVID-19 vaccine, but as a result of her condition she cannot rely on its efficacy. J.M.'s medical conditions do not qualify her for an IEP under the Individuals with

Disabilities Education Act and has no educational limitations or needs which would otherwise allow her to receive special education or related services.

### *Masking Is Necessary to Prevent the Spread of Covid*

29.     Washing hands, cleaning surfaces, and introducing new air filters are some examples of modifications that may reduce some risk of COVID transmission.  But those are not enough for children with disabilities that make them especially vulnerable to COVID-19.   They are not even the most effective means.

30.     For school age children who are unable to be vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing.

31.     Further, the Tennessee Attorney General has recognized the necessity of a mask mandate: "Here, the State's interest in protecting the safety of the public would indeed be less effectively achieved without a mandate that requires the wearing of a face covering in public during the COVID-19 pandemic."[3]

32.     Accordingly, the entirely reasonable modification being sought in this case is *community masking:  protection of selves and others.*  Such a universal masking mandate has been successfully implemented in large public-school districts in Tennessee including Davidson County, all school districts in Shelby County, Williamson County, Franklin Special School District, and Knox County, all of which have already been subject to court or public health orders requiring universal masking.

---

[3] https://www.tn.gov/content/dam/tn/attorneygeneral/documents/ops/2020/op20-14.pdf

33.     Without a mask mandate, and with funding being threatened for instituting a mask mandate, the named Plaintiffs and those similarly situated attend classes will be, or are, placed in close proximity to unmasked students, faculty, and staff.

34.     Named Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

35.     Named Plaintiffs are entitled to safe, fundamental and non-discriminatory access to their school buildings with masked teachers, custodians, and students.

### *Three Courts Have Enjoined Executive Order 84*

36.     Less than three weeks ago, October 22, 2021, the Middle District Court addressed whether Governor Lee's Executive Order No. 84, which gave parents a unilateral right to opt their children out of temporary universal mask mandates, violated the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078, at *2 (M.D. Tenn. Oct. 22, 2021). The Court heard from medical experts including Dr. Sara Cross, Dr. Marilyn Augustyn, Dr. Jason Abaluck, and Dr. Jay Bhattacharya.

37.     The Court found that the Plaintiffs in *R.K.*, consistent with the Centers for Disease Control (CDC), were "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease [who] can be at increased risk for severe illness from COVID-19." CDC, COVID-19: People with Certain Medical Conditions (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov-need-extra-precauations/people-with-medical-conditions.html. "[C]hildren with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19." *Id*.; (see also Doc. Nos. 4-5, 4-6)." *Id*. at *8.

38.     The Court also found that because of "the virus' ubiquity … due, in part, to the ease with which it spreads when people cough, sneeze, or even talk," the American Academy of Pediatrics strongly recommends "universal masking for students, teachers, and support staff . . . because masks are a safe, effective, and critical infection control measure." *Id*. at *10.

39.     The Court found that "even Governor Lee has admitted that '[i]f you want to protect your kid from the [COVID-19] virus or from quarantine, the best way to do that is to have your kid in school with a mask.'" Kimberlee Kruesi, Health Chief: Children now 36% of Tennessee's virus cases, AP NEWS (Aug. 25, 2021), https://apnews.com/article/health-coronavirus-pandemic-tennessee-32b7ff0dc540a2b11cc8c736c67020fe#:~:text=Mark%20Humphrey%2C%20File)-,NASHVILLE%2C%20Tenn.,Commissioner%20Lisa%20Piercey%20said%20Wednesday. *Id*. at *14-15.

40.     Similarly, the Court found that "the Tennessee Department of Education agrees, noting that masking is a '[p]roven mitigation' strategy and is 'effective' in controlling 'the spread of COVID-19.'" Tenn. Dept. of Ed., FAQs related to COVID-19's Effect on Tennessee Schools (Sept. 7, 2021), https://www.tn.gov/content/dam/tn/education/health-&-safety/FAQs%20for%20COVID-19%20Effect%20on%20Schools.pdf; (see also Hr'g Ex. 28). *Id*.

41.     The Court also found that "Ms. Rachel Suppé, Deputy General Counsel at the Tennessee Department of Education, testified on behalf of Governor Lee that she had no reason to doubt the effectiveness of masks in schools as a mitigation measure." (Oct. 13 Hr'g Tr. at 92:11-21; 115:18-21). *Id*. at *15.

42.     Further, the Court found that, "according to Dr. Cross, who was appointed by Governor Lee to Tennessee's Coronavirus Task Force, the failure to implement a universal masking policy in schools will likely lead to extremely high rates of transmission of COVID-19 in

the classroom setting."  (Doc. No. 4-5 ¶¶ 4, 20; *see also* Hr'g Tr., Doc. No. 77 at 105:2-6).  *Id*. at 15.

43.     In *R.K.*, the Court found that "disabled schoolchildren with underlying, high-risk medical conditions have a sufficiently imminent injury that was fairly traceable to Governor Lee's Executive Order No. 84."

44.     Granting the preliminary injunction to enjoin Executive Order No. 84, the Court found that "where a state law interferes with federal law, it is invalid."  *R.K. v. Lee* , 2021 U.S. Dist. LEXIS 204078, at *32-33 (M.D. Tenn. Oct. 22, 2021).  The Court wrote:  "The Court agrees that there is a high and substantial likelihood that Plaintiffs will prevail on their claims under the ADA and Section 504." *Id*.   It found: "Disabled public-school students are excluded from educational programs where they "cannot attend in-person learning at their schools without the very real threat to their lives because of their medical vulnerabilities." Id. at *41.

45.     The Court found that "[t]he application of Executive Order No. 84 operates to discriminate against Plaintiffs and other disabled students." *Id*. at *46-47. "[T]hey have been excluded from full and active participation in their schools' programs 'by reason of' their disabilities." 42 U.S.C. § 12132. *Id.*

46.     The Court's injunction followed two similar injunctions from the Western District and Eastern District of Tennessee, respectively. *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 182934 (W.D. Tenn. Sep. 17, 2021); *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674 (E.D. Tenn. Sep. 24, 2021).

### *Tennessee Law Interferes with Actions Taken by the Federal Government*

47.     As the District Courts in Tennessee issued rulings enjoining Executive Order 84, the United States Department of Education became active too.

48.     Following Governor Lee's August 16, 2021 signing of Executive Order 84 allowing

mask opt-outs in Tennessee public schools, on August 18, 2021, the Secretary of Education, Dr.

Miguel A. Cardona, directed a letter to both Governor Bill Lee and Tennessee Department of

Education Commissioner Penny Schwinn. This letter admonished Tennessee for its action as it

affected the ability of parents and schools to safely return students to in-person instruction.   The

Secretary of Education specifically warned Tennessee that: "**Tennessee's actions to block school**

**districts from voluntarily adopting science-based strategies for preventing the spread of**

**COVID-19 that are aligned with the guidance from the Centers for Disease Control and**

**Prevention (CDC) puts these goals at risk and may infringe upon a school district's authority**

**to adopt policies to protect students and educators as they develop their safe return to in-**

**person instruction plans required by Federal law.**"

49.     In its August 18, 2021 letter, the Secretary of Education also reminded Tennessee

that its receipt of billions of dollars in federal funding under the American Rescue Plan Act of

2021(ARP)[4] as well as the Elementary and Secondary School Emergency Relief (ESSER)[5] was

dependent upon Tennessee using such funds to safely return students to in-person instruction by

following the safety recommendations of the CDC.  Those recommendations specifically include

"universal and correct wearing of masks."  Governor Lee used Twitter to make known his stance,

responding the next day by posting the Secretary of Education's letter and writing: "Regarding the

Biden Administration letter: Parents know better than the government what's best for their

---

[4]     The ARP provided Tennessee state government with $3.91 billion and allocated an
additional   $2.28   billion   to   Tennessee   city   and   county   local   governments.
https://www.tn.gov/environment/arp/about.html

[5]     Over  $4.2  billion  in  ESSER  federal  funds  were  allocated  to  Tennessee.
https://www.tn.gov/education/news/2021/7/15/tdoe-receives-approval-of-state-spending-plan-
from-u-s--department-of-education-for-historic-federal-funding-for-k-12-education--.html

children." Commissioner Schwinn, who is entrusted with enforcing education laws, which includes adhering to federal laws, has remained silent on the conflict between the various state efforts to obstruct federal law relating to universal masking.

50.     When Executive Order 84 was not withdrawn, on August 30, 2021, Acting Assistant Secretary of Education for Civil Rights, Suzanne Goldberg, transmitted a letter to Tennessee Commissioner of Education Penny Schwinn notifying her that the Department of Education, Office of Civil Rights (hereinafter "OCR") had initiated a directed investigation into whether Executive Order 84 interfered with the ability of schools to comply with their responsibilities under Section 504 and the ADA.

51.     In response to this and other federal actions to curtail the spread of COVID-19, two days prior to the passage of the Mask Mandate Ban, Tennessee General Assembly Speaker Cameron Sexton issued a statement via Twitter: "#TN will not stand for @Potus unconstitutional Covid mandates. HJR 9005 sends a clear message to all that we are prepared to take action to preserve individual choice, freedom & liberty while reigning in federal overreach through nullification." That same day the General Assembly passed SJR9005, which explicitly stated:

> BE IT FURTHER RESOLVED that it is the right of the Tennessee General Assembly to enact such legislation as it deems necessary to nullify actions taken by the federal government regarding COVID-19 when those actions violate the United States Constitution.

52.     Governor Lee and the General Assembly's efforts to "nullify" federal law, and Commissioner Schwinn's refusal to act, are, quite clearly, at odds with basic, settled principles of federalism. Passing a state law in the thick of night to "nullify" federal laws protecting students with disabilities receiving federal funding was obviously improper.

53.     Less than three weeks after the Middle District Court's findings in relationship to Executive Order 84, the Governor signed House Bill No. 9077/Senate Bill No. 9014, Tenn. Code Ann. §14-1-101 et. seq., the Mask Mandate Ban, into law.  Commissioner Schwinn has refused to comment publicly about the illegal nature of the Mask Mandate Ban.

54.     The Mask Mandate Ban was passed following, and in direct response to, *three* preliminary injunctions granted by federal district courts in West, Middle, and East Tennessee, under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 182934 (W.D. Tenn. Sep. 17, 2021); *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021); and *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674 (E.D. Tenn. Sep. 24, 2021).

55.     At §14-1-104(a), "Face Coverings For Schools," the Mask Mandate Ban says that "a school or a governing body of a school shall not require a person to wear a face covering while on school property," subject to certain exceptions.

56.     At §14-1-104(d)(1), the Mask Mandate Ban says, notwithstanding subsection (a), that "[a] school shall, to the extent practicable, provide a reasonable accommodation pursuant to the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) to a person who provides a written request for a reasonable accommodation to the principal or president of the school. If the person requesting a reasonable accommodation under this subsection (d) is a minor, then the person's parent or legal guardian must provide the written request on the minor's behalf."

57.     At §14-1-104(d)(2), the Mask Mandate Ban says that "[t]he principal or president of the school shall evaluate the request on behalf of the school and, to the extent practicable, provide a reasonable accommodation. The principal or president shall issue a decision approving or denying the request in writing. If the principal or president denies the request, then the grounds

16

for denial must be provided in the principal's or president's written decision. If the principal or president approves the request, then the school shall place the person in an in-person educational setting in which other persons who may place or otherwise locate themselves within six feet (6') of the person receiving the reasonable accommodation for longer than fifteen (15) minutes are wearing a face covering provided by the school that:

> (A) For persons twelve (12) years of age or older, meets the U.S. National Institute for Occupational Safety and Health N95 classification of air - 12 - 010418 filtration, meaning that the face covering filters at least ninety-five percent (95%) of airborne particles, including droplets containing COVID-19; and

> (B) For persons under twelve (12) years of age, but over five (5) years of age, is age-appropriate and provides air filtration similar to the face coverings described in subdivision (d)(2)(A).

58. At §14-1-104(e), the Mask Mandate Ban says that "[t]he governing body of a school shall not use state funds to mandate or require students to wear face coverings in violation of this section. If a school's governing body violates this subsection (e), then the commissioner of education may withhold future distributions of school funds from a local education agency in the amount of the state funds used in violation of this section, or the attorney general and reporter may initiate legal proceedings to recover all state funds used in violation of this subsection (e)."

59. At §14-4-101(b), the Mask Mandate Ban says that "a local health entity or official, mayor governmental entity, or school does not have the authority to quarantine a person or private business for purposes of COVID-19."

### The Mask Mandate Law Interferes with and Obstructs Federal Law

60. With Tenn. Code Ann. §14-1-101 et. seq., the state has succeeded in creating a liability to *all students* with qualifying disabilities, in every public school in Tennessee, by interfering with their rights under the ADA and Section 504. The law subjects school districts who comply with the ADA and Section 504 and, vicariously these students, to loss of important

funding for students with disabilities.[6]  If the school complies with *federal* law, they risk losing

state funding. If the school complies with *state* law, they risk losing federal funding.

61.    Like Executive Order 84 violated the Supremacy Clause of the Constitution, and

the ADA and Section 504, so too does §14-1-101 et. seq.

> A discriminatory state law is not a *defense* to liability under federal law; it is
> a *source* of liability under federal law. *Barber v. Colorado* , 562 F.3d 1222, 1233
> (10th Cir. 2009).  But a state law at odds with a valid Act of Congress is no law at
> all. *McCulloch v. Maryland*, 17 U.S. 316, 4 L. Ed. 579 (1819); U.S. Const. art. VI,
> cl. 2 (Supremacy Clause).

> Accordingly, the demands of the federal Rehabilitation Act do not yield to state
> laws that discriminate against the disabled; it works the other way around. *Barber
> v. Colorado* , 562 F.3d 1222, 1234 (10th Cir. 2009) (Gorsuch, J. concurring).

62.    The Mask Mandate Ban, if followed, will decrease, interfere with, or nullify the

rights of students with disabilities who require masking of others in order to enjoy safe,

fundamental, non-discriminatory access to their public institutions.  It will also subject to them to

denial of critical funds needed to support their disabilities and equal access to public schools.

Accordingly, court action is necessary to eliminate all of these barrier to safe access created by the

ill-advised passage of Tenn. Code Ann. §14-1-101.

63.    In numerous respects, the State's Mask Mandate Ban does not conform to, and in

fact *interferes* with, the ADA and Section 504 passed by the United States Congress.

### The Mask Mandate Ban Ties Officials Hands Until It Is Too Late

64.    First, principals and presidents of schools must wait until it is too late, or too

treacherous, to enact a mask mandate—"severe conditions." Tenn. Code. Ann. §14-1-104(2).

---

[6]    For fiscal year 2021-2022 alone, Tennessee budgeted a receipt of $1.2 billion in federal
funding for education throughout the State.  This is in line with the amount of federal funding paid
to Tennessee during 2020-2021, $1,123,785,100.00.  As a condition of receiving this federal
funding, Tennessee must comply with federal law in providing students in Tennessee with an
appropriate education, including compliance with the requirements of the  ADA and Section 504.
https://www.tn.gov/content/dam/tn/finance/budget/documents/2022BudgetDocumentVol1.pdf.

Severe conditions are defined as a "state of emergency" or when "[a] county has an average rolling fourteen-day COVID-19 infection rate of at least one thousand (1,000) new known infections for every one hundred thousand (100,000) residents of the county based on the most recent data published by the department of health. For purposes of this subdivision (20)(B), the number of new cases per one hundred thousand (100,000) persons within the last fourteen (14) days is calculated by adding the number of new cases in the county in the last fourteen (14) days divided by the population in the county by one hundred thousand (100,000)." *Id*. at §14-1-101(20).

65.     With the vacillating nature of COVID-19, and its variants, the Mask Mandate Ban ties the hands of school district to respond efficiently and effectively to the virus.

66.     Throughout Middle Tennessee, the Mask Mandate Ban takes a "wait and see until it is too late" approach.  According to David Aronoff, an infectious disease expert at Vanderbilt University Medical Center, this part of the Mask Mandate Ban is akin to forbidding firefighters from entering the house until it is engulfed, or forbidding beachgoers from evacuating until the hurricane touches down. *See* https://www.tennessean.com/restricted/?return=https%3A%2F%2Fwww.tennessean.com%2Fstory%2Fnews%2Fhealth%2F2021%2F10%2F31%2Ftennessee-anti-mask-mandate-forbid-until-after-surge-strikes%2F6188301001%2F.

67.     Plaintiffs and the class each have but one life to protect, and cannot take this "wait until it is too late approach" to implement the essential COVID-mitigation defense of universal masking.

***The Mask Mandate Ban Creates an Artificial Blanket Limitation on Universal Masking***

68.     Second, principals and presidents can only invoke wearing a mask for "no more than fourteen (14) days." *Id*. at §14-2-104(a)(3)(C).  However, the need for protections may be substantially longer.

***The Mask Mandate Ban Deprives Schools the Ability to Purchase Masks***

69.     Third, they can only invoke wearing a mask where "the school provides … N95"
face coverings.  *Id*. at §14-2-104(4).  However, N95 masks are not only expensive in comparison
to cloth counterparts, the law precludes the use of state funds to purchase such masks, §14-2-
104(3), and, it seems, federal funds too, §14-6-101.

***The Mask Mandate Ban Places Limitations on Who and How***
***Accommodations May be Requested***

70.     Fourth, the state law imposes a "written request" requirement for reasonable
accommodation.  *Id*. at §14-2-104(d)(1).  No such obligation is required under the ADA or 504,
where oral requests are sufficient.  Notably, the state law does not even reference Section 504.

71.     Fifth, the state law imposes a requirement that a "parent or legal guardian" make
the written request for all minors. *Id*.  There is no such obligation required under the ADA or
Section 504, many of whom have self-advocacy abilities.

***The Mask Mandate Changes the Legal Standard for Making Accommodations***

72.     Sixth, the state law substitutes a "to the extent practicable" standard for evaluating
the request for accommodation.  *Id*. at §14-2-104(d)(2).  The ADA and Section 504 require action
that is not a "fundamental alteration in the nature of a service, program, or activity" or "undue
financial and administrative burden."  *See* 28 CF.R. § 35.150(a)(3).

***The Mask Mandate Ban Is Operationally Impracticable and Requires Segregation***

73.     Seventh, the state law provides that, for approved requests for accommodation, "the
school shall place the person in an in-person educational setting in which other persons who may
place or otherwise locate themselves within six feet (6') of the person receiving the reasonable
accommodation for longer than fifteen (15) minutes are wearing a face covering provided by the

20

school that: (A) For persons twelve (12) years of age or older, meets the U.S. National Institute for Occupational Safety and Health N95 classification of air - 12 - 010418 filtration, meaning that the face covering filters at least ninety-five percent (95%) of airborne particles, including droplets containing COVID-19; and (B) For persons under twelve (12) years of age, but over five (5) years of age, is age-appropriate and provides air filtration similar to the face coverings described in subdivision (d)(2)(A)."

74. Hardly a model of clarity, this appears to require *placement* of ("shall place") persons with disabilities with persons who "are wearing a face covering" and will stand "within six feet" for longer than "fifteen minutes." This would result in separate learning environments, i.e. segregation, thus violating the ADA's integration mandate.

75. Additionally, given the thousands of students with qualifying disabilities, public schools would constantly be moving children back and forth between settings. Operationally, this would cause constant administrative disruption inside the schools, as opposed to a single, uniform mandate.

***The Mask Mandate Ban Denies Funding to Districts and Students Who Implement Masking***

76. Eighth, the state law provides that a school "shall not use state funds to mandate or require students to wear face coverings in violation of this section." *Id.* at §14-2-104(e). As a penalty, the commissioner of education may withhold school funds that benefit students with disabilities. *Id.* As a result, every Tennessee child with a disability is subject to loss of funding for where a request is made for students to wear face coverings consistent with the ADA and Section 504.

***The Mask Mandate Ban Prohibits Quarantines by School Districts of Infected Persons***

21

77.     Ninth, the state law prohibits local health entities, mayor, governmental entities, and schools from issuing a "quarantine" of any person "for purposes of COVID-19." *Id.* at §14-4-101(b).  This interferes with efforts for contract tracing—quarantining the infected person and identifying and notifying close contacts who may have been infected through direct exposure to the person.

*78.*     In spite of the obvious obstacles the new law creates with respect to the ADA and Section 504, school districts have reached inconsistent decisions about whether they must follow this state law unless and until it is declared unconstitutional by this Court.  Many face a Hobson's choice: If they follow the state law, they risk losing federal funds.  If they do not follow state law, they risk losing state funds.

### *The School Districts Are in Disarray About the Effect of the Mask Mandate Ban*

79.     The Tennessee school districts are not uniform in how to respond to the Mask Mandate Ban.

80.     Some, like FSSD, have stated that they will "follow the new legislation as soon as the Governor signs it into law."

https://www.tennessean.com/restricted/?return=https%3A%2F%2Fwww.tennessean.com%2Fstory%2Fnews%2Fpolitics%2F2021%2F11%2F02%2Ftennessee-new-state-mask-law-could-land-state-schools-back-court-experts-say%2F6235129001%2F

81.     Others, like Williamson County Board of Education, take the position that it may not pick and choose whether to follow a state law because it is "bound to follow the Executive Order *unless…rendered invalid by virtue of a court order*."  (*R.K.,* Case, 3:21-cv-00725, Doc. 81; see also Doc. 15) (WCBOE "does not believe that it has the unilateral authority to declare the Executive Order beyond the Governor's authority or to disregard it.").  Under this reasoning,

22

Williamson County Board of Education must follow any facially illegal state law *until* it, too, is enjoined by a court of law.

82.    Others, like Metro Nashville, have in the past refused to adhere to illegal state actions.  In Metro Nashville, its Board passed a Resolution on August 5, 2021 implementing a universal mask policy as follows:

> In response to Mayor Cooper's Executive Order 21 and the recommendations of the CDC, AAP and Metro Health, I move that MNPS adopts a universal mask policy that all persons indoors and on MNPS buses, be required to wear a cloth face covering or mask effective Friday, August 6, 2021. The Director of Schools is given discretion to design and implement alternatives to this directive, in order to appropriately meet the needs of MNPS students, employees, or members of the public, while providing reasonable access to educational services and government facilities and services. The board will reassess this mask requirement, under our given authority and with guidance from the Health Department, when all Metro Government issued mask requirements end.

83.    Metro Nashville put the safety of its student first and did not permit exemptions to its mask mandate, even after Executive Order 84 was issued.  Metro Nashville would prefer to keep students safe, especially those with disabilities that make them more medically vulnerable to COVID-19, and not risk state funding for doing so.  A Court order is the only way to ensure that districts like Metro Nashville can keep their students safe and not risk state funding.

84.    In Knox County, Superintendent Bob Thomas advised families on November 5, 2021: "At this time, KCS will be required to maintain the mask mandate until further order of the federal court…. In addition, the Tennessee General Assembly last month approved legislation which would limit the ability of school boards to implement mask mandates, except in certain circumstances.  This legislation has not yet been signed by Gov Bill Lee.  However, even if this law is implemented, please know that a federal order supersedes state law."

85.    As a result, if Knox County maintains its mask mandate, unless enjoined, the state law also subjects Knox County, and vicariously its students with disabilities, to loss of funding.

23

86.     Accordingly, Plaintiffs, and countless persons like them, will be subjected to a state law (Mask Mandate Ban) that is, in reality, in serious conflict with federal law and subjects Plaintiffs to loss of critically important funding for students with disabilities.

## V. CLASS ALLEGATIONS

87.     Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all public-school students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 (the "Class").

88.     The Class is defined as follows: all current and future K-12 students attending, or zoned to attend, public school in Tennessee during the coronavirus pandemic who are unable to obtain a vaccine either because of their age or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, as well as all current and future children who attend public school in Tennessee who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.  The "Under-Twelve Subclass" are all individuals who are

members of the Class who are also under the age of twelve years and therefore ineligible to receive any vaccine for COVID-19 as currently approved by the FDA.

89.     This action has been brought and may properly be maintained as a class action under federal law.  It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

90.     Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members include many individuals who are incapable due to limited financial means of instituting individual lawsuits.

91.     Numerosity: On information and belief, there are well beyond the necessary number of children in the proposed Class to warrant class certification. Thousands of children in Tennessee public schools have one or more of the listed conditions that make them medically vulnerable to severe reaction or death from infection by COVID-19.

92.     Commonality: Common questions of law and fact exist as to all members of the proposed Class, including: (a) whether Tenn. Code. Ann. §14-1-104 et. seq. discriminates against the members of the Class in violation of the ADA and the Rehabilitation Act by preventing or refusing to provide for a reasonable modification of community masking under those laws.

93.     Typicality: The claims of the Named Plaintiffs are typical of those of the Class as a whole, including because (a) each Named Plaintiff is currently attending, or zoned to attend, public school in Tennessee and (b) the Named Plaintiffs' and all of the Class members' claims arise from the same wrongful acts, omissions, policies, and practices under Tenn. Code. Ann. §14-1-104, and are based on the same legal theories.

94.     Adequacy: The Named Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class.  The Named Plaintiffs

have no interests adverse to the interests of the proposed Class. The Named Plaintiffs retained counsel with experience and success in the prosecution of civil rights litigation. Counsel for the Named Plaintiffs know of no conflicts among proposed Class members or between counsel and proposed Class members. Plaintiffs' chosen counsel includes the lawyers who obtained the preliminary injunctions in Memphis, Nashville, and Knoxville relating to community masking:

(a)     Bryce Ashby of Donati Law, PLLC. Mr. Ashby is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses on employment, civil rights, and labor violations committed by public and private actors specifically including municipal, state, and federal governmental entities and frequently include claims arising under the Civil Rights Act, Americans with Disabilities Act, the Rehabilitation Act. Mr. Ashby is counsel on two putative class actions arising out of violations of the Trafficking Victims Protection Act and has handled multiple collective actions under the Fair Labor Standards Act as lead counsel. He is co-lead counsel in *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 182934 (W.D. Tenn. Sep. 17, 2021) and *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021), class actions arising under the ADA and Section 504 in which he represents a class of K-12 students against the Governor of Tennessee and their school districts or municipalities for reasonable accommodations in the form of COVID-19 protections.

(b)     Brice M. Timmons of Donati Law, PLLC. Mr. Timmons is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, educational institutions, both public and private, jails, prisons, and private prison contractors, often including claims arising under the Americans with Disabilities Act, Individuals with Disabilities Education Act, and Section 504 of

26

the Rehabilitation Act. Mr. Timmons has significant experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions. Mr. Timmons has handled and/or tried hundreds of cases during his career. Mr. Timmons has also been appointed class counsel in two civil rights actions, including one arising under the Americans with Disabilities Act and is putative class counsel in an action arising under the Trafficking Victims Protection Reauthorization Act in the District of Wyoming in which he represents a putative class of former minor residents of facilities fraudulently purporting to treat mental health issues in minor children. He is also counsel in three putative class actions representing K-12 students with disabilities arising under the ADA and Section 504 in which he has procured injunctive relief to the benefit of the entire putative class. Specifically, Mr. Timmons has been appointed lead class counsel in *Busby v. Bonner*, 2:20-cv-02359 (TNWD, 2020), in which, along with the American Civil Liberties Union and others, he represents a class of incarcerated persons who are especially vulnerable to COVID-19 on claims arising under various federal civil rights statutes including the Americans with Disabilities Act and in which he and his co-counsel received class certification prior to ultimately negotiating the most comprehensive consent decree achieved to date in the plethora of civil rights actions brought in response to the COVID-19 pandemic's impact on individuals medically vulnerable to COVID-19. He has also been appointed lead class counsel in *Turnage v. Oldham*, 2:16-cv-02907 (W.D. Tenn., 2016) in which he represents a class of persons subjected to overdetention due to the employment of a faulty software package to operate the county jail and criminal courts in claims arising under 42 U.S.C. §1983 and Tennessee common law in which he and his co-counsel negotiated a settlement for pecuniary and injunctive relief that has received preliminary approval and has been funded in the amount of $4.9 Million. He is putative class

counsel in *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 182934 (W.D. Tenn. Sep. 17, 2021) and *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021), referenced previously herein.

(c)    Craig A. Edgington of Donati Law, PLLC. Mr. Edgington is a distinguished member of the Tennessee Bar and the Federal bar. Like Mr. Timmons, his practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, educational institutions, both public and private, jails, prisons, and private prison contractors, often including claims arising under the Americans with Disabilities Act, Individuals with Disabilities Education Act, and Section 504 of the Rehabilitation Act. Mr. Edgington also has experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions. Mr. Edgington is also counsel in each of the civil rights or class actions identified by Mr. Timmons.

(d)    Justin S. Gilbert of Gilbert Law, PLLC is a distinguished member of the Tennessee Bar, licensed to practice in the Middle District, Sixth Circuit, and United States Supreme Court. Mr. Gilbert's practice focuses primarily on civil rights in education, including the ADA and Section 504 and the Individuals with Disabilities Education Act (IDEA). He has represented students under Title II of the ADA and Section 504, school teachers under Title I and Section 504, and citizens seeking public accommodations under Title III of the ADA. He has represented students with disabilities against both state and local governments, including the Tennessee Department of Education. He has handled class action cases brought under Title VII, the Fair Labor Standards Act, the Americans with Disabilities Act, and under state common laws in Tennessee. He is counsel in *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021); and *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674 (E.D. Tenn. Sep. 24, 2021), referenced previously herein.

(e)   Jessica F. Salonus of The Salonus Firm, PLC is a distinguished member of the Tennessee Bar, licensed to practice in all state and federal courts in Tennessee as well as the Sixth Circuit.  Her practice almost exclusively focuses on civil rights in education, routinely handling cases under the ADA, Section 504, and the Individuals with Disabilities Education Act (IDEA) that involve both local school districts and the state of Tennessee.  She has also represented teachers under Title I of the ADA and Section 504 and citizens seeking public accommodations under Title III of the ADA.  She has previously and is currently counsel for class action cases brought under the Americans with Disabilities Act and Section 504. She is counsel in *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021); and *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674 (E.D. Tenn. Sep. 24, 2021), referenced previously herein.

95.   Defendants have acted on grounds generally applicable to all proposed Class members. This action seeks declaratory and injunctive relief. Plaintiffs therefore seek Class certification under Rule 23(b)(2). While intent or deliberate indifference is *not* required, Defendants did act knowingly, and with intention to disturb or interfere with the right afforded to Plaintiffs under the ADA and Section 504.

96.   In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party opposing the proposed Class.

## VI. CAUSES OF ACTION

### First Cause of Action:
### Discrimination on the Basis of Disability in Violation of the ADA

97.   Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

98.     "In the ADA, Congress provided [a] broad mandate" to "effectuate its sweeping purpose[ to] ... forbid[] discrimination against disabled individuals in major areas of public life, [including] ... public services ...." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001).  It is "'a milestone on the path to a more decent, tolerant, progressive society.'" *Id.* (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 375 (2001) (Kennedy, J., concurring)).

99.     Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

100.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

101.    The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

102.    Tenn. Code. Ann. §14-1-104 et. seq. interferes with or denies local school districts the ability to provide Plaintiffs and these similarly affected children in the instant matter with the protections they need to attend school safely.  Defendants have violated the regulations and provisions of the ADA:

    a.     Defendants are interfering with Plaintiffs right to make and receive a reasonable modification, and/or are preventing the school districts attended by the Class from making and receiving a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

b.    Defendants are excluding, and/or are causing the school districts of Tennessee to exclude Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

c.    Defendants are failing to make, and/or causing Plaintiffs' school districts to fail to make, their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

d.    Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

103.    The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and/or (b) perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

104.    The state, through Tenn. Code. Ann. §14-1-104 et. seq., does not have the authority to circumvent the ADA and their protections for students with disabilities through conflicting state law.

105.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from the public-school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability, or placing limitations

31

on such ability through state law, is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

**Second Cause of Action:**
**Violation of Section 504 of The Rehabilitation Act of 1973**
**Against All Defendants**

106.    Plaintiffs, on behalf of themselves and those similarly situated, do repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

107.    Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

108.    Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the state of Tennessee.

109.    Defendants are recipients of federal financial assistance.

110.    Tenn. Code. Ann. §14-1-104 et. seq. is interfering with and/or is denying local school districts and public health authorities the ability to provide these similarly situated children with the accommodations they need to attend school safely, without being encumbered obligations that interfere or conflict with Section 504.

111.    Defendants have violated the regulations and provisions of Section 504, and/or caused Plaintiffs' school districts to violate the regulations and provisions of Section 504, as follows:

32

a.  Defendants are excluding, and/or are causing Plaintiffs' school districts to exclude Plaintiffs from participation in public education in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

b.  Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability in violation of 34 C.F.R. § 104.4(b)(4);

c.  Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by Plaintiffs' school districts, in violation of 34 C.F.R. § 104.4(b)(4).

112.  The Defendants, through Tenn. Code. Ann. §14-1-104 et. seq., do not have the authority to circumvent Section 504 and its protections for students with disabilities through conflicting state law.

113.  Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a reasonable modification (universal masking), or placing limitations on such ability through state law, for their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

**Third Cause of Action:**
**Violation of the Equal Protection Clause Pursuant to 42 U.S.C. § 1983**

114.  Plaintiffs, on behalf of themselves and those similarly situated, do repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

115.  The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from denying to any person the equal protection of the laws.

116.    The provisions of Tenn. Code Ann. § 14-1-104 *et seq.* relating to the Americans with Disabilities Act are necessarily targeted only at qualifying individuals with a disability as defined in the ADA.

117.    Legislation directed at individuals with disabilities violates the Equal Protection clause if it is not rationally related to a legitimate governmental interest.

118.    A state can never have a "legitimate governmental interest" in nullifying federal law or restricting the rights of individuals with disabilities under federal law.

119.    Tenn. Code Ann. § 14-1-102 sets forth the legislative findings that serve as the rationale for Tenn. Code Ann. §14-1-104 as follows:

The general assembly finds that:

(1) Setting forth the rights of people in the context of COVID-19 restrictions in a statute assists the citizens of this state in the enforcement and protection of their rights and creates a safe harbor for those desiring to avoid litigation;

(2) Tennessee, as a great southern state within our federal system of government, is free to enact laws to protect the health and safety of its citizens under the police powers inherent to all states of a federal system of government;

3) The United States Constitution does not prohibit the states from regulating health and medical practices, nor does it require any person to consent to any form of medical treatment, directly or indirectly, in relation to COVID-19;

(4) The right at common law to personal security and the liberty to be free from an unwanted touching of one's limbs and body was retained by the people of this state, and that right includes rights and duties with respect to medical treatment administered by other persons, such as through COVID-19 vaccinations;

(5) Informed consent between patients and healthcare practitioners protects the rights at common law of persons and all such consent must be voluntary and not given under duress, coercion, misrepresentation, or fraud; and

(6) Consistent with our constitutionally recognized and inalienable right of liberty, every person within this state is and must remain free to choose or to decline to be vaccinated against COVID-19 without penalty or threat of penalty.

120.    None of these alleged "governmental interests" is rationally related to a prohibition on the use of universal masking in schools to protect the rights, health, and safety of individuals with disabilities.

121.    To the contrary, if Tennessee indeed seeks "to enact laws to protect the health and safety of its citizens," or to protect the right to "personal security and liberty" then Tenn. Code Ann. § 14-1-104 *et seq.* does precisely the opposite by curtailing the rights of individuals with disabilities and increasing their risk of exposure, illness, hospitalization, and death from COVID-19 at school, a place that they are both required to attend and have a right to attend on equal terms with their peers who do not have disabilities.

122.    Defendants' law create would also separate classrooms or learning spaces, based upon disability, isolating persons with masks from persons without masks.  This inequality promises a "separate" education, likely and foreseeable bullying, and unhealthy rivalry among children.

123.    Defendants' law also treats public school children differently than private school children.  Private schools remain free to impose a universal mask mandate for the protection of their schools, while public schools—governed by the ADA and Section 504—create a different standard under state law.

124.    Accordingly, Tenn. Code Ann. § 14-1-104 *et seq*. is an unconstitutionally discriminatory statute.

### Fourth Cause of Action:
### Violation of the Supremacy Clause Pursuant to 42 U.S.C. § 1983

125.    Plaintiffs, on behalf of themselves and those similarly situated, do repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

126.     Tenn. Code Ann. §14-1-104 *et seq.* purports to place specific restrictions on and to add inconsistent, affirmative obligations to the ADA.

127.     The ADA is a federal statute enacted pursuant to Congress' enforcement authority under Section 5 of the Fourteenth Amendment to the United States Constitution.

128.     Congress properly abrogated Eleventh Amendment sovereign immunity in enacting the ADA.

129.     Tenn. Code Ann. §14-1-104 *et seq.* is facially in conflict with the ADA, and there is no means to interpret these statutes to avoid a constitutional question.

130.     Additionally, the American Rescue Plan Act of 2021(ARP) was specifically enacted to address the impact of the COVID-19 pandemic and facilitate recovery from its health and economic effects. *See* Pub. L. No. 117-2. The act provides nearly $121 billion in Elementary and Secondary School Emergency Relief funding in order to "help schools return safely to in-person instruction maximize in-person instructional time, sustain the safe operation of schools, and address the academic, social, emotional, and mental health impacts of the COVID-19 pandemic on the Nation's students." American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021).

131.     Tennessee has been allocated billions of dollars to address these needs. A key purpose of the school funding is to assist schools in achieving a "safe return to in person instruction." Pub. L. No. 117-2, § 2001(I). Thus, the ARP Act requires local school districts receiving funding to develop and make publicly available a "plan for the safe return to in-person instruction and continuity of services." *Id.* at § 2001(i)(1). Although the act does not require local school districts to adopt CDC guidance on universal masking, it does require that each school

36

district's safe-return plan describe "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC . . . ," specifically including "universal and correct wearing of masks." 86 Fed. Reg. 21195, 21200.

132. Tenn. Code Ann. §14-1-104 *et seq.* therefore violates or obstructs the ADA and the ARP. Under the Supremacy Clause of the United States Constitution, it is preempted. Federal courts enjoy equitable powers to enjoin unlawful actions by states. Congress intended that the local school districts receiving ARP Act funds, like Tennessee, be the ultimate decider of the requirements of the safe return to in-person instruction of students within that district. Tennessee took substantial federal funders under the American Rescue Plan Act of 2021(ARP) such that Tennessee may not violate, or plan to violate, federal law.

## VII. REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

133. Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

134. Plaintiffs seek a temporary restraining order enjoining Tenn. Code. Ann. §14-1-104 et. seq.

135. Plaintiffs seek a preliminary injunction enjoining Tenn. Code. Ann. §14-1-104 et. seq. during the course of this litigation.

37

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

A. Assume jurisdiction of this action;

B. Certify this Petition as a class action;

C. Declare that Tenn. Code. Ann. §14-1-104 et. seq. violates the rights of Plaintiffs and those similarly situated under the Americans with Disabilities Act, Section 504, the Equal Protection Clause of the Fourteenth Amendment, and violates the equitable principles underpinning the Supremacy Clause of the United States Constitution including the promises made by Tennessee in the ARP Act;

D. Issue a temporary restraining order enjoining Defendants and the State of Tennessee, through Tenn. Code. Ann. §14-1-104 et. seq., from violating the Americans with Disabilities Act, Section 504, the ARP Act, and the United States Constitution;

F. Issue preliminary and permanent injunctive relief enjoining the Defendants and State of Tennessee from violating the Americans with Disabilities Act, Section 504, the ARP Act, and the United States Constitution through enforcement of Tenn. Code. Ann. §14-1-104 et. seq.;

G. Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and/or 42 U.S.C. § 12205; and

H. Grant such other and further relief as may be just, equitable and proper.

38

Respectfully Submitted,

**GILBERT LAW, PLC**

/s Justin S. Gilbert_____
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
Facsimile: 423.756.2233
justin@schoolandworklaw.com


**DONATI LAW, PLLC**

/s/Bryce W. Ashby
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Craig A. Edgington -—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
Email:
bryce@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com


&

 **THE SALONUS FIRM, PLC**
/s Jessica F. Salonus_____
JESSICA F. SALONUS (28158)
139 Stonebridge Boulevard
Jackson, Tennessee 38305
Telephone: (731) 300-0970
Facsimile: 731.256.5711
jsalonus@salonusfirm.com

*ATTORNEYS FOR PLAINTIFFS*

39