# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**R.K., a minor, by and through her mother and next friend, J.K;**

**W.S., a minor, by and through her parent and next friend, M.S.,**

**S.B., a minor, by and through his parents and next friends, M.B and L.H.;**

**M.S., a minor, by and through her parent and next friend, K.P.;**

**T.W., a minor, by and through his parent and next friend, M.W.;**

**M.K., a minor, by and through her parent and next friend, S.K.;**

**E.W., a minor, by and through his parent and next friend, J.W.; and**

**J.M., a minor, by and through her parent and next friend, K.M;**

**and on behalf of those similarly situated,**

    Plaintiffs,

v.                                                                                                      Case No. _____

**BILL LEE, in his official capacity as Governor of Tennessee; and PENNY SCHWINN, in her official capacity as Commissioner of the Tennessee Department of Education,**

    Defendants.

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs, school-age children with disabilities that render them medically vulnerable to COVID-19, by and through their parents and next friends, file this Brief in support of Motion for Preliminary Injunction.

## I. <u>INTRODUCTION</u>

### <u>IN THE MIDDLE OF THE NIGHT, TENNESSEE PASSED A MASK MANDATE BAN THAT VIOLATES FEDERAL LAW AND JEOPARDIZES FUNDING FOR ALL STUDENTS WITH DISABILITIES</u>

At 1:34 a.m. on October 30, 2021, the Tennessee General Assembly passed a bill that became law on November 11, 2021. This legislation, Tenn. Code Ann. §14-1-104 *et seq.* (the "Mask Mandate Ban"), stands as an obstacle to the accomplishment of the full purpose and objective of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act and puts critical funding for students with disabilities at grave risk.

In three successive cases brought pursuant to the ADA and Section 504, federal courts have enjoined state interference with a mask mandate as a reasonable accommodation for students with disabilities. *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 182934 (W.D. Tenn. Sep. 17, 2021); *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021); and *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674 (E.D. Tenn. Sep. 24, 2021).

Like these previous cases, this case involves students with certain disabilities[1] who, *by reason of* these disabilities, are more medically vulnerable to severe infection and/or death from

---

[1] The disabilities include: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

COVID-19. For these students to enjoy safe passage into their existing school buildings, classrooms, and extracurricular activities, they require the reasonable modification of universal masking unencumbered by a conflicting state law.

For these Plaintiffs, and countless others like them, COVID and the Delta variant pose devastating consequences because "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[2] Similarly, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[3]

Accordingly, this case is brought on behalf of all public-school students with the compromised disabilities to enjoin the Mask Mandate Ban.

## II. STATE LAW INTERFERING WITH FEDERAL LAW IS "NO LAW AT ALL"

The facts about Covid 19, the aggravated risks to children with certain disabilities, and the essential mitigating measure of universal masking are well known, and have been found already, by the Middle District.

Less than three weeks ago, October 22, 2021, the Middle District Court addressed whether Governor Lee's Executive Order No. 84, which gave parents a unilateral right to opt their children out of temporary universal mask mandates, violated the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078, at *2 (M.D. Tenn. Oct. 22, 2021). After hearing from medical experts including Dr. Sara Cross, Dr. Marilyn

---

[2] Centers for Disease Control, *COVID-19: People with Certain Medical Conditions*, May 13, 2021, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 2, 2021).

[3] *Id.*

Augustyn, Dr. Jason Abaluck, Dr. Jay Bhattacharya, and the mother of a plaintiff who is also an immunologist, J.K, along with Governor Lee's witness, the Court made these findings:

(1) The class of children, consistent with the Centers for Disease Control (CDC), are "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease [who] can be at increased risk for severe illness from COVID-19." CDC, COVID-19: People with Certain Medical Conditions (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov-need-extra-precauations/people-with-medical-conditions.html. "[C]hildren with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19." *Id.*; (see also Doc. Nos. 4-5, 4-6)." *Id.* at *8.

(2) That because of "the virus' ubiquity … due, in part, to the ease with which it spreads when people cough, sneeze, or even talk," the American Academy of Pediatrics strongly recommends "universal masking for students, teachers, and support staff . . . because masks are a safe, effective, and critical infection control measure." Id. at *10.

(3) That "even Governor Lee has admitted that '[i]f you want to protect your kid from the [COVID-19] virus or from quarantine, the best way to do that is to have your kid in school with a mask.'" Kimberlee Kruesi, Health Chief: Children now 36% of Tennessee's virus cases, AP NEWS (Aug. 25, 2021), https://apnews.com/article/health-coronavirus-pandemic-tennessee-32b7ff0dc540a2b11cc8c736c67020fe#:~:text=Mark%20Humphrey%2C%20File)-,NASHVILLE%2C%20Tenn.,Commissioner%20Lisa%20Piercey%20said%20Wednesday. Id. at *14-15.

(4) That "the Tennessee Department of Education agrees, noting that masking is a '[p]roven mitigation' strategy and is 'effective' in controlling 'the spread of COVID-19.'" Tenn.

Dept. of Ed., FAQs related to COVID-19's Effect on Tennessee Schools (Sept. 7, 2021), https://www.tn.gov/content/dam/tn/education/health-&-safety/FAQs%20for%20COVID-19%20Effect%20on%20Schools.pdf; (see also Hr'g Ex. 28). *Id.*

(5) That "Ms. Rachel Suppé, Deputy General Counsel at the Tennessee Department of Education, who testified on behalf of Governor Lee, said she had no reason to doubt the effectiveness of masks in schools as a mitigation measure." (Oct. 13 Hr'g Tr. at 92:11-21; 115:18-21). *Id.* at *15.

(6) That, "according to Dr. Cross, who was appointed by Governor Lee to Tennessee's Coronavirus Task Force, "the failure to implement a universal masking policy in schools will likely lead to extremely high rates of transmission of COVID-19 in the classroom setting." (Doc. No. 4-5 ¶¶ 4, 20; see also Hr'g Tr., Doc. No. 77 at 105:2-6). *Id.* at 15.

(7) That "disabled schoolchildren with underlying, high-risk medical conditions have a sufficiently imminent injury that was fairly traceable to Governor Lee's Executive Order No. 84."

(8) That, with respect to Executive Order 84, "where a state law interferes with federal law, it is invalid." *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078, at *32-33 (M.D. Tenn. Oct. 22, 2021).

(9) That: "The Court agrees that there is a high and substantial likelihood that Plaintiffs will prevail on their claims under the ADA and Section 504." *Id*. It found: "Disabled public-school students are excluded from educational programs where they "cannot attend in-person learning at their schools without the very real threat to their lives because of their medical vulnerabilities." Id. at *41.

(10) That "[t]he application of Executive Order No. 84 operates to discriminate against Plaintiffs and other disabled students." *Id*. at *46-47. "[T]hey have been excluded from full and active participation in their schools' programs 'by reason of' their disabilities." 42 U.S.C. § 12132. *Id.*

### III. TENNESSEE'S LAW OBSTRUCTS FEDERAL RIGHTS OF CHILDREN WITH DISABILITIES

The same findings above remain true—even *moreso*—with respect to the Mask Mandate Ban of Tenn. Code Ann. §14-1-104 *et seq.* The Mask Mandate Ban goes even further than Governor Lee's Executive Order to interfere with federal law and place certain children with disabilities at risk.[4]

Tennessee is a recipient of billions of dollars of funds under the American Rescue Plan (ARP), 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021). Yesterday, in a decision from Texas, District Court Judge Yeakel reminded the purpose of the ARP:

> "The ARP Act was enacted to address the impact of the COVID-19 pandemic and facilitate recovery from its health and economic effects. *See* Pub. L. No. 117-2. The act provides nearly $121 billion in Elementary and Secondary School Emergency Relief funding in order to "help schools return safely to in-person instruction maximize in-person instructional time, sustain the safe operation of schools, and address the academic, social, emotional, and mental health impacts of the COVID-19 pandemic on the Nation's students." American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021).

---

[4] The disabilities include: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

*E.T. et. al. v. Morath et. al.* No. 1:21-CV-717-LY (Doc. 82, p. 19)(W.D. Tex. November 10, 2021).

In *E.T.,* Texas Governor Greg Abbott had issued an Executive Order ("GA-38") prohibiting local school districts from imposing mask requirements. (*Id*. at p. 5). Seeking to enforce GA-38, the Attorney General of Texas, Kenneth Paxton, "made public threats that he will sue other school districts to enforce GA-38, has tweeted about his litigation campaign against school districts who seek to require masking, and has posted on his official website a list of school districts including all school districts Plaintiffs attend that he claims are in violation of GA-38." *Id*. at p. 12.

Judge Yeakel enjoined the Texas Executive Order under the ADA and Section 504, much like this Court, Judge Crenshaw, did with Executive Order 84. Additionally, Judge Yeakel used the ARP and the "court's equitable jurisdiction" in conjunction with the Supremacy Clause of the Constitution to strike down Governor Abbott's Executive Order. *Id*. at p. 22.

Much like General Paxton coming after schools and vicariously harming students with disabilities, Tennessee is doing the same with its state law. This was entirely foreseeable. In August of 2021, the United States Secretary of Education specifically warned Tennessee that: "Tennessee's actions to block school districts from voluntarily adopting science-based strategies for preventing the spread of COVID-19 that are aligned with the guidance from the Centers for Disease Control and Prevention (CDC) puts these goals at risk and may infringe upon a school district's authority to adopt policies to protect students and educators as they develop their safe return to in-person instruction plans required by Federal law."

The Secretary of Education also reminded Tennessee of its receipt of billions of dollars in federal funding under the American Rescue Plan Act of 2021(ARP)[5] as well as the Elementary

---

[5] The ARP provided Tennessee state government with $3.91 billion and allocated an additional $2.28 billion to Tennessee city and county local governments. https://www.tn.gov/environment/arp/about.html.

and Secondary School Emergency Relief (ESSER),[6] both dependent upon Tennessee using such funds to safely return students to in-person instruction by following the safety recommendations of the CDC. However, Governor Lee used a Twitter platform to make known his stance: "Regarding the Biden Administration letter: Parents know better than the government what's best for their children."

On August 30, 2021, Acting Assistant Secretary of Education for Civil Rights, Suzanne Goldberg, transmitted a letter to Tennessee Commissioner of Education Penny Schwinn notifying her that the Department of Education, Office of Civil Rights (hereinafter "OCR") had initiated a directed investigation into whether Executive Order 84 interfered with the ability of schools to comply with their responsibilities under Section 504 and the ADA. In response to this, Tennessee General Assembly Speaker Cameron Sexton issued a statement via Twitter: "#TN will not stand for @Potus unconstitutional Covid mandates. HJR 9005 sends a clear message to all that we are prepared to take action to preserve individual choice, freedom & liberty while reigning in federal overreach through nullification." That same day the General Assembly passed SJR9005, which explicitly stated:

- BE IT FURTHER RESOLVED that it is the right of the Tennessee General Assembly to enact such legislation as it deems necessary to nullify actions taken by the federal government regarding COVID-19 when those actions violate the United States Constitution.

With the Mask Mandate Ban, the state has succeeded in acting upon its hyperbole, creating a liability to *all students* with disabilities, including members of the Class, in every public school in Tennessee by interfering with their rights under the ADA, Section 504, and the ARP, subjecting

---

[6] Over $4.2 billion in ESSER federal funds were allocated to Tennessee. https://www.tn.gov/education/news/2021/7/15/tdoe-receives-approval-of-state-spending-plan-from-u-s--department-of-education-for-historic-federal-funding-for-k-12-education--.html

them all to loss of funding. If the school complies with *federal* law, they risk losing state funding. If the school complies with *state* law, they risk losing federal funding.

The state's infringements on federal law are manifold, obvious, and glaring.

### *The Mask Mandate Ban Ties Officials Hands Until It Is Too Late*

First, principals and presidents of schools must wait until "severe conditions" beset children to even allow a mask mandate. Tenn. Code. Ann. §14-1-104(2).[7] Waiting until the school is enveloped with Covid poses deadly threats to children with the qualifying disabilities, the opposite of *preventive* measures of masking. As Dr. David Aronoff, an infectious disease expert at Vanderbilt University Medical Center, is colorfully quoted as saying, this is akin to forbidding firefighters from entering the house until it is engulfed, or forbidding beachgoers from evacuating until the hurricane touches down. https://www.tennessean.com/restricted/?return=https%3A%2F%2Fwww.tennessean.com%2Fstory%2Fnews%2Fhealth%2F2021%2F10%2F31%2Ftennessee-anti-mask-mandate-forbid-until-after-surge-strikes%2F6188301001%2F.

### *The Mask Mandate Ban Creates an Artificial Blanket Limitation on Universal Masking*

Second, principals and presidents can only invoke wearing a mask for "no more than fourteen (14) days." *Id*. at §14-2-104(a)(3)(C). However, the need for protections may be substantially longer. The ADA and Section 504 seek to eliminate arbitrary blankets, focusing instead upon individualized needs. The State has imposed this arbitrary, one-size-fits-all

---

[7] Severe conditions are defined as a "state of emergency" or when "[a] county has an average rolling fourteen-day COVID-19 infection rate of at least one thousand (1,000) new known infections for every one hundred thousand (100,000) residents of the county based on the most recent data published by the department of health. For purposes of this subdivision (20)(B), the number of new cases per one hundred thousand (100,000) persons within the last fourteen (14) days is calculated by adding the number of new cases in the county in the last fourteen (14) days divided by the population in the county by one hundred thousand (100,000)." *Id*. at §14-1-101(20).

"accommodation" in spite of previously taking the position in *G.S. v. Lee* that "based on the student's particular and individuated circumstances, the instruction, related services, accommodations, and educational placements [necessary due to COVID-19] will vary widely." *G.S. v. Lee*, 2:21-cv-0552-SHL-atc, ECF 24, PageID 119 (W.D. Tenn. 2021). This change of stance appears entirely due to an effort to circumvent federal law.

### *The Mask Mandate Ban Deprives Schools the Ability to Purchase Masks*

Third, students can only invoke wearing a mask where "the school provides … N95" face coverings. *Id*. at §14-2-104(4). However, N95 masks are not only expensive in comparison to cloth counterparts, the statute facially precludes the use of state funds to purchase such masks, §14-2-104(3), and, it seems, federal funds too, §14-6-101. This could cost larger school districts millions of dollars and smaller ones a sum that is not sustainable either.

### *The Mask Mandate Ban Places Limitations on Who and How Accommodations May be Requested*

Fourth, the state law imposes a "written request" requirement for reasonable accommodation. *Id*. at §14-2-104(d)(1). No such obligation is required under the ADA or 504, where oral requests are sufficient. Notably, the state law does not even reference Section 504.

Fifth, the state law imposes a requirement that a "parent or legal guardian" make the written request for all minors. *Id*. There is no such obligation required under the ADA or Section 504, many of whom have self-advocacy abilities. Such a requirement could have particularly troubling implications for students in the custody of the State, short-term foster care, temporary or protective custody situations, or in an institutional placement where the nature of the caregiver-child relationship can be transient or the identity of the individual having authority to make such a decision unclear.

*The Mask Mandate Changes the Legal Standard for Making Accommodations*

Sixth, the state law substitutes a "to the extent practicable" standard for evaluating the request for accommodation. *Id*. at §14-2-104(d)(2). The ADA and Section 504 require action that is not a "fundamental alteration in the nature of a service, program, or activity" or "undue financial and administrative burden." See 28 CF.R. 35.150(a)(3). The statute essentially instructs school principals to substitute their own judgment for existing legal standards. Even if the state statute could be construed to avoid this conflict, its mere existence frustrates and interferes with the ADA and Section 504 by inviting confusion and error on the part of school administrators.

*The Mask Mandate Ban Is Operationally Impracticable and Requires Segregation*

Seventh, the state law provides that, for approved requests for accommodation, "the school shall place the person in an in-person educational setting in which other persons who may place or otherwise locate themselves within six feet (6') of the person receiving the reasonable accommodation for longer than fifteen (15) minutes are wearing a face covering provided by the school that: (A) For persons twelve (12) years of age or older, meets the U.S. National Institute for Occupational Safety and Health N95 classification of air - 12 - 010418 filtration, meaning that the face covering filters at least ninety-five percent (95%) of airborne particles, including droplets containing COVID-19; and (B) For persons under twelve (12) years of age, but over five (5) years of age, is age-appropriate and provides air filtration similar to the face coverings described in subdivision (d)(2)(A)."

This provision requires *placement* of ("shall place") persons with disabilities with persons who "are wearing a face covering" and will stand "within six feet" for longer than "fifteen minutes." This would result in separate learning environments, i.e. segregation, thus violating the ADA's integration mandate. Moreover, this is not operationally viable for public school districts.

Thousands of students have qualifying disabilities. This provision requires public schools to constantly shuffle children back and forth between settings. Operationally, this would cause constant administrative disruption inside the schools, as opposed to a single, uniform mandate. Against the backdrop of this operational dysfunction, students with masks will experience an increased risk of appearance-bullying and ostracization, as the preventive measures against Covid continue to be weaponized by adults. Making the wearing of a particular type of mask a marker for students with disabilities is a stigmatization that serves no rational purpose.

*The Mask Mandate Ban Denies Funding to Districts and Students Who Implement Masking*

Eighth, the state law provides that a school "shall not use state funds to mandate or require students to wear face coverings in violation of this section." *Id*. at §14-2-104(e). As a penalty, the commissioner of education may withhold state school funds in retaliation. *Id.* As a result, every Tennessee child with a disability is subject to loss of funding for requesting students wear face coverings consistent with the ADA and Section 504.

*The Mask Mandate Ban Prohibits Quarantines by School Districts of Infected Persons*

Ninth, the state law prohibits local health entities, mayor, governmental entities, and schools from issuing a "quarantine" of any person "for purposes of COVID-19." *Id*. at §14-4-101(b). This obstructs efforts at contract tracing—quarantining the infected person and identifying and notifying close contacts who may have been infected through direct exposure to the person. The law almost ensures that COVID-19 is aggravated, not mitigated.

This Court has once already invoked the Supremacy Clause against Executive Order 84. It must do so here too. "A discriminatory state law is not a *defense* to liability under federal law; it is a *source* of liability under federal law." *Barber v. Colorado* , 562 F.3d 1222, 1233 (10th Cir. 2009). 'But a state law at odds with a valid Act of Congress is no law at all.'" *McCulloch v.*

12
Case 3:21-cv-00853   Document 5-1   Filed 11/12/21   Page 12 of 17 PageID #: 69

*Maryland*, 17 U.S. 316, 4 L. Ed. 579 (1819); U.S. Const. art. VI, cl. 2 (Supremacy Clause). "Accordingly, the demands of the federal Rehabilitation Act do not yield to state laws that discriminate against the disabled; it works the other way around." *Barber v. Colorado* , 562 F.3d 1222, 1234 (10th Cir. 2009)(Gorsuch, J. concurring).

### IV. THE SCHOOL DISTRICTS ARE REACTING IN OPPOSITE DIRECTIONS WITH STUDENTS FACING A DENIAL OF FUNDING

Some school districts believe they must honor the Mask Mandate Ban, precluding children from seeking universal masking apart from the obstacles of the Tennessee law. For example, FSSD has advised it will follow the Mask Mandate Ban thus exposing students to loss of *federal* funding, along with creating unnecessary health and safety risks. (Complaint, ¶80). Similarly, Williamson County Board of Education, like many other school districts, believes that it lacks the authority to resist state laws on its own, requiring a decree from this Court first before it may act responsibly. (*Id*. at ¶81). These schools contribute to the loss of *federal* funding.

Others, like Metro Nashville, have in the past refused to adhere to illegal state actions and continued honoring mask mandates pursuant to Board Resolution. (*Id*. at ¶83). Putting the children first, no action has been taken in Metro Nashville to roll back or remove the universal mask policy in recognition of the Mask Mandate Ban passed by the Tennessee legislature. As a result, students with disabilities in Metro Nashville face loss of *state* funding for the universal mask mandate.

In Knox County, which is under a federally imposed mask mandate, its superintendent advised that KCS must honor the federal mandate, not any contrary state law. (*Id*. at ¶84). Accordingly, this County, and these students, risk losing *state* funding.

For the reasons set forth above, the Mask Mandate Ban violates the ADA, Section 504, and equitable principles of the Supremacy Clause through the ARP. Without universal masking as a strategy, the state law prevents timely, in-person learning for children with disabilities without

"the very real threat to their lives because of their medical vulnerabilities." *R.K.*, at *41. As with Executive Order 84, but even more so, the Mask Mandate Ban, "operates to discriminate against Plaintiffs and other disabled students" because, if not enjoined, "they [will again be] excluded from full and active participation in their schools' programs 'by reason of' their disabilities." 42 U.S.C. § 12132. *Id.*

## V. THE MASK BAN MUST BE STRICKEN UNDER THE EQUAL PROTECTION CLAUSE

With the Mask Mandate Ban, the state *purports* "to enact laws to protect the health and safety of its citizens," or to protect the right to "personal security and liberty." Tenn. Code Ann. §14-1-102. But in fact, it is unconstitutionally discriminatory against students with disabilities.

The state has no right to make children with disabilities suffer or die for others' perceived "liberties" by banning masking until it is too late, under circumstances conflicting with federal law. The Mask Mandate Ban *increases* Plaintiffs' and the class's own risk of exposure, illness, hospitalization, and death in public schools. Putting these children in separate rooms is no solution: it violates the ADA's integration mandate, promises foreseeable bullying, and creates an operationally impossible situation for school districts. (Complaint, ¶122).

The Mask Mandate Ban appears to be grounded in a false claim of "liberty," a freedom from "unwanted touching of one's limbs and body." But there is no such constitutional protection against masks. And the State surely knows it.

In Opinion No. 20-14, the Attorney General addressed whether it was Constitutionally permissible for the government to mandate face coverings. (Complaint, ¶31).[8] In the Analysis

---

[8] Citing: https://www.tn.gov/content/dam/tn/attorneygeneral/documents/ops/2020/op20-14.pdf

section, the Attorney General set forth a background about COVID-19 that is equally applicable here:

> COVID-19 "is particularly dangerous not only because it results in severe illness, but also because it is easily and rapidly transmitted. The disease is believed to be transmitted through respiratory droplets produced by an infected person, close personal contact, or touching a surface with the virus on it. The virus spreads very easily through "community spread." While infected individuals are thought to be the most contagious when they are showing symptoms, asymptomatic individuals are also capable of spreading the virus,13 which makes response efforts particularly daunting."

As the Attorney General concluded, "the mandate serves the important governmental interest of protecting the safety of the public by mitigating the spread of COVID-19." In fact, the Attorney General likened masking to mandatory seat belts and motorcycle helmets, all valid exercises of power.

Even the General Assembly realizes that its Mask Mandate Ban is harmful. It does not apply it to private school children. And when businesses, including Ford Motor Company, explained that it should not apply to private employers, the law excluded them. This Court should apply that same logic that the General Assembly reserved for those with the influence of affluent private school parents and multinational corporations to the most vulnerable members of our society, children with disabilities.

## VI. CONCLUSION

In the end, the Mask Mandate Ban is little more than a thumb in the eye to students who have sought and obtained injunctive relief requiring availability of universal masking under federal law. It seeks to hurt *them*, and school district who follow the science, through cutting their funds and denying them the protection of federal civil rights laws.

For the foregoing reasons, the Court should grant Plaintiffs' Motion. Plaintiffs ask the Court to consider the Complaint, the Declarations and full body of evidence in *R.K. v. Governor*

15
Case 3:21-cv-00853   Document 5-1   Filed 11/12/21   Page 15 of 17 PageID #: 72

*Lee*, as well as the Verified Complaint and Declarations submitted in this matter, and grant the temporary restraining order and preliminary injunction.

Respectfully Submitted,

**GILBERT LAW, PLC**

/s Justin S. Gilbert_____
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
Facsimile: 423.756.2233
justin@schoolandworklaw.com

**DONATI LAW, PLLC**

/s/Bryce W. Ashby
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Craig A. Edgington -—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
Email:
bryce@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com

&

**THE SALONUS FIRM, PLC**
/s Jessica F. Salonus_____
JESSICA F. SALONUS (28158)
139 Stonebridge Boulevard
Jackson, Tennessee 38305
Telephone: (731) 300-0970
Facsimile: 731.256.5711
jsalonus@salonusfirm.com

***ATTORNEYS FOR PLAINTIFFS***

16
Case 3:21-cv-00853   Document 5-1   Filed 11/12/21   Page 16 of 17 PageID #: 73

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the Office of Attorney General via email on this the 12th day of November, 2021.

/s/ Jessica F. Salonus