# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **R.K.**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | **No. 3:21-cv-00853** |
| | ) | **Chief Judge Crenshaw** |
| **GOVERNOR BILL LEE, in his official** | ) | **Magistrate Judge Frensley** |
| **capacity as GOVERNOR OF TENNESSEE**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

Tennessee Code Annotated Section 14-2-104(d) ("Section 104(d)") does not deny Plaintiffs any reasonable accommodation available under the Americans with Disabilities Act ("ADA"). Rather, it *expressly provides* for such accommodations. Tenn. Code Ann. § 14-2-104(d)(1) ("A school shall … provide a reasonable accommodation pursuant to the [ADA]."). This is reason enough for Plaintiffs' facial challenge to Tennessee's COVID Omnibus Act (the "Act"), filed within hours of its enactment, to fail. *See Dean v. McWherter*, 70 F.3d 43, 45 (6th Cir. 1995) ("As plaintiffs bring a facial challenge to the statute, it must be rejected unless there exist no set of circumstances in which the statute can be constitutionally applied." (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987))).

Moreover, Plaintiffs lack standing to challenge the Act. The Act does not impede their ability to seek a reasonable masking accommodation. Plaintiffs are not injured because the Act does not deny a reasonable ADA accommodation, and nor is a denial imminent. Any hypothetical denial of an accommodation is not made by Defendants, but by principals and school presidents not party to this suit. Tenn. Code Ann. § 14-2-104(d)(2). Accordingly, the Act does not result in injury to Plaintiffs and enjoining the Act would not give Plaintiffs the relief they seek.

Plaintiffs' lack of standing aside, no preliminary injunction factor supports Plaintiffs' demand for emergency injunctive relief. Plaintiffs cannot prevail on their claims under the ADA and Section 504 because Section 104(d) expressly requires schools to provide reasonable accommodations. No school district's state funding would be placed at issue by implementing a mask mandate required as a reasonable accommodation by the ADA, because such mandates do not violate Section 104(d). Because Plaintiffs may still seek and receive a community masking accommodation under the ADA, if reasonable, they will not suffer any irreparable harm if the Court denies their request for a preliminary injunction. Nor does the public interest favor granting

Plaintiffs' injunction.  For these reasons, the Court should deny Plaintiffs' demand for emergency injunctive relief.

## BACKGROUND

Plaintiffs are eight Tennessee students and their parents.  They assert that the Plaintiff students cannot go to school safely because they have disabilities that place them at higher risk to negative outcomes from COVID-19 infection.  Plaintiffs assert that because of these disabilities, they are needful of a "community masking" accommodation at their schools.

As relevant to this case, a school may implement a mask mandate when a school principal determines that a mask mandate is a reasonable accommodation under the ADA.  Tenn. Code Ann. § 14-1-104(d).  Two sections of the Act set the circumstances under which a school may implement mask mandates.  Under the first, Section 104(a), a school may not institute a mask mandate unless "severe conditions exist."[1]  Tenn. Code. Ann. § 14-1-104(a)(2).  Section 104(d) creates a carveout from Section 104(a) that allows schools to implement mask mandates pursuant to a request for ADA-compliant accommodations.  Tenn. Code Ann. § 14-1-104(d)(2) ("Notwithstanding subsection (a): A school shall … provide a reasonable accommodation pursuant to the [ADA].").  The evaluation of whether a mask mandate is a reasonable accommodation is made by the principal or school president, considering the individualized circumstances of the request, not by the Governor or the Commissioner of the Tennessee Department of Education ("TDOE").

If a school provides a reasonable accommodation pursuant to Section 104(d), it "shall place the person in an in-person educational setting in which other persons . . . are wearing a face

---

[1] "Severe conditions" exist when the Governor has declared a state of emergency for COVID-19 and a county has an average rolling fourteen-day COVID 19 infection rate of at least 1,000 new known infections for every 100,000 residents of the county based on the most recent data published by the department of health.  Tenn. Code Ann. § 14-1-101(20).

3

covering provided by the school." *Id*. at § 14-2-104(d)(2).  In such cases, the school must, at a minimum, require all persons "who may place or otherwise locate themselves within six feet (6') of the [accommodated person] for longer than fifteen (15) minutes." *Id*.  Section 104(d) further specifies that the school should provide N95 or equivalent masks for students ages twelve years and older who will be in this extended proximity to the accommodated student.  *Id*. at § 14-2-104(d)(2)(A).  For students under twelve in extended proximity to the accommodated person, Section 104(d) states that an age-appropriate mask should be provided.  *Id*. at § 14-2-104(d)(2)(A).  Nothing in the Act prohibits schools from implementing a broader mask mandate as an ADA accommodation or implementing other reasonable accommodations.  Schools have broad discretion to tailor the accommodations to the circumstances.

Plaintiffs filed this suit within hours after the Governor signed the Act into law.  The verified complaint does not contend that Plaintiffs made any request for a reasonable accommodation under the ADA or Section 104(d) before filing suit.  (Compl., ECF 1.)

## STANDARD OF LAW

A preliminary injunction is an "extraordinary and drastic remedy" that should "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distribs. Of Oh., LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (internal quotations omitted).  Relevant to this case, "[t]he purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *Id*. at 848.  "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation omitted).  And in determining whether injunctive relief is proper, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*.

4

Four factors determine when a court should grant injunctive relief: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest. *S. Glazer's Distribs*, 860 F.3d at 849; 11A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2948 (3d ed. 1995 & Supp. 2021).

Whether the movant has a strong likelihood of success on the merits is a question of law. *See Ammex, Inc. v. Wenk*, 936 F.3d 355, 359-60 (6th Cir. 2019) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam)). In addition to demonstrating a likelihood of success on the substantive claims, a plaintiff must also show a likelihood of success of establishing jurisdiction. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018). If a plaintiff cannot show a likelihood of jurisdiction, then the court will deny injunctive relief. *See id.*

Further, because Plaintiffs make a facial challenge to the Act, they must show that "there exists no set of circumstances in which the statute can constitutionally be applied." *Dean*, 70 F.3d at 45 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

## ARGUMENT

### I. The Court lacks jurisdiction over this matter.

#### A. Plaintiffs lack standing to assert their claims.

Standing is a threshold determination that the Court must address before inquiring into the merits. *See Davis v. Detroit Pub. Schs. Cmty. Dist.*, 899 F.3d 437, 443 (6th Cir. 2018) ("[B]efore we address the merits of Plaintiffs' claims, we must first determine whether Plaintiffs have Article III standing to raise them."). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

by a favorable ruling.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farm*s, 561 U.S. 139 (2010)).  A plaintiff must have standing "for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

### 1.    Plaintiffs have no injury that is fairly traceable to the Act.

Because the Act allows schools to provide the reasonable accommodations in reference to masking, Plaintiffs have no actual or imminent injury.  Plaintiffs seek "community masking" on the basis of their disabilities.  (Compl., ECF 1, PageID 10).  But, where appropriate, Plaintiffs are not denied community masking by the Act, which not only authorizes, but requires, schools to provide mask mandates as a reasonable accommodation under the ADA.  Tenn. Code Ann. § 14-2-104(d)(1) ("A school shall … provide a reasonable accommodation pursuant to the [ADA].").  Accordingly, nothing in the Act precludes, or even hinders, Plaintiffs' ability to request and receive a mask mandate from their schools as an ADA accommodation.  Plaintiffs do not have standing because they cannot establish a denial, let alone an imminent denial, of their requested relief, and therefore do not have an actual or imminent injury—a prerequisite to standing.  At most, Plaintiffs allege that some provisions of Section 104(d) might, in some circumstance, interfere with operation of the ADA for some hypothesized student.  Namely, Plaintiffs fault the statute for requiring a written request for an accommodation and for requiring that it be submitted by a student's parent or guardian.   Plaintiffs theorize about circumstances where these requirements could frustrate some other student's need for an accommodation, but they do not allege, as they must, that these requirements prevent any of *them* from obtaining masking as an accommodation.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way." (internal quotation marks omitted)).

6

Further, Plaintiffs claim that the law changes the standard for granting accommodations by requiring them only "to the extent practicable." As discussed below, Plaintiffs misread the statute. But even if their reading carried the day, they cannot show that it is any more than *possible* that some principal in some school in the State could deem a mask mandate to be a reasonable accommodation but not practicable. And all requests for accommodation are made to, and evaluated by, the principal or president of the school. Tenn. Code Ann. § 14-2-104(d)(2) ("The principal or president shall issue a decision approving or denying the request in writing."). If a principal were to deny any Plaintiff's reasonable accommodation request for masking, then her independent decision is the cause of the purported injury, not the Act. *See Clapper*, 568 U.S. at 414 (expressing "reluctance to endorse standing theories that rest on speculation about the decisions of independent parties."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding that an injury must be fairly traceable to the defendant and not the result of "the independent action of some third party not before the Court.").

The same must be said for Plaintiffs' claim that the law will result in segregation of disabled students. As discussed *infra*, Part II.A.2.iii, nothing in the Act requires, let alone contemplates, segregation of disabled students. And if some principal decides to separate disabled students from the rest of the student population, it would be her decision, not the law, that caused the injury.

Similarly, Plaintiffs have no injury under the Supremacy Clause because "the Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015). Because the Supremacy Clause does not independently confer any rights on Plaintiffs, their injury cannot be rooted in its purported violation. To the extent that Plaintiffs seek to bring an independent claim based on the American Rescue Plan Act ("ARPA"), Plaintiffs have no legal right to receive ARPA funding. At

most, Plaintiffs seek third party standing to bring claims on behalf of their school districts. *Cf.*

*Lawrence County v. Lead-Deadwood School Dist. No. 40-1*, 469 U.S. 256 (1985) (entertaining

claim where government entity allegedly entitled to funds brought suit in its own right). Under

third-party standing, Plaintiffs must establish that they have "a 'close' relationship with the person

who possesses the right," and that "there is a 'hindrance' to the possessor's ability to protect his

own interest." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (quoting *Powers v. Ohio*, 499 U.S.

400, 411 (1991)). Here, school districts face no hindrance in enforcing their rights to ARPA funds.

*See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 644 F.3d 197, 208-209 (6th Cir. 2011).

### 2. Plaintiffs' requested relief does not provide redress for their purported injury.

Finally, this suit cannot provide Plaintiffs any legal redress, another prerequisite of

standing. An injury is redressable if a court order can provide "substantial and meaningful relief."

*Larson v. Valente*, 456 U.S. 228, 243 (1982). Plaintiffs posit that it is the responsibility of the

Governor and the Commissioner to enforce Section 104 and ask the Court to enjoin that

enforcement. However, Defendants do not have enforcement responsibility over Section 104.

Rather, the Act provides that any decision to grant or deny such accommodations is made at the

local level, not by Defendants.

In other words, an injunction against the Defendants in this case would not benefit

Plaintiffs. Governor Lee has no enforcement authority related to Section 104 at all. And although

Commissioner Schwinn has some authority in Section 104, she has no authority to issue or deny

the ADA accommodations Plaintiffs seek.

No school district, school, or principal is a defendant in this lawsuit. The Court therefore

can have no confidence that an injunction would get the Plaintiffs what they seek: a masking

accommodation in their individual schools. *See Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345 (6th

8

Cir. 2016) (blind plaintiff did not establish that his challenge to ABA requirement that law schools require entrance exam was redressable because, even if the court made the requirement optional, non-party law schools could still require it). Instead, Plaintiffs essentially urge the Court to issue an advisory opinion to school districts about whether Section 104(d) complies with federal law. (*See* Plaintiffs' Memo. of Law, ECF 5-1, PageID 70-71; Compl., ECF 1, PageID 22-24, ¶¶ 79-86 (complaining that school districts are in "disarray"). But federal courts do not issue advisory opinions. *See Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011) ("The 'case or controversy' requirement prohibits all advisory opinions.").

### B. Defendants have sovereign immunity on three of Plaintiffs' Claims.

In any event, the Court must dismiss three of Plaintiffs' claims (all save the Section 504 claim) against Defendants owing to Eleventh Amendment immunity. Defendants, state officials sued in their official capacity, are entitled to Eleventh Amendment immunity. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) ("'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' i.e., against the State." (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989))). Because Defendants have Eleventh Amendment immunity, the Court lacks jurisdiction over these claims.

There are three exceptions to sovereign immunity: waiver, abrogation, and *Ex parte Young*. *See id.*; *see also Ex parte Young*, 209 U.S. 123, 157 (1908). None applies here.

First, the State has not waived sovereign immunity with respect to any of Plaintiffs' claims. Second, although Congress has abrogated sovereign immunity for Section 504 claims, there is no abrogation for Plaintiffs' ADA discrimination claims, which sound in equal protection. *Popovich*, 276 F.3d at 812 ("[C]ongressional authority under section 5 [of the Fourteenth Amendment] to

enforce the Equal Protection Clause is limited and will not sustain the Disabilities Act as an exception to Eleventh Amendment state immunity."); *see also Hembree v. Off. of Dist. Att'y Gen. for 13th Jud. Dist.*, No. 2:18-cv-00097, 2019 WL 1437913, at *2 (M.D. Tenn. Apr. 1, 2019) (Crenshaw, C.J.) ("Congress has not abrogated state immunity for purpose[s] of damages claims under . . . equal protection claims under Title II of the ADA."). Similarly, Congress has not abrogated claims of sovereign immunity for § 1983 claims. *See Hembree*, 2019 WL 1437913, at *2 ("Congress has not abrogated state immunity for purpose[s] of damages claims under ... 42 U.S.C. § 1983." (citing *Quern v. Jordan*, 440 U.S. 332, 350 (1979))).

Third, the *Ex parte Young* exception does not apply to the Governor because "*Young* does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). The Governor lacks even a "bare connection to administering [the Act]," and so he is not a proper defendant under *Ex parte Young*. *Id.* Indeed, the Act does not give the Governor any special powers of enforcement or supervision respecting mask mandates or accommodations in schools.

Moreover, it is not enough for Commissioner Schwinn to have "some connection with the enforcement of the act"; Plaintiffs must establish that she has "threaten[ed] and [is] about to commence proceedings." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996). Plaintiffs do not point to any imminent enforcement actions against their school districts that could justify this sort of pre-enforcement review. Indeed, Commissioner Schwinn's enforcement authority only arises *after* a school's governing body—which plays no role in the ADA accommodation process in Section 104(d)—has used state funds in violation of

10

Section 104.  Plaintiffs have not identified any such violation, which is not surprising since they initiated suit mere hours after the Act became law.

### C.  The case is not ripe for adjudication.

Article III limits the jurisdiction of courts to "cases" and "controversies."  Accordingly, federal courts lack jurisdiction where an injury is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  Plaintiffs here have neither requested nor been denied not an accommodation under the Act.  As noted above, this case presents the prototypical request for an advisory opinion.

## II.  Plaintiffs are unlikely to succeed on the merits.

### A.  The Act does not violate the ADA or Section 504.

The Sixth Circuit recognizes two types of claims under Title II of the ADA: intentional discrimination and failure to accommodate.  *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017).  Plaintiffs are unlikely to succeed under either theory.

#### 1.  The Act does not discriminate against Plaintiffs.

To prevail on a claim of intentional discrimination under Title II, plaintiffs must show: (1) they are disabled; (2) they are "otherwise qualified" to participate in the public program; and (3) they were subject to discrimination because of their disabilities.  *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452-53 (6th Cir. 2021) (citing *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016)).  Element (3) requires "establish[ing] a but-for relationship between the protested act and the individual's disability."  *Gohl*, 836 F.3d at 672.  This requirement demands "sufficiently significant evidence of animus toward the disabled that is a but-for cause of the discriminatory behavior."  *Id.* (quoting *Anderson v. City of Blue Ash*, 798 F.3d

11

338, 357 (6th Cir. 2015)).  This animus must be aimed at Defendants "in particular."  *Anderson*,
798 F.3d at 357.  Plaintiffs have not even alleged, much less shown, animus by the Governor or
Commissioner.

### 2. The Act does not deny Plaintiffs a reasonable accommodation under the ADA.

The Act does not deny Plaintiffs a reasonable accommodation because it expressly requires
schools to provide reasonable accommodations under the ADA.  Tenn. Code Ann. § 14-2-
104(d)(1) ("A school shall … provide a reasonable accommodation pursuant to the [ADA].").
Where, as here, a student seeks an accommodation under the ADA, Section 104(d) (and *not* Section
104(a)) is the applicable section of the Act.

#### i. Section 104(a) is not applicable to Plaintiffs' claims.

Plaintiffs' challenge to the Act instead focuses primarily on Section 104(a).  However,
Section 104(a) is a general rule setting forth criteria for a school mask mandate in response to a
potential spike in COVID-19 cases in the community.  Under the plain language of the Act, the
requirements of Section 104(a) do not apply where, as here, a mask mandate is sought pursuant to
a reasonable accommodation request under the ADA.  *See id*. § 14-2-104(d) ("Notwithstanding
subsection (a):").  Plaintiffs' reading is unpersuasive, as it ignores provisions of the Act.  *See
Bennett v. Spear*, 520 U.S. 154, 173 (1997) ("It is the cardinal principal of statutory construction
that it is our duty to give effect, if possible, to every clause and word of a statute rather than to
emasculate an entire section.").  Because the requirements of Section 104(a) do not apply to this
situation, Plaintiffs are unlikely to succeed on their first, second, and third challenges to the Act.

12

ii.     **Section 104(d) does not impede Plaintiffs from requesting a reasonable accommodation.**

Plaintiffs' fourth and fifth challenges fail because there is no indication in the record that the Act creates any impediment to Plaintiffs' ability to seek a reasonable accommodation under the ADA. Plaintiffs challenge the Act's requirements that a minor's "parent or legal guardian must provide [a] written request [for accommodation] on the minor's behalf." Tenn. Code Ann. § 14-2-104(d)(1). To the extent that such provisions conflict with the ADA,[2] they are not impediments to Plaintiffs, and as such, Plaintiffs lack any standing to challenge these provisions.

Plaintiffs are not harmed by a requirement for a "written request" for accommodations because there is no evidence that Plaintiffs have made *any* request to their districts for an accommodation under the ADA. Assuming arguendo that the ADA requires government entities to accept oral requests for accommodation, Plaintiffs have not shown that they have orally requested or been denied a reasonable accommodation. Moreover, nothing in the record shows that providing a written request for an accommodation puts Plaintiffs at a risk of imminent harm such as to justify the extraordinary relief of a preliminary injunction. Similarly, all Plaintiffs in this matter are represented by a parent as next friend. (Complaint, ECF 1, PageID 1.) To the extent that some hypothetical plaintiff may have difficulty overcoming the requirement that a request be submitted by a parent or legal guardian, that plaintiff is not before the Court. Neither of these challenged provisions have impeded Plaintiffs from seeking an accommodation from their school under the ADA.

---

[2] Although the Act only references the ADA directly, the "ADA is not to 'be construed to apply a lesser standard than the standards applied under … Rehabilitation Act of 1973'" *MX Gp. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002) (quoting 42 U.S.C. § 12201(a)); *see also Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 836 (6th Cir. 2020) ("[W]e have long merged our analyses under the ADA and Rehabilitation Act."). Therefore, any accommodation available under Section 504 is also available under the ADA.

13

### iii. Plaintiffs misconstrue the Act to create a conflict with the ADA contrary to canons of statutory construction.

Plaintiffs' sixth and seventh challenges to the Act would require the Court to read conflicts with the ADA into the Act, rather than construing the Act in such a way as to avoid conflict, as required by canons of statutory construction. *See In re Schafer*, 689 F.3d 601, 605 (6th Cir. 2012) ("[W]e construe the statute to avoid constitutional infirmity when 'fairly possible'" (quoting *Eubanks v. Williamson*, 937 F.2d 118, 1122 (6th Cir. 1991))).

Plaintiffs' claim that the Act conflicts with the ADA is precluded under canons of statutory construction. The ADA "does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.164. The Act's requirement that an accommodation be "practicable" and the ADA's requirements that an accommodation not result in a "fundamental alteration" or "undue financial and administrative burden" are nearly synonymous. *See James v. Runyon*, 1992 WL 382311, at *4 (E.D. Penn. Dec. 9, 1992) (stating that an accommodation that "would place an undue burden on the employer" is "not possible or practicable"). The Court should therefore read these requirements as coextensive to avoid creating needless conflict between the Act and the ADA with respect to accommodations.

Similarly, the Act does not require—or even suggest—segregation of a student requesting an accommodation. Rather, the Act allows schools to implement a mask mandate so that the accommodated student be provided in-person education, which does not differ from the accommodation Plaintiffs have sought. Tenn. Code Ann. § 14-2-104(d)(2) ("[T]he school shall place the person in an in-person educational setting[.]"). Nothing in Section 104(d) speaks to *who* will be within 6 feet of the accommodated person, other than that such persons shall be required

14

to mask.  The Act is fully consistent with allowing accommodated students to go about their normal school day.

Plaintiffs' arguments about "operational dysfunction" appear to arise from this misperception that the Act causes some form of student segregation.  (Plaintiffs' PI Memo, ECF 5-1, PageID 69 ("This provision requires public schools to constantly shuffle children back and forth between settings.").)  In connection with such an accommodation, the Act allows *at least* masking for "persons who may place or otherwise locate themselves within six feet (6') of the person receiving the reasonable accommodation for longer than fifteen (15) minutes."  There is no "shall not" language in Section 104(d); nothing precludes schools from requiring additional masking that may be a part of a reasonable accommodation.

### 3. The Act does not threaten state funding for ADA compliance.

Plaintiffs' eighth challenge to the Act simply misreads it.  Plaintiffs contend that a school risks losing state funding when it provides an accommodation involving masks to a student under the ADA.  As noted above, Section 104(d) requires schools to provide reasonable accommodations under the ADA, which may include mask mandates.  Therefore, any school that provides such an accommodation is not "in violation of this section" and therefore does not put state funding at risk.

### 4. Plaintiffs do not show any harm from the "quarantine" provision.

Plaintiffs further challenge the Act's quarantine restrictions.  However, neither the Governor nor the Commissioner has any role in enforcing this provision and are not proper defendants for this challenge.  *See Russell*, 784 F.3d at 1047.  Furthermore, Plaintiffs do not identify any harm that they are suffering or will imminently suffer from such a provision, and nothing in this provision affects their legal rights to an ADA accommodation.

15

Plaintiffs complain that the Act prohibits certain governmental entities from issuing a "quarantine." However, the Act does not preclude quarantines as a safety measure. The commissioner of health has express authority under the Act to issue quarantines. This provision is consistent with the health commissioner's longstanding authority to issue quarantine orders to protect public health. Tenn. Code Ann. § 68-1-201(a)(1) ("The commissioner has the power to … declare quarantine whenever, in the commissioner's judgment, the welfare of the public requires it."). Once the commissioner of health has issued a quarantine order, the Act does not preclude schools or local officials from enforcing the quarantine order.

Plaintiffs make a barebones assertion that this somehow interferes with contact tracing. However, nothing in the Act precludes local officials and schools from tracking and maintaining data of COVID cases relevant to contact tracing. Even assuming some hypothetical, unmaterialized hindrance to contact tracing, there is no reasonable connection between contact tracing and Plaintiffs' desired community masking. Nothing in Plaintiffs' motion justifies emergency relief with respect to the quarantine provision, and Plaintiffs do not identify any injunctive relief that would provide redress. Enjoining the Act does not automatically instill local government officials and entities with authority to issue quarantine orders.

**B.    The Act does not violate the Equal Protection Clause.**

The Act easily survives Plaintiffs' rational basis challenge, under which it bears "a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). The Court must uphold the Act "'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 313).

16

Here, the State has legitimate interests in ensuring that its school districts comply with federal law, promoting in-person education, promoting parental rights in their children's education, and providing guidance to school districts.

Moreover, these decisions relating to public health are typically left to public officials. As the Sixth Circuit has recently explained, "[s]haping the precise contours of public health measures entails some difficult line-drawing. Our Constitution wisely leaves that task to officials directly accountable to the people." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020) (citing *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (Roberts, C.J., concurring)).

### C. Plaintiffs do not state a valid claim for relief under 42 U.S.C. § 1983.

Plaintiffs assert a claim under 42 U.S.C. § 1983, invoking the Supremacy Clause, the ADA, and ARPA. Initially, it is well established that the Supremacy Clause does not create a private right of action and is not itself a source of rights. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-35 (2015). Thus, Plaintiffs must find these rights they seek to enforce in the federal statutes they have cited, but, as discussed below, neither statute vests them with rights enforceable in a § 1983 action.

### 1. Plaintiffs may not enforce the ADA through § 1983.

Plaintiffs may not enforce any rights under the ADA through § 1983. Although the Sixth Circuit has not directly decided the question, many circuits have held that the ADA is not enforceable through § 1983. *See Bullington v. Bedford Cnty.*, 905 F.3d 467, 471 (6th Cir. 2018) (discussing cases but not deciding the question). These holdings are consistent with Sixth Circuit precedent regarding "Title VII, which has an analogous remedial scheme." *Id*. (citing *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984)). Moreover, for the reasons

17

discussed *supra*, Part II.A, Plaintiffs have established a violation of any of their rights under the ADA.

### 2. Plaintiffs cannot enforce ARPA in this case.

#### i. Plaintiffs have no ARPA rights enforceable through § 1983.

Congress must be unambiguous when it grants rights that are enforceable under § 1983. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("[R]eject[ing] the notion . . . that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983"). Plaintiffs point to no unambiguous language in ARPA that grants them any rights. Indeed, they claim (unpersuasively, see *infra* II.C.2.ii) that the Act interferes with the *obligations* of local educational agencies ("LEAs"). (Compl., ECF 1, PageID 36-37, ¶ 131.) And even if they also claim that ARPA vested some authority in LEAs that could be construed as a "right" enforceable under § 1983, "a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *See Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000).

Nor is ARPA is subject to equitable enforcement. Whether private enforcement of a statute under the Court's equitable power is permitted turns on whether Congress intended to foreclose equitable relief in the invoked statute. *Armstrong*, 575 U.S. at 327. *Armstrong* is instructive on this point.[3] In that case, the Court rejected the plaintiffs' claim that it should permit the action under its equitable powers because the relevant statute vested sole enforcement authority in the Secretary of Health and Human Services. *Id.* Although that sort of enforcement authority might not always preclude equitable enforcement, the statute at issue in *Armstrong* was also "judicially

---

[3] *Armstrong* also counsels against reliance on, *E.T. v. Morath*, No. 1:21-cv-717-LY, 2021 WL 5236553 (W.D. Tex. Nov. 10, 2021), on which Plaintiffs heavily rely for their ARPA argument. There, the court found that equitable enforcement of ARPA was appropriate but did not thoroughly consider *Armstrong* or acknowledge that the Court in *Armstrong* declined to exercise its equitable authority. *Id.* at *11.

18

unadministrable" since it included a broad and unspecific mandate. *Id.* The Court concluded that Congress wanted to achieve "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking, and avoid[] the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action." *Id.* at 328-29.

For similar reasons, Section 2001 of ARPA cannot be enforced through an equitable action. Because the Secretary is charged with responsibility for distributing ARPA funds under § 2001(b), these funds constitute an "applicable program" under 20 U.S.C. § 1221(c)(1),[4] for which the Secretary has a number of enforcement options, including withholding payment, issuing a cease-and-desist order, entering into a compliance agreement, or ultimately seeking recovery of funds. 20 U.S.C. § 1234c. Thus, enforcement of ARPA's provisions is vested in the Secretary, which suggests Congress did not intend to permit equitable enforcement. *See Armstrong*, 575 U.S. at 328.

As in *Armstrong*, ARPA's mandates are judicially unadministrable. Section 2001(i)(1) requires that LEAs publish "a plan for safe return to in-person instruction and continuity of services." Pub. L. 117-2, 135 Stat. 4, § 2001(i)(1). This is a broad, undefined mandate (e.g., what is "safe," how much "in-person" instruction and when, continuity of *which* services?) that suggests Congress wanted the uniformity and expertise afforded by administrative guidance and decisionmaking. Moreover, were ARPA's education funding provisions privately enforceable, litigation could ensue between States, LEAs, and parents across the country. Congress could not have intended to risk the "inconsistent interpretations and misincentives" that would inevitably

---

[4] The Secretary himself has taken the position that ARPA is an "applicable program" in ARPA's implementing regulations. 86 Fed. Reg. at 21197.

arise from litigation, *see Armstrong*, 575 U.S. at 328-29, thereby frustrating ARPA's goal of returning to in-person schooling with as little disruption as possible.

**ii.     Alternatively, the Act does not violate ARPA.**

Even if the Court considers Plaintiffs' ARPA claim, it should find that the claim is not likely to succeed.  "The legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  "Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.*; *see Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014) ("Clarity is demanded *whenever* Congress legislates through the spending power . . . .").

Here, ARPA contains no *unambiguous* indication that, upon taking ARPA funds, the State was surrendering its authority to weigh in on the appropriate classroom protocols for Tennessee schoolchildren.  The only conditions attached to taking funds under Section 2001 were obligations imposed on the LEAs: that each LEA develop a plan for return to in-school learning or for a continuity of services, Pub. L. 117-2, 135 Stat. 4, §2001(i), and that the LEAs spend excess ARPA funds toward one of a limited set of purposes, *id.* §2001(e).  And while one of those acceptable purposes is the implementation of public health protocols in line with CDC guidance, even that is qualified with "to the greatest extent practicable." *Id.* § 2001(e)(2)(Q).

The Secretary's regulation supports this view.  The regulation requires an LEA's plan to state whether and to what extent the LEA will adopt CDC guidance, including universal mask wearing.  Am. Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195-01, 21201, 2021 WL 1561821 (Apr. 22, 2001).  But the regulation does *not* mandate that the LEA impose a mask requirement.  The Secretary says so explicitly: "The

20

requirement [issued by the Secretary] *does not mandate that an LEA adopt the CDC guidance*, but only requires that the LEA describe in its plan the extent to which it has adopted the key prevention and mitigation strategies identified in the guidance." *Id.* at 21200 (emphasis added).

Further, the implementing regulation contemplates heavy involvement of *state* educational agencies ("SEAs"), which must provide and publicly post their own plans and have "ongoing communication with the public," including dialogue with "diverse stakeholders" such as students, families, civil rights organizations, and others. *Id.* at 21197-98, 21201. Moreover, the LEA is required to submit *its* plan—the very plan that must indicate whether it has adopted the CDC guidance—to the SEA, *id.* at 21198, 21201, which "is best situated to determine what additional requirements to include" in the LEA's plan, *id.* at 21199. If the State had given up its authority to control the content of the LEAs' plans, it would be odd beyond measure for the Secretary to require the SEA to oversee the LEA's plans all while considering public comment from across the State.

### III. Plaintiffs have not shown imminent, irreparable harm necessary for emergency relief.

Plaintiffs have not alleged, and are unlikely to show, facts supporting immediate irreparable harm. "[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement'" for a preliminary injunction. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Plaintiffs have no imminent harm because they may ask for and receive a reasonable masking accommodation under the Act.

Plaintiffs have admitted that the prevalence of COVID-19 in schools is not "significantly large." Exhibit A, Deposition of Jennifer Ker, at 70:6-14. When Dr. Ker, an immunologist, testified on October 1 that the prevalence of COVID-19 was not significantly large, there were 113 student cases of COVID-19 in Williamson County Schools. WCS COVID-19 Dashboard,

https://www.wcs.edu/Page/8775.  Today, there are 60.  *Id*.  There are approximately 41,500 students enrolled in Williamson County Schools, meaning that the current prevalence of COVID-19 in those schools is less than 0.2%.  https://www.wcs.edu/domain/6. *See* Exhibit B, attached.  In all of Williamson County, there are only 442 active cases of COVID-19.  Decl. of Dr. John Dunn, Ex. A, Tennessee COVID-19 Epidemiology and Surveillance Data for Nov. 16, 2021.  This number is also less than 0.2% of the 247,726 people living in Williamson County according to the 2020 U.S. Census.[5]  Given these low rates of COVID-19 prevalence, there is no imminent risk to Plaintiffs from COVID-19.  *See United States v. Bass*, -- F. 4th --, 2021 WL 5099583, at *8-9 (6th Cir. Nov. 3, 2021) (finding that a significant drop in COVID-19 prevalence at correctional facility was a "substantial[] and material[] change" requiring remand to the district court).

Finally, Plaintiffs' risk of irreparable harm from COVID-19 is severely mitigated by the FDA's approval of COVID-19 vaccines for children ages 5 and up.  *See FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age*, U.S. Food & Drug Administration, https://bit.ly/3r1Qocr (October 29, 2021) (last visited Nov. 17, 2021) (attached as Exhibit C).  Dr. Jennifer Ker, an immunologist and party to the suit has testified that the vaccine has "been shown to be highly effective at preventing severe disease and deaths from COVID."  Exhibit C, Transcript of Preliminary Injunction Hearing, at 101.  Her testimony is supported by the CDC, which recently indicated that vaccination is "nearly 91 percent effective in preventing COVID-19 among children aged 5-11 years."  *CDC Recommends Pediatric COVID-19 Vaccine for Children 5 to 11 Years,* Ctrs. for Disease Control & Prevention (Nov. 2, 2021), https://bit.ly/3CoY1eP (attached as Exhibit E).

---

[5] https://www.census.gov/quickfacts/fact/table/williamsoncountytennessee,TN/PST045219

22

Given the rates of COVID-19 in Plaintiffs' community and the availability of the vaccine to all Plaintiffs, there is no basis for finding emergency injunctive relief necessary in this case.

## IV.     The public interest weighs in favor of denying emergency injunctive relief.

Because Plaintiffs sue the Defendants in their official capacities, the last two factors for injunctive relief merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, denying Plaintiffs' request for injunctive relief is in the public interest.

Granting an injunction is against the public interest because it subverts the democratic process.  *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers.) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").  The Act does not violate federal law; it expressly acknowledges and requires compliance with federal law.  Absent such conflicts, the Act is a valid expression of the will of Tennessee's citizens and should not be disallowed on the basis of Plaintiffs' challenge.

Furthermore, a statewide injunction is overbroad.  Plaintiffs are eight students in three counties in Tennessee, but the relief they seek implicates every student and every school district in Tennessee.  Plaintiffs have made no showing that such broad relief is required or proper.

## V.     Alternatively, the Court should exercise *Pullman* abstention.

As noted above, the Act not only allows, but requires schools to provide accommodations pursuant to the ADA.  However, to the extent that the Court believes that the statute is capable of other constructions, the Court should abstain from construing the state statute under the *Pullman* doctrine.  *See R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941) ("[F]ederal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.").  *Pullman* abstention "is

23

appropriate in a case involving a facial challenge when the language of the statute is ambiguous and its constitutionality turns "upon a choice between one or several alternative meanings." *Verizon North, Inc. v. Engler*, 205 F. Supp. 2d 765, 775 (E.D. Mich. 2002) (*quoting City of Houston v. Hill*, 482 U.S. 451, 468 (1987) (internal quotations omitted). Because Plaintiffs' claims turn on questions of interpretation of a state statute, the Court should abstain to allow state courts to interpret the Act or certify the question to the Tennessee Supreme Court.

## CONCLUSION

Because the Act expressly instructs schools to comply with federal law, it does not deny Plaintiffs any statutory or constitutional rights, and certainly not in every set of circumstances. The Court should therefore deny Plaintiffs' request for a preliminary injunction.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

*s/ James R. Newsom*
James R. Newsom - TN Bar No. 6683
Colleen E. Mallea - TN Bar No. 32238
Matthew Dowty - TN Bar No. 32078
Reed Smith - VA Bar No. 77334 (*Admitted PHV*)
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-9593
Jim.Newsom@ag.tn.gov
Colleen Mallea@ag.tn.gov
Matthew.Dowty@ag.tn.gov
Reed.Smith@ag.tn.gov
*Attorneys for Defendants*

25

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2021, a copy of the foregoing notice and attached transcript was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Brice M. Timmons
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
brice@donatilaw.com
*Counsel for Plaintiffs*

Bryce W. Ashby
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
bryce@donatilaw.com
*Counsel for Plaintiffs*

Craig A. Edgington
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
craig@donatilaw.com
*Counsel for Plaintiffs*

Jessica F. Salonus
The Salonus Firm, PLC
139 Stonebridge Blvd.
Jackson, TN 38305
jsalonus@salonusfirm.com
*Counsel for Plaintiffs*

Justin S. Gilbert
Gilbert Law, PLC
100 W. Martin Luther King Boulevard, Suite 501
Chattanooga, TN 37402
justin@schoolandworklaw.com
*Counsel for Plaintiffs*

*/s/ James R. Newsom*
James R. Newsom, TN Bar No. 6683