UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **R.K.**, *et al.*, | ) | |
| | ) | |
|     **Plaintiffs,** | ) | No. 3:21-cv-00853 |
| | ) | |
| v. | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Frensley** |
| **GOVERNOR BILL LEE**, *et al.*, | ) | |
| | ) | |
|     **Defendants.** | ) | |

**REPLY BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION
FOR PRELIMINARY INJUNCTION**

Plaintiffs' challenge to the COVID Act (or "Act")[1] disregards its plain language and controlling legal principles. First, Plaintiffs claim they "cannot receive [reasonable accommodations] under the state law," but the Act states that "a school shall… provide a reasonable accommodation pursuant to the Americans with Disabilities Act ("ADA")." (Pls.' Br., ECF 41, PageID 1016); Tenn. Code Ann. § 14-2-104(d)(1). Second, Plaintiffs claim that "COVID-positive children cannot be quarantined," but the Act authorizes the Commissioner of Health to "determine quarantine guidelines" for any person who "tests positive for COVID-19." (Pls.' Br. ECF 41, PageID 1006.); Tenn. Code. Ann. § 14-4-101(a)(1). Third, Plaintiffs claim that "if a school district wanted to purchase masks and be reimbursed through [American Rescue Plan Act ("ARPA")] funds, it could not do so," but the Act says that school districts may not "use *state* funds to mandate or require students to wear face coverings *in violation of this section*." (Pls.' Br., ECF 41, PageID 1020-21); Tenn. Code Ann. § 14-2-104(e) (emphasis added). The Act does not speak to federal ARPA funds or prohibit schools from buying masks for ADA accommodations.

Notably, the Fifth Circuit yesterday issued an emergency stay against an injunction like the one Plaintiffs request. The Fifth Circuit opined that the Texas plaintiffs therein did not establish injury or redressability, that plaintiffs were unlikely to succeed on their ADA and Section 504 of the Rehabilitation Act claims, that plaintiffs likely did not have a cause of action under ARPA, and that if they did, ARPA does not preempt restrictions on mask mandates. *See E.T. v. Paxton*, —F.4th—, 2021 WL 5629045 (5th Cir. Dec. 1, 2021) (attached as Exhibit A).

**I.    The Court should avoid unnecessary conflict with federal law in construing the Act.**

Plaintiffs unnecessarily urge the Court to construe the Act as in conflict with federal law. The Court, however, must interpret the statute to "avoid constitutional infirmity when 'fairly

---

[1] Public Chapter No. 6 (112 General Assembly, 3rd Extraordinary Session —2021).

1

possible.'" *See In re Schafer*, 689 F.3d 601, 605 (6th Cir. 2012) (quoting *Eubanks v. Williamson*, 937 F.2d 118, 1122 (6th Cir. 1991)). Further, statutory construction "is a holistic endeavor,"[2] and a "single provision of [the Act]" "cannot be read in isolation" from its whole. *Smith v. United States*, 508 U.S. 223, 233 (1993). Plaintiffs cannot "create a justiciable case or controversy simply by misreading [the COVID Act] and claiming as injury fears born of their own error." *See Western Mining Council v. Watt*, 643 F.2d 618, 626 (9th Cir. 1981); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (stating that a party "cannot manufacture standing" by "inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

Constructions favoring validity are especially important for facial challenges like this one, which are disfavored because they often rest on speculation and risk premature interpretation of the statute. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). The Court "must be careful not to go beyond the statute's facial requirements and speculate about hypothetical or imaginary cases." *Id.* at 449-50. Furthermore, "[t]he fact that [the Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Doe #1 v. Lee*, 518 F. Supp. 3d 1157, 1179 (M.D. Tenn. 2021).

**II.     The Court should hold that Plaintiffs lack standing.**

When the Act is interpreted fairly and not under Plaintiffs' strained reading, Plaintiffs lack injury and redressability—two prerequisites of the "irreducible constitutional minimum of standing." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (internal quotation marks omitted).

***Injury***. Plaintiffs assert three injuries from the Act: (1) Tenn. Code Ann. § 14-2-104(a) prohibits universal masking; (2) § 14-2-104(d)(2) creates an ineffective "bubble" as an accommodation; and (3) § 14-4-101 denies "quarantines, isolation, and contact tracing." (ECF 41,

---

[2] *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

PageID 1004-07.) Each of these purported injuries arises from the Plaintiffs' alleged need for accommodation due to their disabilities. (*Id.*, PageID 996.) But their claims of injury each fail.

*First*, Plaintiffs' claim that Section 104(a) prohibits universal masking wholly ignores the Section 104(d) carveout. *See* Tenn. Code Ann. § 14-2-104(d)(1) ("Notwithstanding subsection (a): [a] school shall, to the extent practicable, provide a reasonable accommodation pursuant to the [ADA] to a person who provides a written request for a reasonable accommodation . . . ."). Section 104(d) expressly allows a school principal to provide masking as an ADA accommodation apart from Section 104(a), and by its terms does not prohibit universal masking as an accommodation when appropriate. *See* Tenn. Code Ann. § 14-2-104(a), (d).

*Second*, Section 104(d) does not limit schools to providing a masking "bubble" for a student requesting a reasonable accommodation. Tenn. Code Ann. § 14-2-104(d)(2); (Pls.' Br., ECF 41, PageID 1005-06). Rather, Section 104(d) states that a school may provide a "reasonable accommodation." Under the ADA (and Section 504), a "reasonable accommodation" can include a broad range of "moderate adjustment[s]" to a general policy; the only limitation is that the accommodation must not result in "a fundamental change." *Cf. Davis v. Echo Valley Condo. Assoc.*, 945 F.3d 483, 490-91 (6th Cir. 2019). Section 104(d) requires, at minimum, that persons within the defined proximity of an accommodated person wear appropriate masks,[3] but it does not prohibit a school from providing broader protections if necessary.

*Third*, Plaintiffs assert schools "may not even impose a quarantine on COVID-positive persons." (ECF 41, PageID 1006.) But the Act does not prohibit a school (or other governmental entity) from excluding a person in accordance with the Commissioner of Health's guidelines or

---

[3] *See* Tenn. Code Ann. § 14-2-104(d)(1)-(2). The General Assembly's requirement that people in proximity to at-risk students wear N95 masks is reasonable because N95 masks are the most effective generally available masks. (Hr'g Tr., ECF 35, PageID 901-02.)

3

prevent schools from conducting contact tracing. The COVID Act reasonably places "sole authority to determine quarantine guidelines" with the Commissioner of Health, rather than allowing each school to develop its own quarantine guidelines. Tenn. Code Ann. §§ 14-4-101(a)-(b). Consistent with the Act, schools can exclude COVID-19 positive students under the Commissioner of Health's guidelines that "will set forth the process by which a person with a positive COVID-19 diagnosis shall be excluded from school property, including but not limited to [buses], and school events." (Nagoshiner Decl., ECF 39, PageID 988.)

In fact, the Act does not alter the "status quo" as to schools' quarantine authority. Quarantine authority did not reside in schools nor school districts before the enactment. As Dr. Hijano acknowledged, schools consult with the Health Department and parents when excluding sick children from campus. (Hr'g Tr., ECF 35, PageID 933 (stating that schools work "with the Health Department in collaboration so that isolation and quarantine can happen in the proper way.")); *see also id.*, PageID 929 (agreeing that issuing and monitoring quarantine orders are typically functions of the State Health Department). Nor does the Act disrupt schools' practice of contacting the sick child's parents "and determin[ing] what to do." (*Id.*, PageID 934.)

In staying a similar injunction, the Fifth Circuit found in *Paxton* that injuries such as those asserted by Plaintiffs are not actual or imminent because the stated injury "elides the various accommodations available to plaintiffs" and at most present increased risks that do not satisfy the injury requirement for standing. *See Paxton*, 2021 WL 5629045, at *3-4.

**Redress.** Plaintiffs also contend that their suit would provide them with redress because enjoining Defendants would remove the Act's "barriers." (Pls.' Br., ECF 41, PageID 1007.) Not so. "Remedies . . . ordinarily operate with respect to specific parties," not "on legal rules in the abstract." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (internal quotation marks omitted).

4

Neither Governor Lee nor Commissioner Schwinn have authority under the COVID Act to grant or deny Plaintiffs universal masking or determine quarantine guidelines. *See* Tenn. Code Ann. §§ 14-2-104(a)-(d), 14-4-101. In other words, Plaintiffs have sued "no one, and nothing," with the power to enforce the provisions of the Act at issue. *See California*, 141 S. Ct. at 2116. That renders this suit "no more than a [request for a] declaration that the statutory provision they attack is unconstitutional," which "is the very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.* The Fifth Circuit also noted in *Paxton* that the defendants' lack of "authority to impose mask mandates in particular schools" defeated redressability. *Paxton*, 2021 WL 5629045, at *4.

### III. Plaintiffs are not likely to prevail on their ADA or Section 504 claims.

#### A. The Act does not impair Plaintiffs' educational opportunities.

The Court inquired whether the Act affects Plaintiffs' ability to enter the schoolhouse door to access educational opportunities. (*See* Hr'g Tr., ECF 35, PageID 970.)[4] Properly construed, it does not. Plaintiffs say the Act "weakens or nullifies the ability of *local school districts* to provide safe, fundamental, and non-discriminatory access" in violation of the ADA and Section 504. (Pls.' Br., ECF 41, PageID 1013.) But Plaintiffs cannot reasonably contend that the Act denies any role to schools and parents in granting accommodations (*see id.,* PageID 1014), when it directs that process to the principal of the child's school—perhaps the most accessible school official. Tenn. Code Ann. § 14-2-104(d)(2) ("The principal or president of the school shall evaluate the request on behalf of the school and, to the extent practicable, provide a reasonable accommodation.").

---

[4] Notably, Plaintiffs have not shown that they requested and were denied an accommodation under the Act. *See Paxton*, 2021 WL 5629045, at *5 ("A request for reasonable accommodation is generally a part of a prima facie case for relief under the ADA and Rehabilitation Act."); *see also Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998).

5

The hearing record underlines the rationality of the Act's approach. Dr. Ker, as a parent, can, and does, express her preferences concerning her child's well-being and access to educational opportunities to her child's principal and teachers. (*See* Hr'g Tr., ECF 35, PageID 948-49.) Her child's needs are highly individual in nature, exemplifying "other high-risk children's needs in this pandemic in regard to [their] health." (*Id.*, PageID 949.) The Act's localized approach is rational—promoting sensitivity to the particular needs of real children. The Act is harmonious with the ADA and Section 504, and the Court should construe it as such.

### B. The Act does not discriminate against Plaintiffs.

Plaintiffs' arguments that the Act is unlawfully discriminatory likewise stem from a misreading of the Act. (Pls.' Br., ECF 41, PageID 1013-25.) First, they contend that Section 104(a) unlawfully replaces the interactive process for ADA accommodations with "an arbitrary and dangerous 'severe condition' set point." (*Id.*, PageID 1016.) As explained above, the masking practices Plaintiffs seek are governed by Section 104(d), which overrides Section 104(a) as it pertains to requests for masking as an accommodation. *See* p. 3, *supra*.

Second, Plaintiffs contend that Section 104(d)(2) unlawfully hampers a school's response to ADA accommodation requests by providing that a school "cannot require or enforce any masking until fifteen minutes expire" and thereafter may only require masking within six feet of the accommodated person. (Pls.' Br., ECF 41, PageID 1016.) But Section 104(d) expressly allows schools to provide a "reasonable accommodation pursuant to the [ADA]," which may include broader protections than the Act's minimum requirements. *See* p. 3, *supra*.

Third, Plaintiffs contend that Section 101(b) offends their ADA rights by prohibiting exclusion of COVID-infected persons from school property. (Pls.' Br., ECF 41, PageID 1017.) It does not. *See* p. 3-4, *supra*.

6

Fourth, Plaintiffs contend that Sections 14-2-104(d) and 14-6-103 unlawfully impose various technical barriers to persons requesting an ADA accommodation. (Pls.' Br., ECF 41, PageID 1018-19.) For example, Plaintiffs assert that the Act's "practicable" language loosens the ADA's "fundamental alteration" standard. (*Id.*, PageID 1018.) However, federal judges have used the term "practicable" to parallel "reasonable" when describing ADA accommodations. *See, e.g.*, *Hans v. Bd. of Shawnee Cnty. Comm'rs*, 775 F. App'x 953, 961 n.6 (10th Cir. 2019) (Phillips, J., concurring in part and dissenting in part) ("The regulations effectuating the ADA make clear that, where necessary and practicable, a public entity must provide … accommodations."); *James v. Runyon*, No. 92-2262, 1992 WL 382311, at *4 (E.D. Penn. Dec. 9, 1992). Similarly, Plaintiffs speculate that some minor students may be unable or unwilling to have a parent or guardian submit a written request for accommodation. (Pls.' Br., ECF 41, PageID 1018.) But such students, if any, are not before the Court, and the Court may not decide a facial challenge based on hypothetical or imaginary cases. *Washington State Grange*, 552 U.S. at 449-50.

Similarly, Plaintiffs assert that a person may be dissuaded from requesting an accommodation by the private right of action set forth in Section 14-6-103. (Pls.' Br., ECF 41, PageID 1018-19.) However, the right of action is only against "an alleged violator" of the Act. Tenn. Code Ann. § 14-6-103. The Act does not prohibit, and expressly allows for, a person to request an ADA accommodation. No violation of the Act can result from a request for an ADA accommodation. Plaintiffs cannot reasonably claim they are chilled from requesting such accommodations by Section 14-6-103.

### IV. Plaintiffs cannot establish injury from funding.

Plaintiffs raise two arguments related to school funding: (1) the Act jeopardizes school districts' state and federal funds, and (2) Tennessee's receipt of ARPA funds serves to preempt the

7

Act. (Pls.' Trial Br., ECF 27, PageID 187, 200-205; Pls.' Br., ECF 41, PageID 999, 1020-22.) Plaintiffs lack standing to assert these claims. Their claims also lack merit.

As a threshold issue, Plaintiffs lack standing to assert claims on their school districts' behalf. *See* (Pls.' Br., ECF 41, PageID 1019 (discussing ARPA funds for school districts).) Plaintiffs have no individualized right to local, state, or federal educational funds. Plaintiffs must therefore establish third-party standing. (Defs.' Br., ECF 23, PageID 149-50; Defs.' Br., ECF 42, PageID 1045.) Plaintiffs fail to challenge or distinguish Defendants' authorities on third-party standing, (*see generally* ECF 41), and similarly fail to present evidence demonstrating "a 'close' relationship with the[ir school districts]" and that their school districts face "a hindrance to … protect[ing their] own interest[s]." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). These failings are fatal to Plaintiffs' "funding" claims.[5]

Plaintiffs' assertion that the Act prohibits school districts from using state funds to buy masks and implement COVID-prevention measures also misreads the Act. (Pls.' Br., ECF 41, PageID 999.) Under the Act, state funds are implicated only where they are used "in violation" of the Act, i.e., to require face masks in situations other than those in subsections (a) and (d). Tenn. Code Ann. § 14-2-104(e). School districts may use state funds to make masks readily available as part of mask-optional policies, when masks are permitted under subsections (a) or (d), and for myriad other COVID mitigation strategies.[6] *See id.* §§ 14-2-104(a)-(e).

Plaintiffs reiterate the ARPA preemption arguments made in *E.T. v. Morath*, No. 1:21-cv-717, 2021 WL 5236553 (W.D. Tex. Nov. 10, 2021), and urge this Court to adopt the *Morath*

---

[5] Defendants object to Plaintiffs' reliance on the purported Alvey Email (ECF 37-1); *see* (Pls.' Br., ECF 41, PageID 1021). As Defendants have already noted, the email is unauthenticated and intrudes on the Court's role of determining the law. (Defs.' Opp., ECF 40, PageID 990-92.)

[6] Dr. Yaun, one of Plaintiffs' experts, explained that there are many approaches to mitigating COVID-19 risk. (Yaun Decl., ECF 27-2, PageID 247.)

8

district court's reasoning and result. (*See* Pls.' Trial Br., ECF 27, PageID 202-04; Pls.' Br., ECF 41, PageID 1020-21.) But the Fifth Circuit in *Paxton* has granted an emergency stay against the *Morath* court's injunction. *See Paxton*, 2021 WL 5629045, at *1. The Fifth Circuit expressed grave reservation about ARPA's private enforceability and criticized the district court's "bald invocation of the Supremacy Clause and its equitable jurisdiction[.]" *Id.* at *6 n.3.[7] Furthermore, the Fifth Circuit noted that ARPA merely requires "local education agencies to *communicate* with the public regarding what requirements, if any, it maintains regarding masking," which the Act does not prevent. *See Paxton*, 2021 WL 5629045 at *6 (emphasis in original).

Further, in contrast to the executive order at issue in *Morath*, the Act expressly provides for masking as an ADA accommodation. *See* 2021 WL 5236553 at *3 (quoting GA-38 to show that it prohibits school mask mandates under all circumstances); Tenn. Code Ann. § 14-2-104(d) (allowing masks as ADA accommodations).[8] Nor have Plaintiffs shown that any school district's ARPA-required safe return plan conflicts with the Act.

## V. The equities favor Defendants.

In their zeal to prevail in striking down the Act—regardless for its compatibility with federal law—Plaintiffs resort to speaking the "quiet part out loud." It is, they proclaim, "a dubious purpose," for the Legislature to act "to safeguard the constitutional rights and liberty interests of

---

[7] The *Morath* district court reached the ARPA preemption issue on the equitable power of federal courts to enjoin unlawful acts by state officials." 2021 WL 5236553, at *11 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)). Yet Defendants have argued, and Plaintiffs have not disputed, that ARPA is not subject to equitable enforcement. (Defs.' Pre-Hr'g Br., ECF 23, PageID 160-62; *see* Pls.' Br., ECF 41.)

[8] Further, the *Morath* court employed the wrong standard when a State's exercise of its police powers is challenged. *See Morath*, 2021 WL 5236553 at *11 (relying on *Lawrence County v. Lead-Deadwood School District*, 469 U.S. 256, 260-61 (1985) to find preemption); *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157 (1978) (courts presume no preemption of a State's police power "unless that was the clear and manifest purpose of Congress.").

9

persons during the COVID-19 pandemic." (Pls.' Br., ECF 41, PageID 998.) Contrary to Plaintiffs' suggestion, the area of COVID countermeasures is "fraught with medical and scientific uncertainties," and the State must be granted "especially broad" latitude to act in the interests of the public health. *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J., concurring) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)). Plaintiffs are loath to acknowledge that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). *See also Paxton*, 2021 WL 5629045, at *6. And where the statute under review is compatible with federal law, this is particularly the case. Nor does Plaintiffs' request for statewide relief satisfy the need for injunctive relief to be narrowly tailored. *See Paxton*, 2021 WL 5629045, at *6.

Only now have Plaintiffs revealed the nature of the injunctive relief they seek. (*See* ECF 41-1, proposed Order Granting Preliminary Injunction.) Yet the injunction they propose is against the Act of their imagination, not as enacted. Contrary to their view, the Act does not "infringe[] on federal laws" (Pls.' Br., ECF 41, PageID 1024.), as shown above. The Court should not adopt Plaintiffs' strained construction of the Act—which they read to be presumptively in conflict with the ADA and Section 504. As the Act does not violate federal laws which forbid disability discrimination, the Court should deny Plaintiffs' demand for injunctive relief. *Cf. Disability Rights S.C. v. McMaster,* No. 3:21-02728-MGL, 2021 WL 4444841, at *8 (D.S.C. Sept. 28, 2021).

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' request for a preliminary injunction.

Respectfully submitted,

HERBERT H. SLATERY III
ATTORNEY GENERAL AND REPORTER

*/s/ Reed N. Smith*
James R. Newsom - TN Bar No. 6683
Reed N. Smith - VA Bar No. 77334*
Matthew Dowty - TN Bar No. 32078
Colleen E. Mallea - TN Bar No. 32238

Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
Jim.Newsom@ag.tn.gov
Reed.Smith@ag.tn.gov
Matthew.Dowty@ag.tn.gov
Colleen.Mallea@ag.tn.gov
*Counsel for Defendants*

11

# CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties as indicated below. Parties may access this filing through the Court's electronic filing system.

Brice M. Timmons
Bryce W. Ashby
Craig A. Edgington
Donati Law Firm LLP
brice@donatilaw.com
bryce@donatilaw.com
craig@donatilaw.com
*Counsel for Plaintiffs*


Jessica F. Salonus
The Salonus Firm, PLC
jsalonus@salonusfirm.com
*Counsel for Plaintiffs*


Justin S. Gilbert
Gilbert McWherter Scott Bobbitt PLC
justin@schoolandworklaw.com
*Counsel for Plaintiffs*

*s/ Reed N. Smith*
\*Reed Smith, VA Bar No. 77334
Acting Assistant Attorney General
*\*Admitted Pro Hac Vice*