UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**R.K., a minor, et. al.,**

    **Plaintiffs,**

v.

Case No. **3:21-cv-00853**
Chief District Judge Waverly Crenshaw

**BILL LEE, in his official capacity as Governor
of Tennessee; PENNY SCHWINN, in her official capacity
as Capacity of the Tennessee Department of Education,**

    **Defendants.**

### PLAINTIFFS' REPLY TO DEFENDANTS' POST-HEARING BRIEF

Plaintiffs submit this Reply to Defendants' Post-Hearing Brief.

## I. PUTTING ON NO EVIDENCE DOOMS THE GOVERNOR'S POSITION

While Defendants make legal arguments, they offer no actual *evidence* about the denial of universal masking, quarantining, and other accommodations. The necessary "layered protections" must include masking. (Yaun Tr. 829, 833-35, 851). In other words, one cannot *leave out* universal masking from the strategies. (*Id*. at 851, 854; Hijano Tr. 877, 883-84). It reduces transmission by 79-80 percent. (Yaun Tr. 856). "While there are a number of methods that can assist in mitigating the spread of COVID-19, masks appear to be the most effective in preventing transmission of coronavirus from infected person to an uninfected person." (Ex. 15, Cross Decl, ¶ 12).

> Q. If you have a -- a child with one of the disabilities that we spoke of earlier that leave them more susceptible to infection from COVID-19, would it be possible for that child to have a -- an effective accommodation to attend school **without the school having the power to quarantine a child who is positive for COVID-19?**

1

> A. So I think that that's not a reasonable accommodation. And I would be very hesitant for kids to go to school under that circumstance. Because we really rely on making sure that everyone who is sick stays at home, and that anyone who has an exposure to COVID-19 stays at home until we know if they are infected or not.

(Hijano Tr., 883-884). Moreover, quarantining is a "basic health measure." (Hijano Tr. 880; Ex. 5, Hijano Decl., ¶ 24).

The Defendants' no-evidence to-the-contrary strategy recently proved fatal in the Sixth Circuit: "The Governor, in contrast, did not submit any evidence about the reasonableness of universal mask wearing or alternative reasonable accommodations." *G.S. v. Lee*, 2021 U.S. App. LEXIS 34512, at *5 (6th Cir. Nov. 19, 2021). "But the record is devoid of evidence about reasonable accommodations alternative to mask wearing that Plaintiffs' schools were prepared to implement following Executive Order No. 84." *Id*. at 6. "The Governor has put forth no evidence showing that such a policy [of universal masking] was impractical or impossible for schools to enforce." *Id*. at *7.

Evidence of the importance of masking and quarantining, *and not leaving them out,* distinguishes the *only* case to date to reach a contrary conclusion. In *E.T. v. Paxton*, No. 21-51083, Doc. 00516113523, *6-7 (5th Cir. Dec. 1, 2021), the Fifth Circuit denied a stay of an Executive Order on the grounds that "distancing, voluntary masking, class spacing, plexiglass, and vaccinations" may be sufficient by themselves. *Id*. at *6. It is unclear if the Fifth Circuit lacked a factual record, or just misunderstood, that these measures, without masking and with low vaccination rates, are clearly *not* sufficient. Regardless, Plaintiffs *have understood this* and have consistently created the appropriate factual record, as with other Tennessee cases. As Judge Greer ruled: "While these accommodations do comply with some of the CDC's guidelines, they do not comply with *the* most important of the CDC's guidelines, which is mask-wearing, at least indoors.

2

Dr. Yaun testified that mask-wearing is the 'primary' way to mitigate the spread of COVID-19." *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674, at *43 (E.D. Tenn. Sep. 24, 2021).

## II. THERE IS ONLY ONE (FUTILE) PROVISION ON UNIVERSAL MASKING

To be perfectly clear, the new law provides only *one* possible means for students to obtain a *universal* mask mandate, not two, as Defendants repeatedly advise the Court. (D.E. 42, Defendant's Post-Hearing Brief, pp. 3, 4, 200). That one means is Tenn. Code Ann. §14-2-104(a) which addresses masking for "*all persons* on school property wearing a face covering," *Id*. and invokes the "serious conditions" precondition.

Confusingly, Defendant uses the words "mask mandate" to describe Tenn. Code Ann. §14-2-104(d). Calling it a "mask mandate," Defendants imply that universal masking is available under §104(d) too. It is not. Rather, §104(d) is a one-size-fits all accommodation whereby the child with a disability can, in theory, receive masked volunteers "who place themselves" within a bubble of six feet for longer than fifteen minutes. *Id*. at §14-2-104(d)(2). Random volunteers who "place themselves" is the *opposite* of universal masking.

## III. THE TITLE 14-COVID LAW IS *BROADLY* WRITTEN

Defendants argue the Court should construe the Act narrowly so that it may co-exist with federal law. *(See, e.g.*, D.E. 42, p. 20). But as shown above, that would require a rewriting. Moreover, the General Assembly insisted on a *broad* reading:

> The purpose of this title is to safeguard the constitutional rights and liberty interests of persons during the COVID-19 pandemic. This title *must be construed broadly* to effectuate the purpose described in this section.

Tenn. Code Ann. § 14-1-103.

The purpose behind the state law is clear. As House Speaker Cameron Sexton's admits, it was to nullify federal law[1] and "fight back" against recent federal rulings.[2] Defense counsel have their duties, Plaintiffs understand that, but one must not *pretend* this is a narrow law extended in harmony with Plaintiffs' federal statutory rights. The new state law was *created* to condemn and obstruct the very federal laws to which Plaintiffs have successfully resorted.

## IV. SOVEREIGN IMMUNITY

Defendants continue their claims of sovereign immunity under the ADA. (D.E. 42, Post Hearing Brief, p. 16). As anticipated, Defendants cite the Sixth Circuit's decision in *Popovich v. Cuyahoga Cnty. Court of Common Pleas*, 276 F.3d 808, 812 (6th Cir. 2002), to which Plaintiffs' reference their Post-Hearing brief. (D.E. 41, p. 15). Defendants also cite this Court's decision in *Hembree v. Office of Dist. Att'y Gen. for the 13th Judicial Dist. of Tenn.*, 2019 U.S. Dist. LEXIS 55621 (M.D. Tenn. Apr. 1, 2019). But that case involved *monetary damages*. As this Court well-knows from authoring *Hembree*, the plaintiff's claim of injunctive relief was excepted. *Id.* *4-8.

Defendants next contend that Governor Lee, under the *Ex Parte Young* analysis, does not have a "bare connection to administering" the new law. (D.E. 42, p. 17). However, Governor Lee,

---

[1] https://www.capitol.tn.gov/Bills/112/Bill/HJR9005.pdf, p. 5 ("WHEREAS, if the federal government intends to overreach its authority to the point that it assumes the traditional constitutional role of a state legislative body, it is only fitting and proper that the very existence, as well as the depth and breadth, of this federal power be condemned and challenged not just in a court of law, but also through actions of the General Assembly to nullify such federal overreach.").

[2] Tennessee State Representative Jerry Sexton Discusses Recent Court Ruling That Blocks Tennessee's New Mask Mandate Law - Tennessee Star, *available at* https://tennesseestar.com/2021/11/18/tennessee-state-representative-jerry-sexton-discusses-recent-court-ruling-that-blocks-tennessees-new-mask-mandate-law/ ("Our legislators and the work that we've been given to do by the people can be stopped by one rogue judge. And something needs to be done about this. And we as Tennesseans and as the country, we've got to fight back against especially these liberal judges that use legislating from the bench as a tool to push their will upon its citizens. I'm tired of it.").

who *signed* the law, is the chief driving force in efforts to interfere with the ADA and limit universal masking. His Executive Order 84 came first. He then extended it twice: September 30, 2021[3] and November 5, 2021.[4] And he did so in the face of three separate federal cases explaining the violations of the ADA. *See G.S. v. Lee*, 2021 U.S. Dist. LEXIS 182934 (W.D. Tenn. Sep. 17, 2021); *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674 (E.D. Tenn. Sep. 24, 2021); *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078, at *32-33 (M.D. Tenn. Oct. 22, 2021). As mentioned, this has now been upheld by the Sixth Circuit too. *G.S. v. Lee*, 2021 U.S. App. LEXIS 34512 (6th Cir. 2021).

The Governor *himself* has now signed the most restrictive masking law possible, one which reserves *to himself* a pre-condition to universal masking: declaration of a state of emergency. Thus, now there is but *one* option for obtaining universal masking and Governor Lee is the gatekeeper. See Tenn. Code Ann. § 14-1-101(20)(A) (requiring Governor first issue a "state of emergency").

Governor Lee eventually terminated Executive Order No. 84. But only because the new law "negates the need."[5] He is correct. The new law obstructs universal masking, *plus much more*. Thus, the case law supports Governor Lee's front-and-center involvement as more than a "bare connection."[6] In *Russell v. Lundergan-Grimes*, the Secretary of State was "busily engaged in administering Kentucky's election laws" by promulgated regulations. 784 F.3d 1037, 1048-49 (6th Cir. 2015). The Court held that a citizen "need not prophesy precisely what actions statewide

---

[3] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee89.pdf

[4] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee91.pdf

[5] https://publications.tnsosfiles.com/pub/execorders/exec-orders-lee92.pdf

[6] https://www.tn.gov/content/dam/tn/governorsoffice-documents/governorlee-documents/EO92.pdf ("Whereas, legislation from the Third Extraordinary Session of the 112th General Assembly was enacted today to address mask requirements in schools, which negates the need for Executive Order No. 84, as amended by Executive Order Nos. 89 and 91.").

5

officials actively administering that statute . . . will take against him before the Constitution allows him the opportunity to prove that the state law violates" his rights. *Id.* at 1048.

Governor Lee is the face and leader of the universal mask resistance. This is clearly sufficient "to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Id.* at 1049 (quoting *Papasan v. Allain*, 478 U.S. 265, 277 (1986)).

## V. SUCCESS ON THE MERITS

### A. Plaintiffs' ADA Claims

Defendants pull a few words from Plaintiffs' Pre-Hearing Brief—"tripwires" and "inconsisten[cies] with the ADA"—to argue insufficiency to warrant a preliminary injunction. (D.E. 42 at p. 19). However, Title 14 contains wholescale prohibitions and limitations to the rights guaranteed by the Americans with Disabilities Act.

Universal masking is impossible until the house is ablaze, a point too late. The blanket accommodation of a bubble of moving volunteers, six feet away after 15 minutes, is patently *unreasonable* and *unworkable*. As in *G.S. v. Lee*, *supra*, Defendants offered no evidence to the contrary.

Without any witnesses, Defendants' brief cites *partial* facts from Plaintiffs' witnesses. Defendants state that droplets "generally" fall within 6 feet. (Doc. 42, Brief, p. 5). But all of Plaintiffs' experts said the droplets spread *farther* than six feet, and are spread in *less* than fifteen minutes. (Yaun Tr. p. 833; Hijano Tr. pp. 877-79; Ker Tr. p. 940). The *uncontested* scientific facts before the Court show that the new state law "would not be safe by any means" and "not safe for vulnerable kids to go to school." (Hijano Tr. p. 890-91).

Governor Lee and Commissioner Schwinn are the masters of their cases. They reverted to the Shelby County strategy and *chose* not to present any opposing medical or scientific evidence.[7] And the Sixth Circuit rightly took them to task recently for having *no* factual proof to support their legal positions in court. *G.S. v. Lee*, 2021 U.S. App. LEXIS 34512, at *5 (6th Cir. Nov. 19, 2021) ("Plaintiffs provided ample evidence in the district court that, without reasonable accommodations to mitigate the risk of contracting COVID-19 while attending public school, they will be denied the benefits of a public education because of their disabilities. Plaintiffs also put forth evidence that universal mask wearing is an effective way to mitigate the spread of COVID-19. **The Governor, in contrast, did not submit any evidence about the reasonableness of universal mask wearing or alternative reasonable accommodations.**") (emphasis added).

Instead of offering evidence to rebut the imminent harm, Defendants ask for a "wait and see" approach, as if Plaintiffs cannot read the law and its impending doom *now*. (D.E. 42 at pp. 27-28). Moreover, the new law *prohibits* universal masking preventatively. Until the COVID law, Plaintiffs like R.K. (Williamson County Schools), W.S. (Franklin Special School District), and J.M. (Collierville School District) were attending school with the universal masking accommodation they required. Upon the signing of Title 14 into law, Williamson County Schools, the Franklin Special School District, and the Collierville School District[8] abandoned those accommodations based on the prohibition in Title 14. (*See* Exs. 12 & 13). This destroys any

---

[7] "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. … But as a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.' *Castro v. United States,* 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)." *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008).
[8] https://www.commercialappeal.com/story/news/education/2021/11/13/germantowncollierville-schools-say-masks-are-optional-monday/8606576002/

inference that masking is unnecessary or impractical for schools to enforce. "The Governor has put forth no evidence showing that such a policy [of universal masking] was impractical or impossible for schools to enforce." *G.S. v. Lee*, No. 21-5915, 2021 U.S. App. LEXIS 34512, at *7 (6th Cir. Nov. 19, 2021).

Additionally, Title 14 strips local school districts of their right to isolate or quarantine infected individuals. T.C.A. § 14-4-101; 14-1-101(17). Isolating and quarantining infected individuals or close contacts are the most basic reasonable accommodations to be determined *at the school/local school district level* so as to prevent further spread of the infection. This is so inarguable that Defendants' own guidance issued September 7, 2021 confirms the importance of it: "If vaccination and masking are not prevalent in a K-12 setting, then isolation and quarantine are even more important." (Ex. 9, FAQs for COVID-19's Effect in Tennessee Schools).

Defendants wish instead to argue COVID numbers are lower now than past surges. But like the stock market, COVID numbers change markedly, without notice, while vaccination rates still lag in Tennessee. As Plaintiffs' experts have all forewarned in their testimony, a new uptick is likely on the horizon again. With the double-damage of no universal masking, and no quarantining, Title 14 jeopardizes the health and lives of Plaintiffs, while setting conditions for mass spread within the school environment.

**B.    ARPA**

Defendants argue lack of "third party" standing under the American Rescue Plan pursuant to *Kowalski v. Tesmer,* 543 U.S. 125, 130 (2004). (D.E. 42, Brief, pp. 9, 14). However, "in a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Second, Plaintiffs *are* the intended beneficiaries of funds to "maintain the health and safety of **students**, educators,

and other staff. §20001(e)(2)(Q), 135 Stat 21 (emphasis added). Third, even if the students were considered "third party beneficiaries," instead of direct beneficiaries, the statute clearly "hinders" their rights to receive funds to maintain their own health. That is, their own school districts cannot quarantine infected persons or purchase sufficient masks *for students like Plaintiffs*.

As Plaintiffs' Brief shows, and it is now unchallenged, it is the *local school districts* who must not lose their right to develop strategies in line with the CDC guidance in operating their schools. (See D.E. 41, Plaintiffs' Brief, p.41). Tennessee *told* the United States that it addressed "universal and correct wearing of masks." (*Id*. at Ex. 10, State Plan for ARPA-ESSER). Indeed, the State issued FAQs on the importance of masks to prevent spread of COVID 19, only to now ignore universal masking.

C. **Plaintiffs' Equal Protection Claims**

Defendants contend that Plaintiffs cannot prevail on their Equal Protection Claims because Plaintiffs have not shown that there is "no rational basis" for how it treats individuals with disabilities. (D.E. 42, p. 26) (citing *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

But Defendants have no *witnesses*, other than the declaration of a veterinarian, Dr. Dunn, whose function was to authenticate statistics. Defendants only can offer the statute's self-serving legislative findings as basis to demonstrate rationality.[9] Neither the law nor the facts supports Defendants.

Defendants first contend that a "State's compliance with federal law necessarily has a rational basis." (D.E. 42, p. 26). But this rather unusual assertion is undercut by the law's multiple

---

[9] "The Act promotes school district compliance with federal disability law, promotes in-person education, and provides guidance to school districts. *See* Tenn. Code Ann. §§ 14-1-102 (listing legislative findings for the Act); 14-2-104(d) (providing guidance for a school principal or president to provide a person with a disability a reasonable accommodation)."

9

obstacles to enforcement of the ADA (*see* D.E. 1: Complaint) and Defendants' awareness of these violations prior to the law's passage. (D.E. 37-1: Email from Liz Alvey and Ex. 8, August 18, 2021 Letter from USDOE to Gov. Lee and Comm. Schwinn).

Second, Drs. Yaun, Hijano, and Ker were very clear that the law does *not* promote in-person education but has the exact opposite effect. As Dr. Hijano testified: "It would not be safe by any means. And I - - I would be surprised that schools remain open." (Hijano Tr. p. 890).

Third, the evidence before the Court is that this new law does not "provide guidance to school districts." It not only ties their hands, makes them wait until it is too late for universal masking, and the only school district representative to testify says it is "confusing and unfeasible" and "unclear" to districts. (Ex. 20: Decl. of Dr. Adrienne Battle). All three of Defendants' contentions to support a rational basis are directly contradicted by evidence before the Court.

Last, Defendants claim that Title 14 is "neutral." To the contrary, it segregates and stigmatizes children with disabilities who require masking of others.[10] They will be in a moving bubble placed around them, with random, scattered volunteers (if any) who wear masks, students who "place themselves" near Plaintiffs when inside six feet longer than fifteen minutes. Instead of a functionally effective accommodation like universal masking, this singles out Plaintiffs and *stigmatizes them* for their disabilities. *See* Ex. 1, Yaun Decl., ¶ 28 and Ex 26, J.W. Decl. ¶ 6.

Creating a group of volunteer maskers to be the only ones who can come in close contact with Plaintiffs (after 15 minutes) is *not* in keeping with the ADA's integration mandate.

---

[10] "[D]iscrimination itself, . . . by stigmatizing members of the disfavored group . . ., can cause serious noneconomic injuries to those persons who are personally denied equal treatment." *Heckley v. Mathews*, 465 U.S. 728, 739-40 (1984). "[W]hen the right invoked is that to equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Id.* at 740 (quoting *Iowa-Des Moines Nat. Bank v. Bennett*, 284 U.S. 239, 247 (1931).

> "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The most integrated setting is described as a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible. 28 C.F.R. pt. 35, app. B, subpt. B., § 35.130."

*Arc of Iowa v. Reynolds*, 2021 U.S. Dist. LEXIS 172685, at *1 (S.D. Iowa Sep. 13, 2021). A moving bubble—or zone of danger—of segregated students with masks, is not the "fullest extent possible."

### VI. CONCLUSION

Because Plaintiffs are likely to succeed on the merits that Title 14 clearly violates the ADA and Section 504, Plaintiffs' rights under the Fourteenth Amendment, and the express terms of ARPA, the Court should grant Plaintiffs' motion for preliminary injunction.

Respectfully Submitted,

**GILBERT LAW, PLC**

/s/ *Justin S. Gilbert*

**DONATI LAW, PLLC**

/s/ *Bryce W. Ashby*
Bryce W. Ashby (TN Bar 26179)
Brice M. Timmons (TN Bar 29582)
Craig A. Edgington (TN Bar 38205)

&
**THE SALONUS FIRM, PLC**

/s/ *Jessica F. Salonus*
Jessica F. Salonus (TN Bar 28158)

*ATTORNEYS FOR PLAINTIFFS*

# CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Plaintiffs' Reply to Defendant's Response to Plaintiffs' Post-Hearing Brief in Support of Motion for Preliminary Injunction was served via email on this the 2nd day of December 2021, on the Office of the Attorney General via ECF filing at the contact information below:

**GOVERNOR BILL LEE**
**COMMISSIONER PENNY SCHWINN**
James R. Newsom (#6683)
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202
Telephone: 615-741-2472
Jim.newsom@ag.tn.gov

*ATTORNEY FOR GOVERNOR BILL LEE AND PENNY SCHWINN,*
*IN THEIR OFFICIAL CAPACITY*

/s/ *Jessica F. Salonus*