UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

R.K., a minor, by and through her mother and next
friend, J.K;

W.S., a minor, by and through her parent and
next friend, M.S.;

S.B., a minor, by and through his parents
and next friends, M.B and L.H.;

M.S., a minor, by and through her parent and
next friend, K.P.;

T.W., a minor, by and through her parent and
next friend, M.W.;

M.K., a minor, by and through her parent
and next friend, S.K.;

E.W., a minor, by and through his parent
and next friend, J.W.; and

J.M., a minor, by and through her parent
and next friend, K.M;

and on behalf of those similarly situated,

    Plaintiffs,

v.

BILL LEE, in his official capacity as Governor
of Tennessee; PENNY SCHWINN, in her official capacity
as Commissioner of the Tennessee Department of Education,

    Defendants.

Case No. **3:21-cv-00853**

Chief Dist. Judge Crenshaw

1

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
# FOR ATTORNEYS' FEES AND COSTS

**COME THE PLAINTIFFS, R.K., et al.** (hereinafter "Plaintiffs"), and hereby file this Memorandum in support of attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and 42 U.S.C. §1988. Verified billing records for this action and corroborative declarations establish both the hours reasonably expended and the reasonableness of the hourly rates for Plaintiffs' counsel.

## I.  BACKGROUND

To date, there have been four District Court preliminary injunctions, from all three of Tennessee's Districts, finding that interference with masking by the Tennessee Governor, and later by the State itself, violates rights of students with disabilities under the ADA and Section 504. *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 168479 (W.D. Tenn. Sept. 3, 2021); *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 195663 (E.D. Tenn. October 12, 2021); *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021); and, this case, *R.K. v. Lee II*, 2021 U.S. Dist. LEXIS 236817 (M.D. Tenn. Dec. 10, 2021) (hereinafter *R.K. II*).

Shelby County, in the *G.S.* case, was the first. Judge Lipman blocked the Governor's executive order and instructed Shelby County to follow the mask mandate recommended by the county health department. *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 168479 (W.D. Tenn. Sept. 3, 2021).

Knox County, in the *S.B.* case, was second. Judge Greer blocked the Governor's executive order and instructed Knox County to return to its mask mandate that was successful previously. *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 182674, at *1 (E.D. Tenn. Sep. 24, 2021).

Williamson County and the Franklin Special School District, in the *R.K.* case, were third. Like Judge Lipman and Judge Greer, Judge Crenshaw blocked the Governor's executive order as

interfering with the ADA and Section 504. *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021).

On November 11, 2021, in a legislative response to all three injunctions, the Tennessee General Assembly passed a new law with provisions limiting masks and other accommodations in the schools. Tenn. Code Ann. § 14-1-101 *et seq.* Plaintiffs in this case, immediately filed a fourth case, *R.K. II*, with Judge Crenshaw blocking these state law provisions as interfering with the ADA and Section 504 as well. *R.K. II*, 2021 U.S. Dist. LEXIS 236817 (M.D. Tenn. Dec. 10, 2021).

The first case, *G.S.*, from Shelby County, was appealed by the Governor to the Sixth Circuit, where the Governor sought a stay of the preliminary injunction. On November 19, 2021, the Sixth Circuit denied the stay on grounds that the appellant showed no likelihood of success in removing universal masking. *G.S. v. Lee*, 2021 U.S. App. LEXIS 34512 (6th Cir. Nov. 19, 2021).

After the Sixth Circuit denied the motion to stay *G.S.*, Governor Lee abandoned all three appeals in their entirety—*G.S.*, *S.B.*, and *R.K.*—through a joint voluntary dismissal. On December 10, 2021, the Sixth Circuit Court of Appeals entered a dismissal of all of the Governor's consolidated appeals which was unopposed by the Plaintiffs.

Through these actions, culminating in this fourth case, *R.K. II*, Plaintiffs have achieved the objective of enjoining Executive Order 84 and, then, Tenn. Code Ann. §14-1-101 et. seq. Again, neither the Executive Order nor the state law is an impediment to local school districts determining reasonable accommodations of masking, and the Governor has now voluntarily dropped all appeals. Accordingly, Plaintiffs' claim for attorneys' fees is ripe for adjudication.

## II. INTERIM ATTORNEYS' FEES ARE AVAILABLE FOR A PRELIMINARY INJUNCTION THAT CREATED SUBSTANTIVE CHANGE

### A. The Law of Interim Attorneys' Fees

Courts are authorized to award the prevailing party reasonable attorney fees as part of the costs. 42 U.S.C. § 1988(b). The Sixth Circuit has set forth the rule and reasons that interim attorneys' fees following the granting of a preliminary injunction may be appropriate:

> Interim attorney fees awarded during the pendency of litigation are permissible and thus within the authority of the district court when the court has entered a concrete order that "'determines substantial rights of the parties,'" meaning "when a party has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 757-58, 64 L. Ed. 2d 670, 100 S. Ct. 1987 (1980) (per curiam) (quoting *Bradley v. Richmond School Board*, 416 U.S. 696, 723 n.28, 40 L. Ed. 2d 476, 94 S. Ct. 2006 (1974)). Interim fees are "especially appropriate" when a party has prevailed on "an important matter" in a case, even if the party ultimately does not prevail on all issues. *Hampton*, 446 U.S. at 757 (quoting S. Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S. Code Cong. & Admin. News, 5908, 5912 (legislative history of Civil Rights Attorney's Fees Awards Act of 1976). The Supreme Court has declared that, particularly in complex cases of long duration, delaying a fee award until the conclusion of litigation "would work substantial hardship on plaintiffs and their counsel" and discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes. *Bradley*, 416 U.S. at 723.

> It is true that a party may be considered "prevailing" under 42 U.S.C. § 1988 when, as here, he has secured preliminary but not yet permanent injunctive relief. *See, e.g., Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987); *Chu Drua Cha v. Levine*, 701 F.2d 750 (8th Cir. 1983).

> However, to qualify a plaintiff as "prevailing" the preliminary relief obtained must represent an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff. *See, e.g., Laurenzo by Laurenzo v. Mississippi High School Activities Ass'n*, 708 F.2d 1038 (5th Cir. 1983) (preliminary injunction pending appeal). This second type of preliminary relief typically occurs in the granting of a temporary restraining order, but occasionally may underlie even the grant of preliminary injunctive relief. The gaining of such relief represents mere "procedural" success that does not qualify a plaintiff for attorney fees. *See Hampton*, 446 U.S. at 758-59; *Paragould Music Co. v. Paragould*, 738 F.2d 973 (8th Cir. 1984).

*Webster v. Sowders* , 846 F.2d 1032, 1036 (6th Cir. 1988); *see also Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) (fees for obtaining preliminary injunction).

In *Tucker v. City of Fairfield*, 2006 U.S. Dist. LEXIS 16996 (S.D. Ohio Feb. 8, 2006), following *Webster,* the Court held that interim fees are appropriate where there was (1) an evidentiary hearing for a preliminary injunction; (2) with detailed findings of fact and conclusions of law by the Court; and (3) findings in favor of plaintiffs. The same is certainly true here—the court held an evidentiary hearing immediately after the passage of the state law; the matter was well briefed; the Court issued detailed findings of fact and conclusions of law; and found in favor of the Plaintiffs.

### B. PLAINTIFFS REMOVED A STATE-OBSTACLE TO OBTAINING REASONABLE ACCOMMODATIONS FOR SAFETY AND HEALTH OF STUDENTS WITH DISABILITIES

With respect to striking provisions in the new state law, the Court hardly needs counsel to repeat the Court's own findings. For purposes of attorneys' fees, suffice it to say that the Plaintiffs obtained a material change because now school districts can return to masking "without fear that they will lose funding or be otherwise punished by the state if they do so." *R.K. v. Lee (RK II)*, 2021 U.S. Dist. LEXIS 236817, at *44-45 (M.D. Tenn. Dec. 10, 2021).

While the Executive Order that permitted opt-outs reduced any school district's mask mandate to a "paper tiger," *Id*. (citing *S.B.*, 2021 U.S. Dist. LEXIS 195663 (E.D. Tenn. Oct. 12, 2021)), the state law went a step further—"the paper tiger is now toothless to boot." *R.K. II,* at *45. By striking the offending portions of the state law, the Court returned authority to local school districts to determine masking as an appropriate intervention, rather than being subject to an emergency order of the Governor that would issue too late to be effective. *Id*. at *46. Under the ADA, §104(d) of the state law dictates what is reasonable, denying the interactive process between students and school districts. *Id*. at *60.

Plaintiffs were determined likely to prevail on all facets of the preliminary injunction analysis and it was not a close call. The legislation would have put students at risks, allowing infections to rise to a catastrophic level, hospitals breaking, and schools closing:

> It is disingenuous for Defendants to now argue that Plaintiffs cannot establish a likelihood of success on the merits because Title 14 actually allows for school-wide masking in appropriate circumstances, and otherwise provides for a "reasonable" accommodation. Under Title 14, universal masking in a particular school for a period of two weeks is only allowed when a county has an average rolling COVID-19 infection rate of 1,000 new infections for 100,000 residents. Where the legislature came up with this figure is unclear, but it ignores the reality of COVID-19, its impact on a community at that level, and the science that has developed since COVID-19 appeared in this country. Again, based upon the undisputed evidence presented to the Court, a 1,000 new infection rate benchmark is totally ineffective, if not downright dangerous. By then, infection would be at a catastrophic level, such that hospitals would be at or near the breaking point, and schools will have to close because of the lack of staff and students.

*R.K. II,* at *66-67. Thus, the Court relieved students, local school districts, and local health officials from state-imposed barriers to masking and quarantining decisions. *Id*. at *76.

### III.     CALCULATING THE PROPER FEE AWARD

Section 504 and the ADA provide for the payment of a prevailing plaintiffs' attorneys' fees and litigation expenses. 29 U.S.C. § 794a(b); 42 U.S.C. § 12205; 42 U.S.C. § 1988(b); 28 C.F.R. § 35.175.

The Supreme Court holds that the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Blanchard v. Bergeron,* 489 U.S. 87, 89 (1989). In fact, the Court has stressed the importance of awarding attorneys' fees to prevailing parties in civil rights cases in particular, in order to encourage attorneys to act as "private attorneys-general," vindicating the most basic constitutional and congressional policies against discrimination. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968); *see also City of Riverside v. Riveria*, 477 U.S. 561, 574 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

All taxpayers indirectly benefit from the redress and elimination of unconstitutional statutes and practices. *See Newman,* 390 U.S. at 402; *see also Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large . . . ."); *Rivera*, 477 U.S. at 574 (fees in civil rights cases need not be proportionate to a monetary recovery)

### A. LODESTAR

In calculating the initial estimate of reasonable attorneys' fees, the court should use the "lodestar method," multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on litigation by a reasonably hourly rate." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F. 3d 531, 551 (6th Cir. 2008); *accord Hensley¸* 461 U.S. at 433. "Where the party seeking the attorney fee has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air¸* 478 U.S. 546, 564 (1986).

Of course, the Court is famously *not* called upon to become a "green-eyeshade accountant" looking for particular entries:

> [w]e emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley*, 461 U.S., at 437. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid.* But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

7
Case 3:21-cv-00853   Document 50-1   Filed 12/23/21   Page 7 of 17 PageID #: 1195

*Fox v. Vice*, 563 U.S. 826, 837 (2011). An attorney "is not required to record in great detail how each minute of his time was expended but should at least identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Even so, Plaintiffs *have* kept detailed time sheets reflecting the time and tasks.

In this case, the Plaintiffs' lawyers are Justin S. Gilbert of Gilbert Law, PLC; Jessica F. Salonus of Salonus Firm, PLC; and Bryce Ashby, Brice Timmons, and Craig Edgington of Donati Law, PLLC. They seek the following reasonable hours and rates, based upon their declarations[1] and the declarations[2] submitted in support by Heather Collins, Anne Hunter, Michael McClaren, and Brian Winfrey:

Gilbert: 138.50 hours at $500 per hour;

Salonus: 71.75 hours at $420 per hour

Ashby 87.9 hours at $420 per hour

Timmons 27.4 hours at $420 per hour

Edgington 24.8 hours at $275 per hour

1. **The Hours Are Reasonable**

The prior experience of Plaintiffs' counsel are set forth in their declarations. They have focused substantial attention to COVID-19 work as evidenced by the unparalleled success across three district courts and four decisions. *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 168479 (W.D. Tenn.

---

[1] Declaration of Justin S. Gilbert, attached hereto as **Exhibit A**.
Declaration of Jessica F. Salonus, attached hereto as **Exhibit B**.
Declaration of Bryce Ashby, attached hereto as **Exhibit C**.
Declaration of Brice Timmons, attached hereto as **Exhibit D**.
Declaration of Craig Edgington, attached hereto as **Exhibit E**.

[2] Declaration of Heather Collins, attached hereto as **Exhibit F**.
Declaration of Anne Hunter, attached hereto as **Exhibit G**.
Declaration of Michael McClaren, attached hereto as **Exhibit H**.
Declaration of Brian Winfrey, attached hereto as **Exhibit I**.

Sept. 3, 2021); *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 195663 (E.D. Tenn. October 12, 2021); *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021); and *R.K. v. Lee II*, 2021 U.S. Dist. LEXIS 236817 (M.D. Tenn. Dec. 10, 2021) (*R.K. II*).

Additional experience includes, but is not limited to, exceptional experience in the area of disability law, including the ADA and Section 504 for Gilbert and Salonus; class action, employment law, and collective action experience of Ashby; routine handling of complex federal civil rights litigation inside and outside the employment context for Timmons; and civil rights and municipal government concentration by Edgington. (See Decl's of Gilbert, Salonus, Ashby, Timmons, Edgington). The supporting attorneys, McLaren, Winfrey, Collins, and Hunter all concur.

### 2. The Hourly Rates Are Reasonable

**(i) Customary Fees**. The rates of $500 per hour for Gilbert; $420 per hour for Salonus, Timmons, and Ashby; and $275 for Edgington are reasonable and in line with the rates of the Middle District. (See Decl's of McLaren, Collins, Hunter, and Winfrey). By any measure, this case was "non-routine," requiring the lawyers to (again) suspend their practices; absorb a complicated legislation passed in the middle of the night by the General Assembly; and (again) work urgently with experts. Mr. McLaren's Declaration shows a $500 approval; Mr. Winfrey's shows his approval at $475; Ms.Collins shows a non-contingency fee rate of $450 per hour; as does Ms. Hunter. (See Decl's of McLaren, Winfrey, Collins, and Hunter).

Mr. Gilbert was last approved at $450 per hour and Ms. Salonus at $300 per hour in an ADA case involving a single-plaintiff. *B.H. v. Obion Cty. Bd. of Educ.*, 2021 U.S. Dist. LEXIS 226689, at *1 (W.D. Tenn. Nov. 24, 2021).

9

Case 3:21-cv-00853   Document 50-1   Filed 12/23/21   Page 9 of 17 PageID #: 1197

Mr. Ashby was last approved at $325 in 2019 on a single plaintiff race discrimination/First Amendment retaliation lawsuit. *See Goza v. MLGW*, 2019 U.S. Dist. LEXIS 182233 (W.D. Tenn. Oct. 8, 2019) *adopted by* 2019 U.S. Dist. LEXIS 193763 (W.D. Tenn. Nov. 7, 2019) (McCalla, J.).

Mr. Timmons was last approved at $420 per hour and Mr. Edgington at $275 per hour in a jail class action lawsuit. *Turnage v. Oldham*, 2021 U.S. Dist. LEXIS 239877 (W.D. Tenn. Dec. 9, 2021).

### (ii) Novelty and Difficulty

The novelty and difficulty of masking cases are exceptionally high. The United States has reacted comparatively poorly to the science of flattening the curve, with misinformation occurring on a daily basis and, sadly, even violence erupting outside school boards on this very subject. Misinformation from the Governor flowed constantly—about how masking was effective, yet "parents know their children best," while creating barriers to health and safety—the so-called "catastrophic" conditions for masking. *R.K. II*, at *66-67.

The difficulty is compounded because the Governor would issue an Executive Order, it would be enjoined, he would reissue it, it would be enjoined, and then, after three injunctions, the state General Assembly passed the state law to override all of the injunctions issued by the federal district courts and make it virtually impossible for students to obtain masking. This is addressed further below, under enhancement, because true market value for this situation is not reflected in a lodestar.

### (iii) Lawyer Skills Needed

Once again, this case required use of all the skills in the lawyer's toolkit: developing and maintaining client relationships, understanding civil rights law and Constitutional law, managing

complex civil procedure involving state government, conferring with local school districts (some fearful, some more outspoken, about the legislative harm), substantial brief writing, working with experts; trial preparation; trial skill in presenting and cross-examining witnesses; and ability to handle a federal appeal. (See Decl's of McLaren, Collins, Winfrey, Hunter).

### (iv) Preclusion of Employment

Plaintiffs' counsel set aside a significant portion of their practices to return control of masking to the local school districts throughout the state of Tennessee. By necessity, that meant foregoing new cases, seeking continuances of other cases; and working nights and weekends. *See Freudeman*, 2011 U.S. Dist. LEXIS 150023 (N.D. Ohio Dec. 30, 2011) ("Such a time-intensive case by necessity precluded the acceptance of some other work by plaintiff's counsel."); *see also* (Decl's of Gilbert, Salonus, and Ashby).

### (v) Contingent or Fixed Fee

This representation was fully contingent with no attorneys' fees advanced *at all*. Had the case not succeeded, the lawyers would have absorbed all of their time. This type of risk is rarely undertaken in such a novel case.

### (vi) Time Limitations

Time was of the essence. The nature of preliminary injunctions are urgent and, in this case, Plaintiffs managed to file suit *within hours* of the passage of the state law.

### (vii) Results

Plaintiffs accomplished what they set out to do: Once again, return control of the interactive process for reasonable accommodations of quarantining and universal masking to local school districts and parents of children with disabilities, removing the impediments purposely created by the General Assembly.

## A.    ENHANCEMENT IS REASONABLE AND NECESSARY FOR A CASE INVOLVING HEALTH AND SAFETY OF CHILDREN WITHOUT MONETARY DAMAGES

Some courts have, *as part of the lodestar*, shifted the fee upwards for the contingency nature or degree of success. See *Corbin v. Steak n Shake, Inc.*, 2020 U.S. Dist. LEXIS 67776, at *20 (S.D. Ohio Apr. 17, 2020) (upward adjustment evaluated as part of lodestar assessment); *Freudeman v. Landing of Canton*, 2011 U.S. Dist. LEXIS 150023 (N.D. Ohio Dec. 30, 2011) (25% upward adjustment as part of the lodestar).

Other times, courts have considered an adjustment separate from and in addition to the lodestar, as an "enhancement" or "multiplier." For example, the Sixth Circuit approved a 1.75 multiplier to the lodestar in *Barnes*, a case involving a transsexual, because:

> "[T]he result achieved was extraordinary and the case was highly controversial, based on the affidavits of two Cincinnati attorneys who stated that few lawyers locally or nationally would take such a case."

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005).

When the separate multiplier method is used, it is because the "lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation," or if "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

After *Perdue,* the Sixth Circuit has approved a 1.2 multiplier in a case involving rental car benefits based on "the contingent nature of the case and the complexity of a class action," *even though* the court "did not believe that the class members received an especially good benefit." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 500 (6th Cir. 2011). "The district court considered the relevant factors and explained its reasons for utilizing a multiplier of 1.2. We cannot conclude that the district court abused its discretion." *Id.*; *see also Johnson v. Midland Credit Mgmt.*, 2013 U.S. Dist. LEXIS 204269, at *18 (N.D. Ohio 2013) (awarding 1.2 multiplier).

The hourly rates for the attorneys in this case, even though on an arguably higher end, do not adequately measure true market value for this particular case, and they would not attract competent counsel for this type of case. The attesting attorneys explain the unique nature of this case and how these attorneys were qualified in contrast to other Tennessee lawyers. (*See, e.g.,* McLaren Declaration). As stated in *RK I,* that is because *not only is the case fully contingent*, and *novel*, but there is no possibility of ever recovering any damages to reward or offset the substantial and immediate outlay of time and risk. The benefit being sought is not monetary for which counsel can be attracted through a risk/reward sharing; rather, the benefit is non-monetary of local school system autonomy and benefit to children's health and safety.[3]

There is an additional reason in this case, *R.K. II,* that an enhancement should be used. As stated in *Perdue,* the litigation is "exceptionally protracted." True, the state law was passed in November 2021 and Plaintiffs managed to have it struck down shortly thereafter; but that does not tell the whole story. It was Plaintiffs' success in three successive prior cases involving the ability of local school systems to implement universal masking that prompted the General Assembly to create the state law—as if a finger in the eye of the Plaintiffs or the federal authority of the three federal judges who issued injunctions. This necessitated yet this fourth case.

Without any exaggeration, the General Assembly tried to steal the Plaintiffs' protections / victories by passing a state law in the middle of the night to reach further than, even, the Executive Order. It invented a catastrophic infection rate, apparently out of whole cloth ("Where the legislature came up with this figure is unclear," *R.K. II*, at *67) before masking could even take

---

[3] Even in common fund cases, where attorneys *are incentivized* through damages, a multiplier from 1.3 to 4.5 has been found "typical." *Hosp. Auth. of Metro. Gov't v. Momenta Pharm., Inc.*, 2020 U.S. Dist. LEXIS 99546, at *5 (M.D. Tenn. May 29, 2020) (multiplier of 3.12 in approving $40,000,000).

place. By putting this unlawful foot on the neck of students, the General Assembly was certainly "protracting" the legal issue of permitting local school districts to implement the accommodation of universal masking in schools. What lawyer would suspend her practice to upend an Executive Order only to "start all over" with an even broader state law? Surely this case is appropriate for a multiplier—defeating a state law, after defeating a series of Executive Orders, while preserving the health and safety of students, local school districts, and health departments relative to universal masking and quarantining in an ever-changing pandemic.

Whether it is to capture the contingent risk and lack of damages *as part of the lodestar,* as in *Barnes,* or to capture the "attorney's true market value" from a multiplier, as in *Van Horn*, Plaintiffs' counsel respectfully request an adjustment using a 1.75 multiplier, i.e.:

Gilbert: $500 x 1.75 = $875.

Salonus, Timmons, Ashby: $420 x 1.75=$735.

Edgington: $275 x 1.75 = $481.25.

In summary, Plaintiffs' counsel have invested the following time for which they seek recovery:

| ATTORNEY | ADJUSTED RATE | HOURS | TOTAL |
|---|---|---|---|
| Gilbert | $875 | 138.50 | $121,187.50 |
| Salonus | $735 | 71.75 | $52,736.25 |
| Ashby | $735 | 87.9 | $64,606.50 |
| Timmons | $735 | 27.4 | $20,139.00 |
| Edgington | $481.25 | 24.8 | $11,935 |

In addition, to date, Plaintiffs' counsel advanced costs which total $2,683.21 as set forth in their declarations and invoices.

## IV. CONCLUSION

For all these reasons, Plaintiffs respectfully request that their motion for attorneys' fees and expenses be granted.

Respectfully Submitted,

**GILBERT LAW, PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
Facsimile: 423.756.2233
justin@schoolandworklaw.com


**THE SALONUS FIRM, PLC**
/s Jessica F. Salonus
JESSICA F. SALONUS (28158)
139 Stonebridge Boulevard
Jackson, Tennessee 38305
Telephone: (731) 300-0970
Facsimile: 731.256.5711
jsalonus@salonusfirm.com


**DONATI LAW, PLLC**
/s/Bryce W. Ashby
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Craig A. Edgington—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
bryce@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com

***ATTORNEYS FOR PLAINTIFFS***

16
Case 3:21-cv-00853   Document 50-1   Filed 12/23/21   Page 16 of 17 PageID #: 1204

**CERTIFICATE OF SERVICE**

I certify that this Memorandum in Support of Motion for Attorneys Fees and Costs was served upon counsel of record at the contact information below for the Defendants, through the Court's ECF filing system on December 23, 2021.

**GOVERNOR BILL LEE**
**COMMISSIONER PENNY SCHWINN**
James R. Newsom (#6683)
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202
Telephone: 615-741-2472
Jim.newsom@ag.tn.gov
*ATTORNEY FOR GOVERNOR BILL LEE AND PENNY SCHWINN,*
*IN THEIR OFFICIAL CAPACITY*

/s/ Jessica F. Salonus

**CERTIFICATE OF CONSULTATION**

I certify that Plaintiffs' counsel, Bryce Ashby, conferred with Jim Newsom regarding this motion and that Mr. Newsom's client respectfully declined to agree on this date, December 23, 2021.

/s/ Jessica F. Salonus