# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **R.K.**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 3:21-cv-00853** |
| | ) | |
| **v.** | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Frensley** |
| **GOVERNOR BILL LEE**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR STAY PENDING APPEAL

---

1

The Court should stay its preliminary injunction order (ECF 46) because the Act (the "Act")[1] is a reasonable exercise of the State's police power that expressly acknowledges and allows for reasonable accommodations under the ADA, including the masking accommodation sought by Plaintiffs. The General Assembly passed the Act to create uniform standards for COVID-19 related issues across Tennessee. Recognizing that federal disability law may require a departure from general standards, the General Assembly specified that schools "shall provide a reasonable accommodation pursuant to the Americans with Disabilities Act [("ADA")]." Tenn. Code Ann. § 14-2-104(d)(1). Nonetheless, within hours of Governor Lee (the Governor) signing the Act into law and without seeking accommodations from their schools, Plaintiffs brought this facial challenge to the Act, to seek "the entirely reasonable modification [of] *community masking: protection of self and others.*" (Compl., ECF 1, PageID 10).

A stay is warranted because the analysis underlying the preliminary injunction is premised on three errors of law. First, the Court reinterprets Plaintiffs' complaint to identify their injury as denying local schools the authority to grant Plaintiffs' requested accommodation. However, the Act expressly gives authority to school principals and presidents to evaluate and grant requests for ADA accommodations. Tenn. Code Ann. § 14-2-104(d)(2). Furthermore, Plaintiffs themselves have no legal right to dictate who will consider their request for an accommodation, and neither Plaintiffs nor the Court have provided any basis for concluding that changing which official makes the accommodation decision will make it more likely that Plaintiffs receive their desired accommodation.

---

[1] Pub. Ch. No. 6 (112 General Assembly, 3rd Extraordinary Session—2021); *see also* Tenn. Code Ann. §§ 14-1-101, *et seq.*

Second, under the proper standard for evaluating their facial challenge, Plaintiffs must show that there is "no set of circumstances" under which the challenged sections of the Act can be constitutionally applied. To meet their burden for a facial challenge, Plaintiffs must show that *nobody* can get an ADA-compliant masking or quarantine accommodation at school under the Act. But that standard was not applied in issuing the preliminary injunction. As discussed below, Plaintiffs have not shown that the Act precludes *them* from receiving their desired accommodations of universal masking and quarantines of persons with COVID, much less that nobody can get an ADA accommodation.

Third, the Court has a duty to construe state law to avoid conflicts with federal law. *See Rock v. Ward Against Racism*, 491 U.S. 781, 795-96 (1989) ("In evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered."). But the analysis leading to the preliminary injunction instead amplifies conflicts with federal law by adopting constructions unsupported by the Act's text, such as Plaintiffs' "one size fits all" construction of the Act's accommodation language and construing the Act to preclude school districts' use of state funds in ways consistent with the Act.

Accordingly, the Court abused its discretion by relying on erroneous legal standards and improperly applying the relevant law to find that Plaintiffs were entitled to a preliminary injunction, and the Court should stay the injunction pending Defendants' appeal.

## BACKGROUND

### I. Plaintiffs' Complaint

Within hours of the Governor signing the Act into law, Plaintiffs filed a complaint requesting declaratory and injunctive relief on behalf of themselves and putative class members. (Compl., ECF 1, PageID 1-4.) Plaintiffs allege that the enactment of Tenn. Code Ann. § 14-2-104

2

and § 14-4-101 violates their rights under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the Supremacy Clause under Article 6, Clause 2 of the United States Constitution. (*Id.*, PageID 29-33, 35-37.)[2] Plaintiffs specify that "the entirely reasonable modification being sought in this case is community masking: protection of selves and others." (*Id*., PageID10.); *see also* (*id.* at PageID 31 (complaining of "failure or refusal to provide a reasonable modification (universal masking).); (*id*., PageID 33 (same).)

According to Plaintiffs, Tennessee's legislation "interferes with" federal law by "nullify[ing] the rights of students with disabilities who require masking of others in order to enjoy safe, fundamental, non-discriminatory access to their public institutions," causing financial and administrative burdens to school districts, and prohibiting school districts from imposing their own quarantine rules. (Compl., ECF 1, PageID 18.) Plaintiffs sought to preliminarily enjoin Governor Lee and Commissioner Schwinn (the "Commissioner") from enforcing the legislation. (*Id.*, PageID 37.) Plaintiffs nowhere assert that they have sought or were denied ADA accommodations under the Act.

## II.    The Act

The General Assembly passed the Act to create a uniform COVID protocol and "[set] forth the rights of people in the context of COVID-19 restrictions." Tenn. Code Ann. § 14-1-102(1). By establishing a uniform COVID protocol, the State sought to "assist[] the citizens of this state in the enforcement and protection of their rights and create[] a safe harbor for those desiring to avoid litigation." *Id*.

---

[2] Plaintiffs also alleged that the Act violated their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and was preempted under the American Rescue Plan Act of 2021 ("ARPA"). (ECF 1, PageID 33, 36.) The Court did not find it necessary to address those claims. (ECF 45, PageID 1127 n.11, 1130 n.12.)

3

Regarding masking in schools, the General Assembly set forth two independent criteria under which a school could implement mandatory masking policies. Tenn. Code Ann. § 14-2-104(a), (d). Under Tenn. Code Ann. § 14-2-104(a) ("Section 104(a)") a school can require masking when "severe conditions exist." Tenn. Code Ann. § 14-2-104(a)(2); *see also* Tenn. Code Ann. § 14-1-101(20) (defining "severe conditions"). But recognizing the need to comply with federal law, the Act also requires a school to provide reasonable accommodations under the ADA, even when severe conditions are not present. *See* Tenn. Code Ann. § 14-2-104(d)(1) ("Notwithstanding subsection (a): (1) a school shall … provide a reasonable accommodation pursuant to the Americans with Disabilities Act.").

The Act further requires that such ADA accommodations, at minimum, require students to wear N95 or age-appropriate masks provided by the school if such students are "within six feet (6') of the person receiving the accommodation for longer than fifteen minutes." Tenn. Code Ann. § 14-2-104(d)(2)(A), (B). N95 masks are the most effective, generally available masks for preventing COVID-19 transmission. (Hr'g Tr., ECF 35, PageID 901-02.; Testimony of Dr. Diego Raul Hijano.) The proximity requirement mirrors then-current CDC guidance regarding close contacts. (Mem. Op., ECF 45, PageID 1115.) Notably, the Act does not say that schools "shall not" provide broader accommodations where required under the ADA. Regarding funding, the Act only prohibits use of state funds used to implement mask mandates "in violation of this section." Tenn. Code Ann. § 14-2-104(e).

Regarding quarantines, consistent with the Act's purpose of creating statewide COVID protocols, the Act gives the Commissioner of Health the "sole authority to determine quarantine guidelines for … a person if the person tests positive for COVID-19." Tenn. Code Ann. § 14-4-101(a)(1). The Act indicates that outside of the guidance provided by the Commissioner of Health,

4

local government entities, as defined by the Act, do not have the authority to quarantine persons or private businesses. *Id.* § 101(b). At the time of the hearing, the Commissioner of Health was promulgating rules to allow schools to exclude COVID-positive persons from school facilities. (Nagoshiner Decl., ECF 39, PageID 988.) The Department of Health also issued quarantine guidance for schools and other entities. (*See* Mem. Op., ECF 45, PageID 1115.) The Commissioner has now promulgated emergency rules pursuant to the Act requiring quarantine of persons who have tested positive for COVID-19. *See* Tenn. Comp. R. & Reg. § 1200-14-04-.09.[3]

## III.     The Court's Preliminary Injunction Order

In granting Plaintiffs' request for a preliminary injunction, the Court first concluded that it had jurisdiction to consider Plaintiffs' claims. It found that Plaintiffs had standing to pursue their claims, that the claims were ripe, and that under *Ex parte Young*, 209 U.S. 123 (1908), Plaintiffs overcame Defendants' sovereign immunity regarding their ADA claims. (*Id.*, PageID 1131-36.) The Court also determined that, by accepting federal funds, Defendants did not have sovereign immunity from Plaintiffs' Section 504 claims. (*Id.*, PageID 1135-36.)

The Court further found that Plaintiffs are likely to succeed on the merits because Plaintiffs only sought a "return to the status quo . . ., meaning that local school districts would have the decision-making authority about whether, and when, to quarantine and implement universal masking," and Plaintiffs' request for universal masking was a reasonable accommodation under the ADA and Section 504. (*Id.*, PageID 1143-48.) The Court further read Tenn. Code Ann. § 14-2-104(a) as the only subsection allowing a school to impose a universal mask mandate, finding that that the General Assembly's definition of "severe conditions" was "totally ineffective, if not downright dangerous." (*Id.*, P. 1148-49.)

---

[3] Available at https://publications.tnsosfiles.com/rules_filings/12-22-21.pdf.

The Court also resolved the remaining factors in Plaintiffs' favor. It found that, without enjoining Tennessee's legislation, Plaintiffs: (1) could not "attend school without their school's ability to require masking and other measures deemed appropriate based on local COVID-19 conditions because they run the risk of severe illness or death"; and (2) "being unable to attend schools will le[a]d them to be deprived of the in-person public education to which they are entitled." (*Id.*, PageID 1151-52.) The Court also found that there would be no harm to others, and that the public interest favored, allowing "individual school districts to determine what is best for their schools." (*Id.*, PageID 1152-54.) After concluding that all factors weighed in Plaintiffs' favor, the Court preliminarily enjoined Defendants from enforcing Tenn. Code Ann. § 14-2-104 and § 14-4-101 "to the extent that it prohibits local health officials from making quarantining decisions as they relate to public schools." (*Id.*, PageID 1154.) On December 30, 2021, Defendants timely filed their notice of appeal. (ECF 53.)

## LEGAL STANDARD

Under Fed. R. Civ. P. 62(d), a district court may suspend or modify an injunction "[w]hile an appeal is pending from an interlocutory order . . . that grants . . . an injunction." In considering a motion for a stay, a district court balances four factors: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020). When the state is the moving party, "its own potential harm and the public's interest merge into a single factor." *Id.* The party seeking the stay must demonstrate its entitlement to relief. *SawariMedia*, 963 F.3d at 596.

6

To prevail on appeal, Defendants must establish that the Court abused its discretion in granting a preliminary injunction. *See Serv. Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341, 343-44 (6th Cir. 2012). That examination asks whether the court appropriately applied the same factors in granting injunctive relief—likelihood of success on the merits, irreparable injury, harm to other parties, and the public interest. *Id.* at 343. Whether a party is likely to succeed on the merits is a legal question, and a district court "necessarily abuses its discretion" by committing a legal error. *Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 847, 854 (6th Cir. 2017); *see also In re Ferro Corp. Derivative Litigation*, 511 F.3d 611, 623 (6th Cir. 2008) ("A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact."). Further, a court must be mindful that a preliminary injunction "is an extraordinary and drastic remedy" that may "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Southern Glazer's*, 860 F.3d at 849 (cleaned up).

## ARGUMENT

## I.      The Court Lacks Jurisdiction over Plaintiffs' Suit.

### A.      Plaintiffs lack standing because they have no injury redressable by this suit.

#### a.      Plaintiffs have suffered no concrete and particularized injury under the Act.

Plaintiffs' Complaint is clear: "[T]he entirely reasonable accommodation being sought in this case is *community masking: protection of selves and others*." (Compl., ECF 1, PageID10.) On the eve of the injunction hearing, Plaintiffs modified their requested accommodation in their briefing (without amending their pleadings) to state, "Plaintiffs require universal masking and social distancing, including *quarantining* of COVID-positive persons, as a reasonable accommodation." (Pls.' Pre-Hr'g Br., ECF 27, PageID 186). Plaintiffs, who are masters of their complaint, have identified this matter as a denial-of-accommodation case. (*See* Compl. ECF 1,

7

PageID 31 (complaining of "failure or refusal to provide a reasonable modification (universal masking).); (*id.*, PageID 33 (same).); *see also Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.,* 833 F.3d 680, 688 (6th Cir. 2016).

However, Plaintiffs have not been denied an accommodation under the Act, nor does the Act preclude Plaintiffs from receiving the accommodations they seek. The Court did not find that Plaintiffs have been denied an accommodation; instead, the Court framed the alleged injury as the Act's taking the decision to grant accommodations away from local school districts. (*See* Mem. Op., ECF 45, PageID 1133 ("[W]hat Plaintiffs seek is a school district's ability to determine what is reasonable for its schools and students, and what is an appropriate accommodation under the ADA, given the local COVID-19 rates and its impact on a particular community.")); *see also id.* at 1146 ("Plaintiffs seek a return to the *status quo* … meaning that local school districts would have the decision-making authority about whether, and when, to quarantine and implement universal masking during the pandemic.").

Even under the Court's analysis, Plaintiffs have still failed to establish an injury that would satisfy the standing requirement. First, the Act does not take the authority to grant an appropriate accommodation under the ADA away from local schools but instead expressly places that decision with school principals. Tenn. Code Ann. § 14-2-104(d)(1) ("A school shall, to the extent practicable, provide a reasonable accommodation pursuant to the [ADA] to a person who provides a written request … to the principal or president of the school.")[4]; *see also* p. 17, *infra.* Thus, the

---

[4] Although the Act only references the ADA directly, the "ADA is not to 'be construed to apply a lesser standard than the standards applied under … Rehabilitation Act of 1973'" *MX Gp. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002) (quoting 42 U.S.C. § 12201(a)); *see also Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 836 (6th Cir. 2020) ("[W]e have long merged our analyses under the ADA and Rehabilitation Act."). Therefore, any accommodation available under Section 504 is also available under the ADA.

8

Act expressly directs local authorities to grant or deny requests for masking accommodations under the ADA, like the ones Plaintiffs seek.

In holding that the Act takes authority away from local schools, the Court erroneously relied on criteria in Section 104(a). (*See* Mem. Op., ECF 45, PageID 1132 ("[T]he local decision can only be effectuated after a state of emergency has been declared."); (*id.* at 1132-33 ("[L]ocal school districts [*sic*] hands are tied by the very existence of the statute.".) However, no requirements of Section 104(a) need to be met for a school principal to grant an ADA accommodation under Section 104(d). *See* Tenn. Code Ann. § 14-2-104(d) ("Notwithstanding subsection (a)"); *see also Penley v. Honda Motor Co.*, 31 S.W.3d 181, 187 (Tenn. 2000) (holding that the Tennessee Products Liability Act is not susceptible to "limitation periods that would otherwise apply" because the statute's terms indicated its terms applied "notwithstanding any exceptions."). Accordingly, no requirement of Section 104(a) impedes a local school's authority to grant a masking accommodation pursuant to the ADA under Section 104(d).

Similarly, Section 101 does not hinder school districts' authority to issue quarantine orders because school districts had no legal authority to issue quarantine orders even before its enactment. Plaintiffs failed to identify any authority schools had to issue quarantine orders. Moreover, even assuming that schools did have authority to issue quarantine orders, Plaintiffs have no legal right to have quarantine orders issued from a specific governmental entity. Rather, absent a plain statement of Congressional intent, a federal court may not interfere with a State's chosen disposition of its own power. *Nixon v. Missouri Municipal League*, 541 U.S. 125, 140 (2004).

Second, to the extent the Court's analysis is based on an understanding that Section 104(d) dictates the accommodation local authorities can grant to Plaintiffs, the law does not dictate an accommodation, but only sets a reasonable minimum, as discussed below. *See* p. 17, *infra*.

Plaintiffs do not have an injury from a partially specified accommodation without a showing that the specifications are not reasonable. *See Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 387 (6th Cir. 2021) (holding that an ADA accommodation need not be a plaintiff's preferred accommodation) (*citing Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016)); *see also Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 169 (6th Cir. 2003) ("[T]he plaintiffs needed to produce actual evidence sufficient to create a triable issue as to the unsuitability of the defendant's Project Read educators for their assigned task."). It is unclear how Plaintiffs, who seek universal masking at their schools, can argue that the Act's minimum requirement of close contact masking, which is consistent with the relief sought, is unreasonable. The reasonableness of requiring students within close contact of accommodated students to wear N95 masks is fully supported by the record. *See* p.18, *infra*.[5]

Third, Plaintiffs do not have a legal right under the ADA or Section 504 to dictate who can grant or deny their accommodation requests. *Cf. Keller*, 860 F. App'x at 387 (stating that a plaintiff cannot demand a specific accommodation). Thus, even if the Act were to take the decision out of the hands of local authorities (which it does not), Plaintiffs have not suffered a legal injury from the Act, because their legal right is to a reasonable accommodation that has not been denied or even requested under the Act. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[A] plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is … concrete and particularized."). Because Plaintiffs have not been denied an accommodation

---

[5] The Court raises concerns about the availability of N95 masks, citing testimony that it would take Metro Nashville Public Schools (MNPS) six weeks to procure a million masks. (Mem. Op., ECF 45, PageID 1124). However, nothing in the record supports a contention that MNPS would require 60,000 N95 mask per day to accommodate children pursuant to the Act's terms, much less to accommodate Plaintiffs, the only parties properly before the Court.

10

and have no legal right to choose who can grant or deny their accommodation, Plaintiffs have suffered no injury and lack standing.

Fourth, although accommodations have to be requested in writing by the parent or guardian of the child, there is nothing in the record to suggest that such a requirement imposes any significant obstacle to any Plaintiff seeking accommodation.  Indeed, the record shows that each Plaintiff is represented by a parent in this litigation.  (Compl., ECF 1, PageID 2-3.)  Thus, Plaintiffs do not suffer injury, much less irreparable harm, from these requirements.

    b. <u>Enjoining the Act does not help Plaintiffs receive their desired accommodations.</u>

Plaintiffs' claims also lack redressability for similar reasons.  The Act neither denies nor causes others to deny Plaintiffs their requested accommodations of universal masking and quarantine of COVID-19 positive individuals.  *See Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.").  Instead, the Act leaves the choice of whether to grant Plaintiffs' masking accommodations to their school principals, who can approve or deny the request. As the Sixth Circuit has noted, "[r]edressability is typically more difficult to establish where the prospective benefit to the plaintiff depends on the actions of independent actors." *Id*.  Nothing in the record shows that officials other than school principals are more likely to grant Plaintiffs' requested accommodations.

This lack of redressability is even more pronounced with respect to Plaintiffs' requested quarantine accommodation.   With or without the Act, schools do not have the legal authority to enter quarantine orders.  That authority is generally given to the Commissioner of Health and county health officers. Tenn. Code Ann. § 68-1-201 (Commissioner of Health); *id.* at § 68-2-609 (county health officers).  Here, the Act grants sole authority to the Commissioner of Health so to

11

create uniform statewide COVID protocols. Moreover, neither Defendant to this suit has any legal authority to implement quarantines. *See* p. 13, *infra*. Accordingly, enjoining enforcement of the Act does not and cannot bring Plaintiffs any closer to their desired quarantine accommodation.

Plaintiffs have therefore failed to establish injury or redressability, two of the three elements of the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560. Because Plaintiffs have no standing, the Court should stay the injunction.

**B.      Plaintiffs' claims are not ripe because they have not pursued accommodation.**

This case is unripe because it is undisputed that Plaintiffs have neither requested nor been denied either of their accommodations under the Act. The Sixth Circuit has regularly recognized the need for plaintiffs to request an accommodation prior to bringing suit, so that the accommodating party can determine whether such accommodation is reasonable, as well as to give the accommodating party the ability to propose alternatives. *See, e.g.*, *Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) ("A covered entity is generally not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation or otherwise alert the covered entity to the need for accommodation."); *Kaltenburger v. Ohio Coll. of Pediatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) (same). Here, Plaintiffs rushed to the courthouse within hours of the Act being signed into law; it is impossible to know if their request for accommodation would be granted in whole or in part if made by Plaintiffs to their schools under the Act.

**C.      Defendants are entitled to sovereign immunity.**

The Court's determination that Defendants lack sovereign immunity under *Ex parte Young* overlooks two key issues: (1) Defendants have no authority under the Act to grant or deny

Plaintiffs' requested accommodations, and (2) even if Defendants had such authority, they have not threatened to enforce the Act as required for the *Ex parte Young* doctrine to apply.

The *Young* doctrine "does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to its enforcement.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).; *see also id.* at 1048 ("'General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.'"); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."). However, the Court relies on such general authority to establish the applicability of *Young*. (*See* Mem. Op., ECF 45, PageID 1138-39 (Governor Lee); (*id.* at 1139 (Commissioner Schwinn)).

Defendants' lack of enforcement authority is especially clear as to quarantines. The Act gives the Commissioner of Health the "sole authority to determine quarantine guidelines" for persons who have tested positive for COVID. Tenn. Code. Ann. § 14-4-101(a). The designation of the Commissioner of Health, who is not a party to this suit, as the "*sole* authority" undermines any claims to the special relation required by *Young* for Governor Lee or Commissioner Schwinn. Tenn. Code Ann. § 14-4-101(a) (emphasis added).

Further, even assuming that Defendants have sufficient enforcement authority to satisfy *Ex parte Young*, there is no showing that Defendants have threatened enforcement. *See Russell*, 784 F.3d at 1048 ("Consistent with the *Young* requirement of action on the part of the state official, we note that the phrase 'some connection with the enforcement of the act' does not diminish the requirement that the official threaten and be about to commence proceedings." (quoting *Children's*

13

*Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996))). Instead, the

Court casts the burden to Defendants to *disclaim* enforcement. (Mem. Op., ECF 45, PageID 1139

("Commissioner Schwinn has made no affirmative statement suggesting that she would not

withhold funds should a local school district fail to follow the new law.")). Further, Governor Lee

and the Commissioner are entitled to a presumption of good faith "[a]bsent 'clear evidence to the

contrary.'" *EMW Women's Surgical Ctr. v. Friedlander*, 978 F.3d 418, 442 (6th Cir. 2020).

Instead, the Court appears to treat the Governor's signing of the Act as some act of bad faith. (*See*

Mem. Op., ECF 45, at 1138 (noting that the Governor signed the Act "after each of the federal

district court in this state had enjoined enforcement of his Executive Order.").)

Moreover, the Court relies on cases in which the record showed regular or threatened

enforcement. *See Kizer v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014) ("[T]he Board has in the past

threatened to enforce the regulations against [the plaintiff]."); *Russell*, 784 F.3d at 1048

("Defendants do not deny that KSBE is actively involved with administering the statute, and so

regularly acts in furtherance of its execution."). Unlike *Kizer* and *Russell*, there is no record of

threats or a history of enforcement here that would justify application of *Ex parte Young* to

Defendants.[6]

## I.     Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits.

### A.     The Court failed to apply the proper standard of review when assessing Plaintiffs' facial challenge to the Act.

Because Plaintiffs challenge the Act on its face, they "must demonstrate that there is no set

of circumstances in which the [Act] would be valid." *Fencorp, Co. v. Ohio Kentucky Oil Corp.*,

---

[6] Furthermore, the Plaintiff in *Russell* faced a direct threat of prosecution for engaging in the behavior at issue. *Russell*, 784 F.3d at 1049. In contrast, Plaintiffs face no credible fear of prosecution or any other sanction in requesting an accommodation from their schools. They, at most, risk a denial of the requested accommodation.

14

675 F.3d 933, 945 (6th Cir. 2012) (internal quotations omitted). But the preliminary injunction was granted without regard to the "no set of circumstances" standard. "Facial challenges are disfavored" for several reasons. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008). First, such claims rest on speculation, and thus raise the risk of premature interpretation of statute on the basis of factually barebones records. *Id.* (internal quotations omitted). Second, they run contrary to the "fundamental principle of judicial restraint" on deciding constitutional law questions beyond what is necessary. *Id.* Last, facial challenges "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* "A facial challenge to a legislative Act is [...] the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In short, given the nature of Plaintiffs' challenge, they must show that under the Act *nobody* can get the accommodations sought in this matter.

Here, Plaintiffs fall short of their burden to show that Tenn. Code Ann. § 14-2-104 and § 14-4-101 are invalid in all their applications. Indeed, Plaintiffs acknowledge that certain challenged portions of the statute do not apply even to them. For example, Plaintiffs have hypothesized that some student may not have a parent or legal guardian who can submit a written request on their behalf, but no Plaintiff, much less all Plaintiffs, claims that such a restriction is an impediment to them. Similarly, as Defendants have noted throughout, nothing in the Act precludes Plaintiffs from requesting and receiving their desired accommodations from their schools. Because these provisions do not preclude adherence to the ADA and Section 504, they cannot be facially invalid.

15

**B.      The Court reads unnecessary conflict with the ADA into the Act.**

It was error to construe the Act to conflict with federal disability law.  The Supreme Court has long recognized that "only state courts may authoritatively construe state statutes."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 577 (1996); *see also United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 369 (1971) ("[W]e lack jurisdiction authoritatively to construe state legislation.").  It is thus a cardinal principle of statutory interpretation that, absent a definitive interpretation from the state courts, a federal court must accept any plausible interpretation of a state statute that will avoid its invalidation.  *Arizona v. United States*, 567 U.S. 387, 415 (2012) ("At this stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume § 2(B) will be construed in a way that creates a conflict with federal law.).

Indeed, the Court observed at its preliminary injunction hearing that, for purposes of this cause, it should be assumed that the Act "is an attempted valid exercise of the State's police powers."  (Hr'g Tr., ECF 35, PageID 970.)  Accordingly, the Court is to accord "a strong presumption of validity" to a statute and "uphold the statute 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)).  So too, the Court's statutory interpretation should be informed by the "fundamental" interpretive presumption of validity—the canon that courts are to "prefe[r] the meaning that preserves to the meaning that destroys."  *Panama Refining Co. v. Ryan*, 293 U.S. 388, 439 (1935) (Cardozo, J., dissenting) (quoted in Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 66 (Thompson/West 2012)).

The Court's ruling was not in accord with rational basis review or the interpretive presumption of validity.  In fairness to the elected legislators who enacted the challenged statute

and the executive and judicial officials charged with implementing it, the Court must therefore ask whether the Act may conceivably be implemented in a manner that eliminates conflict with federal law. *See Wash. State Grange*, 552 U.S. at 456 (citing *Rock v. Ward Against Racism*, 491 U.S. 781, 795-96 (1989) ("In evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered.")).

Here, the Act was construed to create rather than avoid conflict between federal and state law in ways not supported, much less required, by the Act's text. For example, despite a construction to the contrary in the order granting the preliminary injunction (Mem. Op., ECF 45, PageID 1148), the Act expressly does *not* require that the criteria for Section 104(a) be satisfied before a school can grant an accommodation under Section 104(d). *See* Tenn. Code Ann. § 14-2-104(d) ("Notwithstanding subsection (a)"). The construction the Act to require "severe conditions" under 104(a) before an ADA accommodation can be granted under 104(d) leads to the erroneous conclusion that the Act takes authority to grant ADA accommodations away from local schools.

The Court also erred in its interpretation of Section 104(d)(2) as precluding all other mitigation measures a school might implement to protect high-risk students as required by the ADA. There is no "shall not" provision in the text of the Act to support the Court's reading of Section 104(d)(2) as a ceiling on the efforts a school may undertake in response to an ADA accommodation request. To the contrary, Section 104(d)(1)'s express directive that schools must comply with the ADA "to the extent practicable" counsels against such a limited interpretation. At the very least, an interpretation of Section 104(d)(2) as providing a floor, above which schools may implement additional mitigation measures (and require additional masking) as circumstances dictate, is plausible. Because Plaintiffs brought the suit before the State had an opportunity to implement the Act, or its courts an opportunity to construe it, the Court here was required to accept

17

that interpretation of Section 104(d)(2). *Arizona*, 567 U.S. at 415. By failing to do so, the Court created unnecessary conflict between the Act and the ADA. Similarly, the Court unnecessarily interpreted Section 104(d)(1)'s directive that schools provide reasonable accommodations "to the extent practicable" as inconsistent with the ADA's requirements that an accommodation be reasonable. (Mem. Op., ECF 45, PageID 1141-42.)

The Court further concluded that requiring masks to be worn around a high-risk student "smacks of placing a disabled child in a stigmatizing bubble." (Mem. Op., ECF 45, PageID 1149). However, the minimum requirements set out in 104(d)(2) are reasonable, and directly address the irreparable harm concerns cited by the Court. *Compare* (*id.*, PageID 1151) (holding that Plaintiffs suffer irreparable harm because they cannot "attend school without their school's ability to require masking and other measures deemed appropriate based on local COVID-19 conditions because they run the risk of severe illness or death") *with* Tenn. Code Ann. § 14-2-104(d)(2) ("[T]he school shall place the person in an in-person educational setting in which other persons who may place or otherwise locate themselves within [close proximity] of the person receiving accommodations are wearing a face covering provided by the school."); *see also* (Def. Ex. 3, Ker Dep. at 75-76 ("Q: What are the specific approaches that you've advocated to her special ed. teacher? A: . . . That we keep her physically distant when possible. And I have asked for the – how often are people masked around her, but I can't change that. That's why we're here."). Regarding the proximity masking requirement, the Court acknowledges that the six-foot/15-minute guideline mirrors CDC recommendations (Mem. Op., ECF 45, 1115, 1124), and there is no dispute that N95 masks offer the highest generally available level of protection against COVID-19 transmission (Hr'g Tr., ECF 35, PageID 901-02).

Furthermore, the Court held that the provision requires N95 masks "while at the same time withholding funds for the new requirement." (Mem. Op., ECF 45, PageID 1143.) However, Section 14-2-104(e) only limits the use of state funds to require face coverings "in violation of this section." The Act does not place any restriction on state funds used in *compliance* with its terms. Next, the Court observed that Section 14-2-104(d)(2) "says nothing about common areas where students are bound to congregate," such as hallways, bathrooms, cafeterias, and school buses. (*Id.*) But nothing in the Act limits its application to classrooms.

### C. Plaintiffs failed to show that the Act denies them a reasonable accommodation.

The Act does not deny Plaintiffs universal masking or quarantining accommodations, but even assuming that it does, Plaintiffs must show that the accommodations available to them are not reasonable. *See Campbell*, 58 F. App'x at 169. They have not done so. Plaintiffs have not shown that universal masking is a required modification to avoid discrimination based on their disabilities. Indeed, the Court's factual findings indicate that "several help-measures" can be taken to curb [COVID-19's] advance." (Mem. Op., ECF 45, PageID 1111.) The Act does not preclude other "layered" methods of reducing the spread of COVID-19 that could be considered by a school in evaluating a reasonable accommodation request. *See E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021) ("[T]he binary choice envisioned by the district court—either stay home or catch COVID-19—is a false one: it wholly elides the various accommodations available to the plaintiffs (e.g., distancing, voluntary masking, class spacing, plexiglass, and vaccinations) to ensure a safer learning environment.")

Similarly, the Act does not deny schools the ability to exclude COVID-positive persons. The Act gives the Commissioner of Health the "sole authority to determine quarantine guidelines for … [a] person if the person tests positive for COVID-19." Tenn. Code Ann. § 14-4-101(a) &

(a)(1). As Dr. Hijano acknowledged, schools work with the Health Department in quarantining

people, but it is the Health Department, not the school that issues quarantine orders. (Hr'g Tr.,

ECF 35, PageID 928-930). As before, schools can follow these guidelines to exclude COVID-

positive persons. The rule promulgated by the Department of Health under the Act expressly

requires people who test positive for COVID-19 to quarantine. *See* Tenn. Comp. & Reg. § 1200-

14-04-.09(2). Thus, Plaintiffs' schools may exclude COVID-positive persons under the Act.

### D. The Act does not violate the Equal Protection Clause or Supremacy Clause

Although the Court did not address Plaintiffs' Equal Protection or Supremacy Clause

arguments, Defendants briefly reiterate that Plaintiffs are not likely to succeed on these claims.

    a. <u>The Act does not violate the Equal Protection Clause.</u>

The Act does not violate the Equal Protection Clause because the legislature had a rational

basis for it. Public education is not a fundamental right for purposes of a Fourteenth Amendment

challenge. *See Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000). Disability is not a suspect class

or quasi-suspect class for an Equal Protection analysis. *See S.S.*, 532 F.3d at 457; *Bartell*, 215

F.3d at 559. Therefore, Plaintiffs' challenge that the COVID Act has no rational basis.

The Act rationally promotes school district compliance with federal disability law,

promotes in-person education, and provides guidance to school districts to create a uniform state

protocol. *See* Tenn. Code Ann. §§ 14-1-102 (listing legislative findings for the Act); 14-2-104(d)

(providing guidance for a school principal or president to provide a person with a disability a

reasonable accommodation). The COVID Act is neutral on its face—it makes no express

distinction between persons with disabilities and persons without disabilities. There is an implicit

distinction under which the Act carves out an exception for persons who may request an

accommodation under the ADA, but that carveout is required by federal law. A State's compliance with federal law necessarily has a rational basis.

Plaintiffs also claim that the Act treats private schools differently than public schools because it does not restrict private schools from implementing mask mandates. The General Assembly may have noted that religious organizations, including schools, are exempt from the ADA. 42 U.S.C. § 12187. Accordingly, excluding private religious schools would also serve the purpose of being consistent with federal law.

b. The Act does not violate the Supremacy Clause.

Plaintiffs have no injury under the Supremacy Clause because that provision "is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320, 324-25 (2015) (cleaned up). Because the Supremacy Clause does not provide Plaintiffs with an independent right, their claimed injury cannot be rooted in its purported violation. Relatedly, ARPA does not contain any rights creating language, therefore Plaintiffs' have no injury resulting from ARPA. (*See* Defs.' Pre-Hr'g Br., ECF 23, PageID 160.)

Further, on the merits there is no violation of ARPA. As a threshold issue, Plaintiffs lack standing to assert claims on their school districts' behalf. (*See* Pls.' Br., ECF 41, PageID 1019 (discussing ARPA funds for school districts).) Plaintiffs have no individualized right to local, state, or federal educational funds. Plaintiffs must therefore establish third-party standing. (Defs.' Br., ECF 23, PageID 149-50; Defs.' Br., ECF 42, PageID 1045.) Plaintiffs fail to challenge or distinguish Defendants' authorities on third-party standing, (*see generally* ECF 41), and similarly fail to present evidence demonstrating "a 'close' relationship with the[ir school districts]" and that their school districts face "a hindrance to … protect[ing their] own interest[s]." *Kowalski v.*

21

*Tesmer*, 543 U.S. 125, 130 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). These failings are fatal to Plaintiffs' "funding" claims.

Relatedly, the Act places no restrictions on the use of federal funds, such as ARPA funds. Rather, the Act only prohibits uses of *state funds* in violation of this section." Tenn. Code. Ann. § 14-2-104(e). Notably, the Fifth Circuit in *Paxton* has granted an emergency stay against a district court's finding that Texas's mask mandate ban violates ARPA. *See Paxton*, 19 F.4th at 763. The Fifth Circuit expressed grave reservation about ARPA's private enforceability and criticized the district court's "bald invocation of the Supremacy Clause and its equitable jurisdiction[.]" *Id.* at 769 n.3.[7] Furthermore, the Fifth Circuit noted that ARPA merely requires "local education agencies to *communicate* with the public regarding what requirements, if any, it maintains regarding masking," which the Act does not prevent. *See id.* (emphasis in original). Further, in contrast to the executive order at issue in *Morath*, the Act expressly provides for masking as an ADA accommodation. *See id.* at 763 (quoting GA-38 to show that it prohibits school mask mandates under all circumstances); Tenn. Code Ann. § 14-2-104(d) (allowing masks as ADA accommodations).[8] Nor have Plaintiffs shown that any school district's ARPA-required safe return plan conflicts with the Act.

---

[7] The *Morath* district court's injunction (which *Paxton* stayed) reached the ARPA preemption issue on the equitable power of federal courts to enjoin unlawful acts by state officials." *E.T. v. Morath*, -- F.Supp. 3d --, 2021 WL 5236553, at *11 (citing *Armstrong*, 575 U.S. at 327). Yet Defendants have argued, and Plaintiffs have not disputed, that ARPA is not subject to equitable enforcement. (Defs.' Pre-Hr'g Br., ECF 23, PageID 160-62; *see* Pls.' Br., ECF 41.)

[8] Further, the *Morath* court employed the wrong standard when a State's exercise of its police powers is challenged. *See Morath*, 2021 WL 5236553 at *11 (relying on *Lawrence Cnty. v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256, 260-61 (1985) to find preemption); *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157 (1978) (courts presume no preemption of a State's police power "unless that was the clear and manifest purpose of Congress.").

22

## III. Plaintiffs Have Not Demonstrated That a Preliminary Injunction Avoids Irreparable Injury.

As discussed above, Plaintiffs have failed to establish irreparable injury as to themselves because they cannot establish that they would have been denied a reasonable accommodation under the ADA had the Act been implemented. *See* pp. 8, 12, *supra*.

Nonetheless, the Court concluded that Plaintiffs have "clearly established" that they will be irreparably harmed in the absence of injunctive relief because (1) the Act would deprive schools of the ability to implement masking and other measures they deem appropriate based on local COVID-19 conditions, exposing Plaintiffs to increased risk of severe injury or death, and (2) Plaintiffs resultingly would lose access to the in-person public education to which they are entitled on the same basis as their non-disabled peers. (Mem. Op., ECF 45, PageID 1151.) However, as noted above, nothing in the Act precludes schools from implementing universal masking where universal masking would be required by the ADA. Indeed, the Act goes above and beyond to require that schools provide N95 masks to those in close proximity to Plaintiffs. Tenn. Code Ann. § 14-2-104(d). This is specifically designed to provide Plaintiffs in-person education to students like Plaintiffs. *Id.* ("[T]he school shall place the person in an in-person learning environment."). To the extent that the Court's analysis relies on the costs of masks, those costs are borne by school districts not party to the suit, and schools have been provided state and federal funds specifically designated for COVID mitigation. *Id.* (providing that face coverings shall be "provided by the school.").

## IV. The Balance of the Equities Disfavors the Court's Overbroad Injunction.

As Defendants have already noted, an injunction against the duly passed laws of the state is a harm to the state. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012). Accordingly, the Court lacks any equitable basis to grant the sweeping relief that Plaintiffs sought—a statewide injunction

against the implementation of the Act. As a "general rule, . . . injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995) (teaching that courts should not "provide relief to nonparties when a narrower remedy will fully protect the litigants"); *United States v. Raines*, 362 U.S. 17, 21 (1960) (noting that the judicial power is limited to "adjudg[ing] the legal rights of litigants in actual controversies").

"While district courts are not categorically prohibited from granting injunctive relief benefitting an entire class in an individual suit, such broad relief is rarely justified because injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003) (citing *Yamasaki*, 442 U.S. at 702)); *see also California v. Azar*, 911 F.3d 558, 582–83 (9th Cir. 2018) (the rule that injunctive relief should be narrowly tailored to prevent harm to the parties before the court "applies with special force where," … "there is no class certification.")

There being no class certification, the individual Plaintiffs in this cause should only have been entitled to seek preliminary injunctive relief on their own behalf. Nonetheless, their own proposed class definition is somewhat limited, consisting only of current and future "K-12 students attending, or zoned to attend, public school in Tennessee." (Compl., ECF 1, at PageID 24.) Yet the literal language of the injunction granted by the Court goes so far as to altogether enjoin the enforcement of "Tennessee Code Annotated § 14-2-104 'Face coverings for schools'" (ECF 46, PageID 1159-60) in all schools where it applies—possibly even in "public postsecondary educational institution[s]" (*see* Tenn. Code Ann. § 14-1-101(18)). The Court issued that preliminary injunction in the absence of any pleading requesting such relief and in the absence of

24

any proof that such relief would be appropriate in that setting.  The Court should stay its injunction order pending appellate review.

## CONCLUSION

For the reasons stated, the Court should grant the motion of Governor Lee and Commissioner Schwinn for a stay of the preliminary injunction pending appeal.

Respectfully submitted,

HERBERT H. SLATERY III
ATTORNEY GENERAL AND REPORTER

/s/ Reed N. Smith
James R. Newsom - TN Bar No. 6683
Reed N. Smith - VA Bar No. 77334*
Matthew Dowty - TN Bar No. 32078

Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
Jim.Newsom@ag.tn.gov
Reed.Smith@ag.tn.gov
Matthew.Dowty@ag.tn.gov

*Counsel for Defendants*

26

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties as indicated below. Parties may access this filing through the Court's electronic filing system.

Brice M. Timmons
Bryce W. Ashby
Craig A. Edgington
Donati Law Firm LLP
brice@donatilaw.com
bryce@donatilaw.com
craig@donatilaw.com
*Counsel for Plaintiffs*

Jessica F. Salonus
The Salonus Firm, PLC
jsalonus@salonusfirm.com
*Counsel for Plaintiffs*

Justin S. Gilbert
Gilbert McWherter Scott Bobbitt PLC
justin@schoolandworklaw.com
*Counsel for Plaintiffs*

*s/ Reed N. Smith*
\*Reed Smith, VA Bar No. 77334
Acting Assistant Attorney General
*\*Admitted Pro Hac Vice*

27